UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                               )
In re BLACK FARMERS DISCRIMINATION    )
LITIGATION                                              )
                                                               )     Misc. No. 08-0511 (PLF)
_____)
                                                               )
This document relates to:                        )
                                                               )
ALL CASES                                            )
_____)

MEMORANDUM OPINION AND ORDER

       This matter is before the Court on the Supplemental Motion of Certain Plaintiffs to Modify Proposed Case Management Order No. 1 (the "CMO Motion"), and the Morgan Group's Response to Supplemental Motion of Certain Plaintiffs to Modify Case Management Order No. 1 (the "CMO Response").

       The CMO Motion was submitted jointly by the plaintiffs in most of the actions consolidated under this miscellaneous case number. This motion includes, and asks the Court to approve, a proposed case management order.[1] The proposed case management order would, among other things: (1) name Henry Sanders of Chestnut, Sanders, Sanders, Pettaway & Campbell, L.L.C. and Andrew H. Marks of Crowell & Moring, L.L.P. as plaintiffs' co-lead counsel; (2) name Laurel Pyke Malson of Crowell & Moring, L.L.P. as plaintiffs' liaison

---

[1] The proposed case management order appended to the CMO Motion modifies slightly an earlier proposed case management order submitted by the same group of plaintiffs on August 22, 2008. The proposed case management order submitted on August 22, 2008, in turn, modifies slightly an earlier proposed case management order submitted on July 24, 2008.

       The only material difference between the latest proposed case management order and the one submitted on August 22, 2008 is the proposed substitution of Henry Sanders for J.L. Chestnut as co-lead counsel. Mr. Chestnut passed away on September 30, 2008.

counsel; (3) establish a steering committee of plaintiffs' counsel including Mr. Sanders, Harris L. Pogust of Pogust, Braslow & Millrood, L.L.C., James Scott Farrin of the Law Offices of James Scott Farrin, and Scott Wm. Weinstein of Morgan & Morgan, P.A.; and (4) require the plaintiffs' steering committee to create and manage an informational website and telephone bank for the benefit of all plaintiffs and potential plaintiffs. See CMO Mot. at 3-7.

The CMO Response was submitted by plaintiffs in Civil Action No. 08-1188. These plaintiffs refer to themselves as "the Morgan Group" – presumably because they are represented by Morgan & Morgan, P.A. – and to the plaintiffs who joined the CMO Motion as "the Megagroup." The Morgan Group argues that *only* Mr. Marks should serve as plaintiffs' lead counsel. See CMO Resp. at 2. Alternatively, "if it is the unstated goal [of the Megagroup] that an African American lawyer should share the [lead counsel] role with Mr. Marks," the Morgan Group argues that Mr. Marks, who is white, should share that role with Gregorio Francis of Morgan & Morgan, P.A., who is African-American.

The Court will not address the lead counsel dispute at this time because the latest proposed case management order – and particularly what is not included therein – raises more fundamental and pressing issues. As both groups know, this Court on more than one occasion has expressed its concerns about the management of these consolidated cases and the importance of transparency and uniformity on the issue of fees to be charged to plaintiffs and potential plaintiffs. In particular, the Court has expressed concerns about: (1) the dissemination of accurate and impartial information about these consolidated cases to all plaintiffs and potential plaintiffs; (2) the reasonableness and transparency of the attorneys' fee agreements offered to all plaintiffs and potential plaintiffs; (3) the consistency of attorneys' fee agreements across all firms

involved in this case; (4) the role of the Court now and after settlement in assuring that all plaintiffs and potential plaintiffs are treated fairly and equally with respect to fees and costs (a role that, as the Court explained at the status conference, might be more robust and clearly defined if these actions were certified as class actions under Rule 23 of the Federal Rules of Civil Procedure); and (5) the necessity of reassuring all plaintiffs and potential plaintiffs that "signing up" for these lawsuits will cost them nothing or close to it, and that any and all fees will come either because, at the end of the day, they are "prevailing parties" under the relevant statutes or, to some very minimal extent, to compensate counsel for management and implementation.

The Court expressly stated at the status conference on July 30, 2008 that the question of attorneys' fees must be "resolve[d] up front," Transcript of Hearing at 17 (July 30, 2008) ("Transcript"), "before I decide who's going to be lead class counsel and who's going to be [on the] executive committee." Id. at 20. The Court assumed, in light of the concerns it expressed, that any proposed case management order would address this issue. The Court further observed at the status conference:

> We've got a statute which provides attorneys' fees to the prevailing party. Now why doesn't every lawyer in this case reach the same agreement up front? Now, if you want to have a little bit in a kitty to deal with implementation because we had some problems on whether you get paid for the implementation phase versus the prevailing plaintiff phase, fine.
>
> \* \* \*
>
> And you all ought to resolve [the attorneys' fees issue] up front. I've seen the Web sites of some of the law firms, and I don't like them. I don't like people saying it's going to cost you a third of your relief, whatever I get for you, or 20 percent of your relief, whatever I get for you, because that's not what Congress had in mind.

