## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| )<br>In re BLACK FARMERS DISCRIMINATION )<br>LITIGATION )<br>)<br>)<br>This document relates to: )<br>)<br>ALL CASES )<br>) | Misc. No. 08-mc-0511 (PLF) |

## DEFENDANT'S MOTION TO STRIKE DECLARATION OF THEODORE EISENBERG

### INTRODUCTION

On August 8, 2011, plaintiffs' counsel in this consolidated action filed a motion for an award of attorneys' fees and expenses, urging this Court to award them fees in the amount of 7.4% of the Settlement Fund Fee Base as defined in the parties' Settlement Agreement. Plaintiffs' counsel attached to that motion the "expert" report of Professor Theodore Eisenberg that opines that the 7.4% fee that plaintiffs' counsel seeks is in fact reasonable.[1]  Declaration of Theodore Eisenberg, ECF No. 180 ("Eisenberg Decl."), at 10, 47.  It is well-settled, however, that legal conclusions and legal opinions, including opinions regarding the ultimate issue in the case, are not admissible under Federal Rule of Evidence 702.   That is because this type of testimony does not assist the Court in understanding the evidence or determining a fact in issue; rather, testimony such as that proffered by Professor Eisenberg merely recites the applicable

---

[1]  Prior to the filing of plaintiffs' motion for attorneys' fees and the accompanying declaration of Professor Eisenberg, plaintiffs' counsel did not inform government counsel that they had retained an expert to opine on the reasonableness of their fee request.  Nor did plaintiffs' counsel provide Professor Eisenberg's written expert report in advance of the filing of their attorneys' fee motion.

legal standard and states what result should be reached, thereby usurping this Court's role in

determining and interpreting the applicable law and applying that law to the question at issue in

this case.  Additionally, Professor Eisenberg's testimony elevates the fee dispute into its own,

potentially costly litigation requiring depositions and the possibility of a counter-expert, on a

subject about which the Court already has the requisite expertise.  Accordingly, this Court

should strike his declaration as inadmissible under Rule 702.

## **BACKGROUND**

Plaintiffs' counsel attached the declaration of Professor Theodore Eisenberg to support

their motion for attorneys' fees and expenses in this litigation.[2]  According to his declaration,

plaintiffs' counsel retained him "to opine about the reasonableness of the attorney fees requested

in Plaintiffs' Motion for An Award of Attorneys' Fees and Expenses and the accompanying

Memorandum of Law in Support of Plaintiffs' Motion for An Award of Attorneys' Fees and

Expenses (the 'Fee Motion')."  Eisenberg Decl., at 9-10, 48 (attached as Exhibit A).

Professor Eisenberg begins his analysis by listing 28 documents he reviewed, including

the Amended Class Action Complaint filed in *James Copeland, et al. v. Vilsack*, No. 08-cv1188-

PLF, D.D.C., on April 5, 2011, the various iterations of the Settlement Agreement in this matter,

---

[2]  Although Professor Eisenberg's testimony appears in the form of a declaration, it is
clearly intended to be an expert report within the meaning of Federal Rule of Civil Procedure
26(a)(2).  Professor Eisenberg's declaration contains, among other things, (1) a statement of his
opinions and the basis and reason for them, (2) the purported "data" he considered as he assessed
whether plaintiffs' counsel's fee request was reasonable, (3) a list of his qualifications, including
a list of all publications he authored in the last 10 years, (4) a list of all other cases in which he
has testified as an expert, and (5) a statement that plaintiffs' counsel is paying him $650 per
hour, plus expenses, as compensation for his study and testimony.  *See* Fed. R. Civ. P.
26(a)(2)(B)(i)-(vi).

this Court's order granting preliminary approval of the settlement agreement, blank form retainer agreements used by certain plaintiffs' counsel, and the Consent Decree entered in *Pigford, et al. v. Glickman*, No. 97-cv-1978, D.D.C., on April 14, 1999.  Eisenberg Decl., at 10-13.  He then spends several pages summarizing the background of the case, including the litigation in *Pigford, et al. v. Glickman* and Congress's enactment of § 14012 of the Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-246, 122 Stat.1651, and the Claims Resolution Act of 2010, Pub. L. No. 111-291, 124 Stat. 3064.  *See generally id.* at 13-19.  He provides a brief overview of the parties' Settlement Agreement, focusing specifically on those provisions related to plaintiffs' counsel's duties under the agreement, and on attorneys' fees. *See id.* at 16-19.  With respect to the provisions governing attorneys' fees, Professor Eisenberg notes that the Settlement Agreement provides that plaintiffs' counsel "will move the Court to authorize a Fee Award . . . of between 4.1 percent and 7.4 percent of the Fee Base."  *Id.* at 18.  He observes that plaintiffs' counsel has requested a fee in the amount of 7.4% of the Fee Base, or $90,835,000.  *Id.* at 19.

