**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ———————————————— ) | |
| In re BLACK FARMERS DISCRIMINATION ) | |
| LITIGATION ) | |
| ———————————————— ) | Misc. No. 08-mc-0511 (PLF) |
| ) | |
| This document relates to: ) | |
| ) | |
| ALL CASES ) | |
| ———————————————— ) | |

**DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO STRIKE DECLARATION OF PROFESSOR THEODORE EISENBERG**

Plaintiffs do not dispute that Professor Eisenberg's declaration contains legal conclusions and legal opinions that are inadmissible under Federal Rule of Civil Procedure 702.   Nor do plaintiffs dispute that Professor Eisenberg's declaration fails to explain *how* he conducted the statistical analysis underlying his conclusion that plaintiffs' 7.4 percent fee request is reasonable or to provide the underlying formulas or data on which he relied to support this conclusion. Plaintiffs also do not dispute that they failed to inform the government that they had retained Professor Eisenberg to opine on the reasonableness of their fee request or to provide his expert report in advance of the filing of their attorneys' fee motion.   Each of these reasons provides an independent basis for this Court to strike Professor Eisenberg's declaration.  Accordingly, the Court should grant the government's motion.

**ARGUMENT**

**I.     Plaintiffs Do Not Dispute That Professor Eisenberg's Declaration Contains Legal Conclusions and Legal Opinions That Are Inadmissible Under Federal Rule of Evidence 702**

This Court has held that "[e]xpert testimony consisting of legal conclusions is

impermissible [and thus inadmissible] because such testimony merely states what result should be reached, thereby improperly influencing the decisions of the trier of fact and impinging upon the responsibilities of the court." *Halcomb v. WMATA*, 526 F. Supp. 2d 24, 27 (D.D.C. 2007). Indeed, the law in this Circuit is clear that experts may not opine on the relevant legal standards that are applicable to a case or "testify as to whether the legal standard has been satisfied," *Burkhart v. WMATA*, 112 F.3d 1207, 1212-13 (D.C. Cir. 1997), because it is the province of this Court alone to determine and interpret the applicable law.

In this case, plaintiffs do not dispute that Professor Eisenberg's declaration contains inadmissible testimony regarding the legal standard applicable to fee requests in this Circuit, how those legal standards should apply in this case, and his opinion on the ultimate issue to be decided by this Court, *i.e.*, whether plaintiffs' 7.4 percent fee request is reasonable. *See* Decl. of Professor Thomas, ECF No. 180 ("Eisenberg Decl."), at 9-10, 23-24, 28-32, 36-48.   Instead, they argue that the Court nonetheless should permit Professor Eisenberg to testify regarding the reasonableness of plaintiffs' fee request because "courts routinely admit and rely upon expert testimony to assist them in analyzing the reasonableness of an attorneys' fee request," Plaintiffs' Opposition to Defendant's Motion to Strike Decl. of Professor Eisenberg ("Pls.' Opp."), ECF No. 228, at 1, and because his testimony provides the Court "a benchmark based on his detailed empirical analysis of hundreds of other fee awards, an analysis the [C]ourt likely would not have the time to undertake on its own but that could well be helpful to the Court as it considers Plaintiff's [*sic*] fee request in this case." *Id.* at 2-3.   These arguments should be rejected.

Simply because some courts rely on expert testimony to assist them in analyzing a fee request does not mean that it is necessary or appropriate to do so in this case.   To that point,

plaintiffs and Professor Eisenberg rely heavily on cases in which courts have admitted and relied on expert testimony on the reasonableness of a fee request, *see id.* at 1-3; Eisenberg Decl., at 24-38, but those cases are readily distinguishable from this case because they largely involve mass torts, product liability, and securities class actions, the government was not a party in any of those actions, there was no limited fund at issue, and the parties in those actions had not reached any agreement on the reasonableness of plaintiffs' fee request.

By contrast, this case is not the typical mass tort action from which a comparison to other cases on Westlaw can provide adequate guidance.  This is particularly true when the parties have already agreed that fees within the range of 4.1 percent to 7.4 percent are reasonable, and the Court has preliminarily approved the parties' agreement on this point.  The fact that the parties have already agreed on a reasonable range of fees makes Professor Eisenberg's report all the more useless to the Court, which must decide where within the *agreed-upon* range of reasonable fees attorneys should be compensated.  By reaching the prior agreement, plaintiffs have *already conceded* that 4.1 percent can be considered a reasonable attorney fee for this litigation, just as the government has agreed that 7.4 percent can be considered a reasonable attorney fee for this litigation.[1]  Plaintiffs' proffer of an expert to provide the Court with a legal foundation to find their 7.4 percent fee request reasonable, when the fee range is not even in dispute, is unnecessary and undermines plaintiffs' prior agreement on fees.[2]

---

[1]  Although the government has agreed to a range of attorneys' fees in the Settlement Agreement as falling within a reasonable range of compensation for the work performed by plaintiffs' counsel in this litigation, the government does not agree that 7.4 percent is the most reasonable amount of fees within that range given the circumstances of this litigation.