3

>Congress had in mind to try to take these 63,000 people who I wouldn't let in to Pigford because they were late, and let them in. And let's go back and pretend that we're back on day one, say to them, you get what everybody else got. That's what I think Congress intended, and if that's what Congress intended, it's $55,000 plus debt relief plus tax relief. It all goes to the farmer. And then [the attorneys] file attorneys' fees claims.
>
>\* \* \*
>
>To me, it's very important that this remain a class action until we know what mechanism is in place. It's very important that we have the same rules or very similar rules to the rules that governed in Pigford, if we're going to try to put everybody back in a position that they were in before.
>
>\* \* \*
>
>So, what I'm concerned about when I say – this is just one example – that you all need to get on the same page about what you want to do about legal fees, is because it's how [plaintiffs and potential plaintiffs are] going to react. You know, you and I and Ms. Malson and Mr. Fraas, we're Washington lawyers, and we're suspected by lots of people, and certainly by black farmers in the South, and they're not going to understand if somebody gets $10,000 less than the next guy when the case is settled or resolved in some fashion, unless there's – even if there's a rational explanation, but certainly if it's because one lawyer took a little more money or was paid a little more money than another lawyer.
>
>\* \* \*
>
>[I]t wasn't perfect, but over time there was a level of credibility that came from [the settlement in the original Pigford case] that is so important going forward. And at the end of the day it may not matter whether the settlement or the solution [in these consolidated cases] looks like this . . . or looks like that, but there's got to be some consistency and some rationality and some feeling that, you know, we were all treated equally [and] fairly. . . . So, the legal fees question is an example of that.

Transcript at 17-23. Frankly, these concerns have only been heightened in the Court's mind

since the passing of Mr. Chestnut, who demonstrated a unique ability in <u>Pigford</u> to communicate with members of the class, African-American farmers in the South.

  The Court will not approve a proposed case management order unless it adequately addresses these issues. In addition, any proposed case management order should: (1) specify the attorneys' fees to be charged to plaintiffs; (2) provide a representative fee agreement for the Court's review; (3) require all firms to charge the same attorneys' fees (or explain why this should not be the case); and (4) otherwise persuade this Court that there are mechanisms in place to assure all plaintiffs and potential plaintiffs that the matter of attorneys' fees will be handled in a fair, transparent, uniform and readily comprehensible manner. The Court therefore will deny all pending motions for the entry of a case management order and direct counsel to meet and confer about the issues identified above.

  As the Court was preparing this Memorandum Opinion and Order, the plaintiffs filed a motion for an immediate status conference, noting that they have received distressing reports over the last few weeks concerning "unscrupulous individuals and groups [that] have been making grossly distorted representations within the African-American farmers community regarding the potential rights of African-American farmers to seek relief" in these cases, and information suggesting that some African-American farmers are being taken advantage of by being charged a "sign up" fee for participation in this lawsuit. Plaintiffs' Motion for Immediate Status Conference at 2. Plaintiffs cited a number of examples of incidents that gave them concern. Like the plaintiffs, this Court finds reports of such incidents, if true, "extremely troubling." <u>Id</u>. at 2.

For those lawyers who have been involved in the Pigford litigation (Ms. Sanders, Mr. Sanders, Mr. Fraas and Mr. Frantz), these incidents should come as no surprise. Similar things occurred in Pigford, and counsel, with the assistance of the court-appointed monitor, had to develop methods to deal with them. The Court would have thought that counsel would have anticipated such possibilities. Furthermore, in view of the Court's statements at the July 30 status conference concerning possible transmission of misinformation relating to this case, see Transcript at 8-9, the Court assumed that by now, with or without a case management order in place, counsel would have consulted at length with the court-appointed monitor in Pigford as to how she dealt with these and various other circumstances that might be expected to arise in this case as well.

In view of the foregoing, the Court will schedule a status conference to further discuss the issues discussed in this Memorandum Opinion and Order. After that status conference, the parties will be required to submit a new proposed case management order. Accordingly, it is hereby

ORDERED that Plaintiffs' Motion to Modify Proposed Case Management Order No. 1 and Memorandum in Support [6] is DENIED as moot; it is

FURTHER ORDERED that the Supplemental Motion of Certain Plaintiffs to Modify Proposed Case Management Order No. 1 [13] is DENIED; it is

FURTHER ORDERED that Plaintiffs' Motion for Immediate Status Conference [18] is GRANTED; and it is

FURTHER ORDERED that a status conference is scheduled for November 14, 2008 at 10:00 a.m. At that status conference, the parties should be prepared to discuss how they

plan to craft a new proposed case management order and, if necessary, take additional steps to address the Court's concerns.[2]

        SO ORDERED.

                                        /s/_____
                                        PAUL L. FRIEDMAN
                                        United States District Judge

DATE: November 7, 2008

---

[2] The parties should also be prepared to discuss whether they have engaged in further discussions about the lead counsel dispute, and if so, whether they have made any progress on that front.