Professor Eisenberg devotes the next 29 pages of his 42-page declaration explaining how he has determined that plaintiffs' counsel's request for 7.4% of the Fee Base, or $90,835,000, is a reasonable fee request.  *See id.* at 19-42.  He first provides an overview of the legal standards for awarding fee awards, observing that "[c]ourts use different methodoligies in assessing fees[,]" explaining briefly what those "different methodologies" are, and noting the pros and cons of each one.  *Id.* at 19-20.  He reasons that, "[b]ecause no fee determination method is perfect," and because courts must "actively review fees, courts tend to be receptive to arm's length negotiated fee amounts."  *Id.* at 21. Professor Eisenberg then opines on the law in this Circuit, explaining that "'the favored method of calculating attorneys' fees'" "in class action

3

cases in which plaintiffs recover benefits from a common fund" is "'to award a percentage of the fund.'"  *Id.* at 21-22 (quoting *Swedish Hosp. v. Shalala*, 1 F.3d 1261, 1267-71 (D.C. Cir. 1993)). Quoting case law from this Circuit, he also opines that "'fee awards in common fund cases may range from fifteen to forty-five percent,'" *id.* at 22 (quoting *In re Lorazepam & Clorazepate Antitrust Litig.*, No. MDL 1290, 2003 WL 22037741, at *8 (D.D.C. June 16, 2003)), and that fee awards "of between twenty and thirty percent of the common fund, and sometimes more have been deemed reasonable" by courts in this Circuit.  *Id.*  He ends his discussion of the legal standard for assessing reasonable attorneys' fees in this Circuit by listing the seven factors court consider in evaluating fee requests.  *Id.* at 23 (citing, among other cases, *Radosti v. Envision EMI, LLC*, 760 F. Supp. 2d 73, 78 (D.D.C. 2011)).

Professor Eisenberg then explains how he derived his "assessment" that 7.4 percent fee request in this case "is reasonable."  *Id.*  He bases his conclusion on "three components": (1) the "relation between attorney fees and the benefit obtained for the class in common fund cases"; (2) an "analysis" of the lodestar amount; and (3) "the tendency of courts to deem reasonable fee amounts agreed to between attorneys and clients."  *Id.* at 23-24.  Based on these three components, Professor Eisenberg concludes that plaintiffs' counsel's request of a 7.4 percent fee is reasonable.  *See id.*

Professor Eisenberg states that he determined the relationship between attorneys fees and the value obtained for the class by analyzing "data" from "600 class action decisions."  *Id.*  His "empirical" analysis of the assessment of common fund class action fee awards is set forth in two articles that he published in the Journal of Empircal Legal Studies with Professor Geoffrey Miller of New York University School of Law and covers cases from 1993 to 2002 and 2003 to

2008 respectively.  *Id.*  Professor Eisenberg explains that he identified the 600 class action

decisions that formed the basis of their analysis by running a search in WESTLAW's "AllCases"

database using certain search terms and cross-checking the results of that search in LEXIS's

"Mega" database using the same search terms.  *See id.* at 24-25.

Based on his statistical analyses of these cases, Professor Eisenberg proffers that the

"core finding" in the two articles he published "is that court-approved fees in common fund

cases can be largely explained by the relation between two variables, the class recovery and the

attorney fee."  *Id.* at 25.   Utilizing a graph to depict the relationship between attorneys fees and

class recoveries, Professor Eisenberg concludes that there is a "strong linear relation between

attorneys fees and class recoveries," *id.* at 26-27.   Focusing in particular on "megafund cases,"

that is, class actions with common funds in excess of $100 million, he observes that "the attorney

fee as a percent of the class recovery declines as the size of the class recovery increases[,]" that

the "mean attorney fee in cases with class recoveries exceeding $175.5 million is 12.0

percent[,]" and concludes that "the 7.4 percent fee request in this case is fully supported by the

range of fee awards in the megafund case data" because "those data [as set forth in the two

articles he co-authored with Professor Miller] support a fee of $98,871,934, which would

correspond to a fee of 8.1 percent in this case."   *Id.* at 27-28.