[2]  Indeed, in *Keepseagle v. Veneman*, Case No. 99-3119, D.D.C., a case that Professor Eisenberg describes as "analogous" to this case in his declaration (presumably because the

In short, plaintiffs' reliance on class action cases that are factually distinguishable from this case is of questionable relevance at most, and cannot overcome the fact that Professor Eisenberg's proffered testimony regarding (1) the legal standard applicable to fee requests in the D.C. Circuit, (2) the reasonableness of plaintiffs' 7.4 percent fee request, (3) the propriety of plaintiffs' fee request under a lodestar analysis, and (4) the other factors that influence this Court's fee assessment, *see* Eisenberg Decl., at 23-48, is inadmissible and should be excluded under Rule 702.  Indeed, contrary to plaintiffs' assertion, *see* Pls.' Opp. at 2-3, this Court is more than capable of determining on its own how much plaintiffs' counsel should be compensated for their work in this litigation.  This is particularly so, where, as here, the parties have agreed that fees within the range specified under the Settlement Agreement are reasonable, and the Court has preliminarily approved that agreement.

## II.     The Court Should Strike Professor Eisenberg's Declaration Because It Fails To Disclose The Underlying Statistical Analysis Upon Which Professor Eisenberg Bases His Opinion

Notwithstanding the fact that Professor Eisenberg's declaration is replete with inadmissible legal conclusions and legal opinions, plaintiffs urge this Court not to strike Professor Eisenberg's declaration because "[t]he principal focus of [his] declaration concerns th[e] regression analysis" used to "compare[] the fee request and the ultimate class recovery in the present case with th[e] larger dataset of other cases [analyzed in the two articles co-authored by Professor Eisenberg]."  Pls.' Opp. at 4.  As the government pointed out in its opening brief, it is plaintiffs' burden to produce the facts or data relied on by Professor Eisenberg, *see* Fed. R.

---

government is a party to that litigation and the parties agreed to litigate fees within a range they and the Court deemed reasonable), *see* Eisenberg Decl., at 39-40, plaintiffs did not proffer, nor did the court require, an expert to opine on the reasonableness of plaintiffs' fee request.

Civ. P. 26(a)(2)(B)(ii), and they have not met that burden here.  Indeed, plaintiffs not only failed

to inform the government that they had retained Professor Eisenberg to opine on the

reasonableness of their fee request, they also failed to provide his expert report in advance of

filing their fees motion.  The Court should strike Professor Eisenberg's declaration on this

ground alone.  *See Halcomb*, 526 F. Supp. 2d at 28 (refusing to allow party to offer or elicit

expert testimony not previously disclosed to opposing party).

      Even if Professor Eisenberg's testimony were admissible and plaintiffs had complied

with their Rule 26 obligations, the declaration nevertheless should be struck because it proffers

only summary statements of the "statistical analysis" he purportedly undertook in previously-

published law review articles about generic "megafund" cases he found on Westlaw to determine

that plaintiffs' fee request here is reasonable.  Significantly, Professor Eisenberg did not disclose,

among other things, the actual formulas and data on which he relied to reach his conclusions.

Neither the government nor this Court is required simply to accept at face value the statistical

analysis *summarized* in Professor Eisenberg's declaration, particularly given that Professor

Eisenberg does not claim to have any degrees or training in statistics.  *See Burkhart*, 112 F.3d at

1211.  Indeed, if plaintiffs seek to rely on Professor Eisenberg's statistical analysis to support

their fee request, the government is entitled to receive and challenge the actual data and formulas

on which he bases his opinion.  *Cf. Garcia v. Johanns*, 444 F.3d 625, 635 (D.C. Cir. 2006)

(plaintiffs' effort to rely on statistical evidence to prove their disparate impact claim was

unavailing where "their statistical analyses were analytically flawed because they did not

incorporate key relevant variables connecting disparate impact to loan decisionmaking criteria").

Otherwise, Professor Eisenberg's testimony, including the empirical analysis on which he

purportedly relies, should be excluded.  *See Halcomb*, 526 F. Supp. 2d at 28 ("The purpose of

Rule 26(a)(2) is to prevent unfair surprise at trial and to permit the opposing party to prepare

rebuttal reports, to depose the expert, and to prepare for depositions and cross-examination at

trial.").

**<u>CONCLUSION</u>**

For the foregoing reasons and those set forth in its opening brief, the government

respectfully requests that the Court grant its motion to strike Professor Eisenberg's declaration

from the attorneys' fee briefing in this matter.

Dated: October 27, 2011                      Respectfully submitted,


TONY WEST
Assistant Attorney General

RONALD C. MACHEN, JR.
United States Attorney

  /s/ Tamra T. Moore
MICHAEL SITCOV, D.C. Bar # 308692
TAMRA T. MOORE, D.C. Bar # 488392
TAMARA ULRICH (N.Y. Bar)
Federal Programs Branch
Civil Division
20 Massachusetts Avenue NW, Room 6134
Washington, DC  20001
Telephone:  (202) 514-8095
Email: michael.sitcov@usdoj.gov
Email: tamra.moore@usdoj.gov
Email: tamara.ulrich@usdoj.gov

Attorneys for Defendant