With respect to common fund cases with class recoveries exceeding a billion dollars such

as the recovery at issue in this case, Professor Eisenberg opines that, based on his statistical

analysis of these cases, the mean attorney fee award for "class recoveries between $1.011 and

$2.279 billion" was "10.5 percent and the median fee award was 9.8 percent," which, according

to him, supports his conclusion that the 7.4 percent fee award requested by plaintiffs' counsel in

this case is "reasonable in light of other megafund cases. . . ." *Id.* at 29-30. To support this conclusion, he briefly explains on pages 30 through 38 the "graphical and statistical techniques" he utilized to analyze both the "109 megafund cases" in the two articles he co-authored with Professor Miller and "the upper and lower range, 7.4 percent and 4.1 percent, of the allowable attorney fee request in this case's Settlement Agreement." *Id.* at 30-31. Based on this analysis, he ultimately concludes that the 7.4 percent fee award that plaintiffs' counsel have requested in this case "is reasonable," *id.* at 38, but that the "low range of the fee award under the Settlement Agreement, 4.1 percent [], is . . . atypically low for class recoveries of the size in this case." *Id.* at 37. He further opines that a 7.4 percent fee award in this case is reasonable given the potential benefits claimants may receive under the Settlement Agreement, *see id.* at 39, and the fact that plaintiffs' counsel in *Keepseagle v. Vilsack*, Case No. 99-3119, D.D.C., "an analogous case against the USDA," according to Professor Eisenberg, received an attorney fee award equal to 8 percent of the $760,000,000 recovery in that case, *see id.* at 39-40.

Professor Eisenberg then opines that his analysis of the lodestar amount supports his conclusion that the 7.4 percent fee request in this case is reasonable. *See id.* at 40-43. Professor Eisenberg bases his lodestar analysis not on actual billing records provided to him by plaintiffs' counsel, but rather on "the hours reported to him by Class Counsel" and plaintiffs' counsel's representation that "the vast majority of work in this case has been performed by attorneys with more than 11 years of experience." *Id.* at 40. He then explains how his review of retainer agreements submitted by certain plaintiffs' counsel, pursuant to which some plaintiffs' counsel would be entitled to receive between 20 percent to 33 percent of a claimant's recovery, also supports his conclusion that a 7.4 percent fee award is reasonable. *See id.* at 43-44.

Finally, the last four pages of Professor Eisenberg's declaration contains his "review" of the seven factors "considered in this District in class action cases," *id.* at 44.  According to Professor Eisenberg, each factor supports his "opinion that a 7.4 percent fee award in this case is reasonable."

## ARGUMENT

### I.      Professor Eisenberg's Declaration Should Be Struck Because It Contains Legal Conclusions and Legal Opinions That Are Inadmissible As a Matter of Law

Federal Rule of Civil Procedure 702 permits expert testimony only if it will assist the Court "to understand the evidence or determine a fact in issue."  Fed. R. Evid. 702.  As this Court has explained, however, "[e]xpert testimony consisting of legal conclusions is impermissible [and thus inadmissible] because such testimony merely states what result should be reached, thereby improperly influencing the decisions of the trier of fact and impinging upon the responsibilities of the court."  *Halcomb v. WMATA*, 526 F. Supp. 2d 24, 27 (D.D.C. 2007).  Thus, courts must carefully circumscribe expert testimony to "assure that the expert does not usurp either the role of the trial judge" in determining the applicable law or applying the law to the facts before it.  *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991).

"The rule prohibiting experts from providing their legal opinions or conclusions is so well-established that it is often deemed as a basic premise or assumption of evidence law – a kind of axiomatic principle.  In fact, every circuit has explicitly held that experts may not invade the court's province by testifying on issues of law."  *In re Public Offering Sec. Litig.*, 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001) (citation omitted) (collecting cases from every circuit, including the D.C. Circuit).   That is because such testimony is "outside [an expert] witness' area of expertise."  *Weston v. WMATA*, 78 F.3d 682, 684 n.4 (D.C. Cir. 1996).  To that point, as the

D.C. Circuit aptly observed, "[e]ach courtroom comes equipped with a 'legal expert,' called a judge, and it is his or her province alone to [provide] instruct[ion] [] on the relevant legal standards." *Burkhart v. WMATA*, 112 F.3d 1207, 1213 (D.C. Cir. 1997); *see* Weinstein's Federal Evidence § 702.03[3] ("Expert testimony is not admissible to inform the finder of fact as to the law that will be [applied] to the facts in deciding the case . . . . Expert witnesses are also prohibited from drawing legal conclusions. . . .).

It is precisely because it is within this Court's province to provide guidance and instruction on the relevant legal standards applicable to a case that experts may not testify as to the "ultimate issue" in a case.  To be sure, "an expert may offer his opinion as to facts, that if found, would support a conclusion that the legal standard at issue was satisfied, but he may not testify as to whether the legal standard has been satisfied." *Burkhart*, 112 F.3d at 1212-13. Accordingly, in cases in which a party has proffered an expert who seeks to testify as to the ultimate issue in the case, courts have been willing to strike such testimony.  *See, e.g.*, *id.* (striking expert's testimony regarding whether the defendant violated the Americans with Disabilities Act and the Rehabilitation Act); *Iacangelo v. Georgetown Univ.*, 560 F. Supp. 2d 53, 57-59 (D.D.C. 2008) (striking plaintiffs' experts whose reports "contain[ed] numerous 'impermissible legal conclusions'" where such testimony "would effectively usurp the function of the trier of fact in this case"); *Halcomb*, 526 F. Supp. 2d at 27 ("To the degree that Mr. Mazzei's opinions regarding probable cause and reasonable force verge into impermissible legal conclusions, [] they must be excluded.").

As applied in the context of fee requests, a declaration purporting to address the reasonableness of plaintiffs' fee request is of "limited use to the Court" because it "resembles an

advisory opinion on the legal questions before the Court." *City of Livonia Emps.' Ret. Sys. v. Hanson*, No. CIV 05-4178, 2007 WL 4376072, at *2 (D.S.D. Dec. 13, 2007). "The reasonableness of requested attorneys' fees is an issue that has been before the Court many times and is a legal question the Court does not require the assistance of an expert witness to resolve." *Id*. That is because testimony of an expert that constitutes mere personal beliefs as to the weight of the evidence – *e.g.*, the seven factor test courts in this Circuit employ to assess the reasonableness of a fee request – invades the province of the fact finder and is thus inadmissible. *See, e.g.*, *McGowan v. Cooper Indus., Inc.*, 863 F.2d 1266, 1273 (6th Cir. 1987); *STX, Inc. v. Brine, Inc.*, 37 F. Supp. 2d 740, 768 (D. Md. 1999).

In this case, the proffered testimony and opinions contained in Professor Eisenberg's declaration consist almost entirely of legal conclusions and legal opinions, including opinions on the ultimate issue in this aspect of the case, *i.e.*, the reasonableness of plaintiffs' counsel's fee request, and thus should be excluded under Rule 702. To that point, Professor Eisenberg recites the applicable legal standards courts utilize to assess the reasonableness of fee requests, *see* Eisenberg Decl., at 19-23, and even opines about the preferred method of calculating fees in this Circuit, expressly stating that the "percentage of the fund" method is the preferred method of assessing attorneys' fees in this Circuit. *See id.* at 21-22. It is not the role of an expert, however, to instruct the trier of fact on the law that applies in a particular case; that role is reserved for the court and to permit such testimony "effectively usurp[s] the function" of the Court to determine and interpret the applicable law. *Iacangelo*, 560 F. Supp. 2d at 59. Professor Eisenberg would "usurp" that role by "instructing the [trier of fact] as to the applicable law," *Bilzerian*, 926 F.2d at 1294, or by providing "testi[mony] as to the governing law." *United*

*States v. Leo*, 941 F.2d 181, 196 (3d Cir. 1991).

Experts, furthermore, may not opine, as Professor Eisenberg does here, on "what the law require[s]," *Leo*, 941 F.2d at 197, or "whether [a] legal standard has been satisfied," *Burkhart*, 112 F.3d at 1213. Professor Eisenberg's proffered testimony regarding his opinion that plaintiffs' counsel's request of a 7.4 percent fee award is reasonable, *see* Eisenberg Decl., at 9-10, 23-24, 28-32, 36-48, offers no discussion or expertise that can assist the Court "to understand the evidence" or "determine a fact in issue." Fed. R. Evid.702. Instead, it constitutes impermissible legal conclusions that intrude upon the duties of, and effectively substitutes for the judgement of, the Court as the trier of fact. *See, e.g.*, *Burkhart*, 112 F.3d at 1212-13 (striking expert's testimony regarding whether the defendant violated the Americans with Disabilities Act and the Rehabilitation Act); *Halcomb*, 526 F. Supp. 2d at 27 (explaining that expert's impermissible legal conclusions "must be excluded").

Under the established precedent of every circuit, including the D.C. Circuit, Professor Eisenberg may not provide expert testimony regarding the content and meaning of legal standards applicable to fee requests, offer an opinion as to how those legal standards should apply in this case, or offer an opinion on the ultimate issue of whether plaintiffs' counsel's 7.4 percent fee request is reasonable. That, however, is exactly what Professor Eisenberg does in his declaration. His entire declaration is nothing more than a legal memorandum providing his interpretation of the law, his conclusions about the law's application to this case, and his assessment of how the legal issue before this Court should be resolved. *See, e.g.*, Eisenberg Decl., at 9-10, 23-24, 28-32, 36-48   These legal conclusions and legal opinions are not admissible under Rule 702 because they will not assist the Court to "understand the evidence" or

"determine a fact in issue." Fed. R. Evid. 702. Plaintiffs' counsel may present legal arguments

on the reasonableness of their fee request in the proper form, the briefs (that they have already

filed in this case) and oral argument of counsel, but they may not present them via the expert

testimony of Professor Eisenberg.

Because it constitutes impermissible legal conclusions and legal opinions, Professor

Eisenberg's proffered testimony that plaintiffs' counsel's fee request is reasonable, his opinion

regarding the reasonableness of fee awards in other cases, his conclusion that the fee request is

appropriate under a lodestar analysis, and his opinion regarding the other factors that influence

this Court's fee assessment, *see* Eisenberg Decl., at 23-48, should be excluded under Rule 702.[3]

## II.   Plaintiffs' Counsel's Retention of Professor Eisenberg as a Purported Expert on the Reasonableness of Attorneys' Fees Diverts the Limited Fund Available to Claimants to Ancillary Litigation

In addition to the substantive deficiencies of plaintiffs' counsel's expert report, the Court

should strike the report because it unnecessarily diverts the limited fund available to claimants to

ancillary litigation. The Supreme Court has warned that disputes over attorneys' fees "should

not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). The

expert report, and the various analyses upon which the expert bases his opinion, opens the door

to protracted litigation over attorneys fees in this case. To be sure, the parties agreed in the

Settlement Agreement to litigate the issue of fees separately. But the parties did not agree to

---

[3] Even assuming *arguendo* that Professor Eisenberg's testimony regarding the reasonableness of plaintiffs' counsel's fee request were admissible (which it is not), it nevertheless should be excluded because it is of questionable relevance to the facts at issue in this case. Professor Eisenberg's conclusion assumes that this case can be treated as a typical "megafund" case without considering any other variables, or the unique circumstances of this case, where the federal government is a party to the action and Congress has appropriated a limited fund to resolve class members' claims.

escalate the fee issue into a battle of dueling experts on the issue of what constitutes a reasonable

fee.  Instead of simply briefing the issue of attorneys' fees for the Court to set a fee at its

discretion within the range already agreed to by the parties, as has been done in other farmer

discrimination cases, consideration of plaintiffs' counsel's expert report converts the fees issue

into a separate, money-consuming litigation.  *Cf. 2002 Irrevocable Trust for Richard C. Hvizdak*

*v. Shenzhen Dev. Bank, Co.,Ltd.*, No. 2:08-cv-556-FTM-36DNF, 2011 WL 4112776, at *5 (M.D.

Fla. Sept. 15, 2011) ("The trial court, itself, is an expert on the question of reasonableness of fees

and may consider its own knowledge and experience.").

    As discussed above, plaintiffs' counsel's expert relies on three theories for his

conclusion: (1) an assessment of the value obtained by counsel for the class, which, in turn relies

upon two empirical studies of class action fee awards; (2) a lodestar analysis, which is based

upon hours worked by plaintiffs' counsel in the case; and (3) the retainer agreements signed by

clients in this litigation.[4]  The government is entitled to discovery into each of those theories.

*See* Fed. R. Civ. P. 26(a)(2)(B); *see also Iacangelo v. Georgetown Univ.*, 272 F.R.D. 233, 233

(D.D.C. 2011) (noting the propriety of deposing opposing party's expert to discover information

covered by Rule 26(a)(2)).  While it is plaintiffs' counsel's burden to produce the facts or data

relied upon by their expert, *see id.*, Fed. R. Civ. P. 26(a)(2)(B)(ii), plaintiffs' counsel have not

fully done so here.  For plaintiffs' counsel to assert that the fee recovery is reasonable based on a

previously-published statistical analysis of fees, the government must be entitled to discovery of

---

    [4]   While Professor Eisenberg states that he performed a statistical analysis in the
underlying articles, Eisenberg Decl. at 30, his curriculum vitae does not show that he has any
degrees or other training in statistics.  This is yet another reason to strike his expert report.  *See
Burkhart*, 112 F.3d at 1211 (explaining that "[a] witness may be qualified as an expert based on
'knowledge, skill, experience, training, *or* education' in the relevant field" (emphasis in original)
(quoting Fed. R. Evid. 702)).

that underlying analysis which forms the basis of plaintiffs' counsel's "reasonableness" theory. For example, Professor Eisenberg proffers only summary statements of the " statistical analysis" he purportedly undertook to determine that plaintiffs' counsel's fee request is reasonable without providing, among other things, the actual formula on which he relied to reach his conclusions.[5] Furthermore, the government is entitled to depose Professor Eisenberg about each of his theories, including the lodestar analysis and "other factors that influence the fee assessment," Eisenberg Decl., at 44-47, using the underlying data plaintiffs' counsel must produce in support of the report.[6]  This requires the deposition of plaintiffs' counsel's expert, who charges $650 hourly for his time.  In addition to the discovery necessary to delve into Professor Eisenberg's expert report, if his expert report is allowed into evidence, the government may need to hire its own expert to respond to plaintiffs' counsel's expert and provide a rebuttal analysis.

Rather than allowing the Court to determine the appropriate amount of fees, the injection of an expert report into the analysis tends to turn the issue into the type of ancillary litigation unnecessary for attorneys fees.  *See Fox v. Vice*, 131 S.Ct. 2205, 2216 (2011) ("The fee applicant . . . must, of course, submit appropriate documentation to meet 'the burden of establishing entitlement to an award.' But trial courts need not, and indeed should not, become

---

[5]  Without this information, it is entirely unclear whether Professor Eisenberg's analysis and conclusions are reliable and instructive on the issue before this Court.  *See Garcia v. Johanns*, 444 F.3d 625, 635 (D.C. Cir. 2006) (plaintiffs' effort to rely on statistical evidence to prove their disparate impact claim was unavailing where "their statistical analyses were analytically flawed because they did not incorporate key variables connecting disparate impact to loan decisionmaking criteria").

[6]  Regardless of the expert report, Plaintiffs' reliance on the lodestar amount and the retainer agreements as an alternate theory warranting the requested recovery requires the disclosure of plaintiffs' counsel's billing records and retainer agreements.  *See* Pub. L. No. 111-291 § 201(g)(4)(A).

green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection.").  This is particularly true when the parties have already agreed upon a range of attorneys fees, and any ensuing expert costs will come out of the limited fund designed to compensate farmers, not litigation experts.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court grant its motion to strike Professor Eisenberg's declaration from the attorneys' fee briefing in this matter.

Dated: September 30, 2011                      Respectfully submitted,


                                               TONY WEST
                                               Assistant Attorney General

                                               RONALD C. MACHEN, JR.
                                               United States Attorney

                                                 /s/ Tamra T. Moore
                                               MICHAEL SITCOV, D.C. Bar # 308692
                                               TAMRA T. MOORE, D.C. Bar # 488392
                                               TAMARA ULRICH (N.Y. Bar)
                                               Federal Programs Branch
                                               Civil Division
                                               20 Massachusetts Avenue NW, Room 6134
                                               Washington, DC  20001
                                               Telephone:  (202) 514-8095
                                               Email: michael.sitcov@usdoj.gov
                                               Email: tamra.moore@usdoj.gov
                                               Email: tamara.ulrich@usdoj.gov

                                               Attorneys for Defendant