UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| In re BLACK FARMERS DISCRIMINATION LITIGATION  )<br>)<br>)<br>)<br>This document relates to:  )<br>)<br>ALL CASES  )<br>) | Misc. No. 08-mc-0511 (PLF) |

**MOTION TO MODIFY FINAL ORDER AND JUDGMENT
AND MEMORANDUM IN SUPPORT THEREOF**

Pursuant to Federal Rule of Civil Procedure 60(b), Plaintiffs hereby move this Court to modify the final Order and Judgment (Docket No. 231) (hereinafter "Settlement Order") approving the Settlement Agreement entered between the parties (Docket No. 170, Ex. 2) in accordance with the attached Proposed Order.

The proposed modifications to the Settlement Order are needed to allow certain limited groups of claimants to file claims and/or rectify previously-filed incomplete claims after the May 11, 2012 Claim Deadline to obtain an adjudication on the merits of those claims. With this Motion, Plaintiffs do not seek a general extension of the Claim Period beyond May 11, 2012. However, as demonstrated below, considerations of fairness and equity warrant affording the limited groups of claimants that are the subject of this motion the opportunity to have their claims resolved on the merits. Accordingly, the proposed modifications to the Settlement Order are consistent with Congress's directive that Section 14012 of the Farm Bill[1] ("§ 14012") – the statutory underpinning of the Settlement – be "liberally construed to effectuate its remedial

---

[1] Pub. L. No. 110-246, 122 Stat. 1664 (June 18, 2008).

purpose of giving a full determination on the merits for each *Pigford* claim previously denied that determination." § 14012(d).  Pursuant to Local Rule 7(m), Class Counsel have conferred with counsel for the Defendant, who have indicated that they want to respond to this Motion.

## BACKGROUND

On October 27, 2011, this Court entered a Settlement Order approving the Settlement Agreement that was intended to "help further redress the historic discrimination against African-American farmers" by the U.S. Department of Agriculture.  *In re Black Farmers Discrimination Litig.*, 820 F. Supp. 2d 78, 112 (D.D.C. 2011).  The Settlement Order approved the establishment of a claims process pursuant to which class members in *Pigford v. Glickman* who had not obtained a merits determination of their discrimination claim because of late filing could submit their claim through a non-judicial claims process and, if determined by a neutral adjudicator to have satisfied the requirements established in the Settlement Agreement, obtain a specified award from the available Settlement Funds.  The Court set a May 11, 2012 deadline for the submission of such claims.  Docket No. 233.  The Settlement Order, unless modified, requires the Claims Administrator to reject both (a) all claims not submitted by the May 11, 2012 Claim Deadline and (b) all incomplete claims, regardless of how insignificant the missing information, if the incomplete aspect of the claim is not fully rectified within 30 days after the claimant receives notice of such missing information from the Claims Administrator.  *See* Settlement Agreement § V.B.3.

More than 38,000 claimants submitted claims within the specified claim period – *i.e.,* on or before May 11, 2012.  In accordance with the Settlement Order, the Court-approved Neutrals are currently in the process of adjudicating those claims that the Claims Administrator has determined to be timely, complete, and submitted by a Class Member.  It is currently anticipated

that the Neutrals will complete the process of rendering preliminary adjudications of all of these claims by no later than late September.

Based on information provided by the Claims Administrator, Class Counsel have identified a small number of Class Members who, under the provisions of the current Settlement Order, will be denied a merits adjudication of their claims but who Class Counsel believe, as a matter of fairness and equity and consistent with the spirit of §14012(d), *should* receive a merits adjudication of their claims.  In order to address these limited groups of claimants, Class Counsel met with counsel for the Defendant to attempt to reach agreement on appropriate and limited modifications to the Settlement Order.  While these discussions were ongoing, and so that the ultimate completion of the claims process would not be significantly delayed if the Court were to modify the Settlement Order to allow these claimants to have their claims adjudicated on the merits, the Claims Administrator sent either Claim Forms or so-called "Putative Letters" (as described below) to the individuals comprising these groups.[2]

Because the numbers of such Class Members are relatively small, permitting these Class Members to have their claims adjudicated will not significantly delay the ultimate completion of the claims process and therefore will not significantly delay the disbursement of awards to the thousands of other Class Members who it is expected will be determined by the Neutrals to be eligible to receive an award under the Settlement Agreement.

---

[2]  All of these letters emphasized that since their claims had not been filed before the May 11 Claim Deadline, there was only a "possibility" that their claims would be considered ("We do not know *whether the Court will in fact allow any Claim Forms filed after May 11 to be considered.*").  (emphasis added)  Copies of the different form letters sent by the Claims Administrator are attached hereto as Exhibit 1.

**Claimant Categories Addressed by Proposed Settlement Order Modifications**

Class Counsel seek modification of the Settlement Order to address the following categories of Class Members:

1.  **Category 1** (Proposed Settlement Order ¶ 27) – In the final days of the Claim Period, the Claims Administrator received more than 3,500 requests from potential claimants for Claim Forms. Under the procedure followed by the Claims Administrator, unless an individual was on either the "*Pigford* Timely 5(g) List" or the list of "late-late" *Pigford* applicants maintained by the *Pigford* Facilitator, the Claims Administrator would not send the individual a Claim Form *unless* the individual first presented some evidence that they had made a written request between September 15, 2000 and June 18, 2008 to participate in the *Pigford* claims process. This procedure was adopted as a way of identifying those claimants who would qualify as Class Members under the Settlement Agreement and minimizing the substantial additional administrative costs associated with processing the potentially thousands of claims submitted by individuals who could produce no evidence that they had made the necessary written request to participate in *Pigford,* a prerequisite for Class membership. Thus, the procedure followed by the Claims Administrator when it received a request for a Claim Form from an individual who was not on either of the *Pigford* Facilitator lists was to send the requestor a so-called "Putative Letter" in the form attached hereto as Exhibit 2. These letters advised the requestor that they were required to submit to the Claims Administrator evidence "that they [had] submitted a written request in *Pigford*" in order to receive a Claim Form.

Because of the large number of "last minute" requests for Claim Forms from so-called "putatives," the Claims Administrator was not able before the May 11 Claim Deadline to send out "Putative Letters" to more than 3,500 individuals who had requested Claim Forms shortly

4

before the Claim Deadline.  As a consequence, none of these "putative" claimants was provided a Claim Form before May 11, and, accordingly, they could not possibly have filed a claim before the May 11 deadline.

In late June, at the request of Class Counsel, the Claims Administrator sent "Putative Letters" to all of these individuals who had requested, but not received, a Claim Form before May 11.  That letter stated that if the recipients remained interested in pursuing a claim under the Settlement Agreement, they were required to submit evidence within 30 days that they had made a written request to participate in *Pigford* prior to June 18, 2008. (As noted above, these letters made clear that there was only a "possibility" that their claims would be considered and that the Claims Administrator did not "know whether the Court will in fact allow any Claim Forms filed after May 11 to be considered.")  The 30-day period for the submission of this evidence has now passed.  During the period, the Claims Administrator received responses from 345 individuals who were seeking a Claim Form.  The Claims Administrator has reviewed the evidence submitted by these requestors and has concluded that 26 of these individuals have submitted sufficient evidence of a written request in *Pigford* to potentially qualify as a Class Member.

Proposed Settlement Order ¶ 27 would allow these 26 individuals to submit a Claim Form and have their claims be adjudicated on the merits by the Neutrals, provided that the Claims Administrator determines they have demonstrated their entitlement to a Claim Form and they submit their Claim Form within 30 days of being sent the form by the Claims Administrator.  Class Counsel proposes this 30-day limitation to ensure that there will not be any undue delay in the completion of the overall claims process, as such a delay would prejudice the tens of thousands of Class Members who filed their claims before the May 11 Claim Deadline.

2.	**Category 2** (Proposed Settlement Order ¶ 27): There is one individual to whom the Claims Administrator successfully transmitted a Claim Form for the first time on May 10. That individual submitted her Claim Form four days later, on May 14. Because it would be unreasonable to require a claimant to submit a completed Claim Form in a single day, and because the Claims Administrator was unable to send this individual a Claim Form until the next to last day in the Claim Period, Class Counsel believe that this claimant should be entitled to have her claim adjudicated on the merits by the Neutrals. Proposed Settlement Order ¶ 27 would allow this claimant to have her claim adjudicated on the merits by the Neutrals.

3.	**Category 3** (Proposed Settlement Order ¶ 27): There are 97 individuals who requested Claim Forms before May 11, who the Claims Administrator concluded were entitled to receive a Claim Form, and to whom the Claims Administrator attempted to send a Claim Form on or before May 11, but as to whom the Claim Form transmittal was not successful. As a result, these individuals did not receive a Claim Form before May 11 and, therefore, they could not possibly have submitted their Claim Forms before the Claim Deadline.

In late June, at the request of Class Counsel, the Claims Administrator retransmitted Claim Forms to these individuals. The letter retransmitting the Claim Forms indicated that the recipients were required to submit a completed Claim Form within 30 days if they desired to have their claim adjudicated by the Neutrals. (As noted above, these letters made it clear that there was only a "possibility" that their claims would be considered and that the Claims Administrator did not "know whether the Court will in fact allow any Claim Forms filed after May 11 to be considered.") The 30-day period for the submission by these individuals of their Claim Forms has now passed. During that period, the Claims Administrator received Claim

Forms from 46 of these individuals. Proposed Settlement Order ¶ 27 would allow these 46 individuals to have their claims adjudicated on the merits by the Neutrals.

4. **Category 4** (Proposed Settlement Order ¶ 27) – Late in the claims period, the Claims Administrator received a request from Everett Martindale, a lawyer in Little Rock, Arkansas, for Claim Forms for several hundred individuals he purported to represent. It was not until after the May 11 Claim Deadline that the Claims Administrator was able to determine that there was sufficient evidence that Mr. Martindale had in fact, as he asserted, submitted a written request on behalf of these individuals to participate in *Pigford*. Following that determination, and consistent with the procedure it had followed for requests by other lawyers for Claim Forms for purported clients, the Claims Administrator required Mr. Martindale's purported clients to request that their Claim Forms be sent to Mr. Martindale. All of the 383 individuals on the "client list" submitted by Mr. Martindale requested the Claims Administrator to send their Claim Forms to Mr. Martindale.

In late June, at the request of Class Counsel, the Claims Administrator sent Claim Forms to Mr. Martindale for these 256 clients.[3] The letter transmitting these Claims Forms indicated that Mr. Martindale was required to submit a completed Claim Form for these clients within 30 days in order to have these claims adjudicated by the Neutrals. (As noted above, these letters made it clear that there was only a "possibility" that their claims would be considered by the Neutrals and that the Claims Administrator did not "know whether the Court will in fact allow any Claim Forms filed after May 11 to be considered.") The 30-day period for the submission of these Claim Forms has now passed. To date, the Claims Administrator has received Claim

---

[3] The remaining 127 Martindale clients are being sent Claim Forms at the same time as Claim Forms are sent to the Category 5 claimants.

Forms from 248 of these individuals. Proposed Settlement Order ¶ 27 would allow these 248 individuals to have their claims adjudicated on the merits by the Neutrals.

5. **Category 5** (Proposed Settlement Order ¶ 28(i)) – Late in the claim period, Class Counsel learned of the existence of a previously unknown list of more than 3,500 individuals who had written to the Court and/or to the Office of the Monitor regarding the *Pigford* case, between 2002 and June 2008. That list is called the "Monitor's Mass Media List," and is described more fully in the attached Declaration of Randi Ilyse Roth, attached as Exhibit 3. Prior to learning of this list, Class Counsel believed that all such information maintained by the *Pigford* Monitor had been provided previously to the Claims Administrator.

Of the more than 3,500 individuals on the Monitor's Mass Media list, the Claims Administrator was able to determine that slightly more than 1,700 of the individuals on the list were already included on either the "timely 5(g)" list or the "late-late" list maintained by the *Pigford* Facilitator, and therefore already had been sent Claim Forms at the beginning of the claims process. Of the remaining 1,800-plus individuals on the Monitor's Mass Media list, an additional 78 were sent Claim Forms in late June, at the request of Class Counsel, because the Claims Administrator determined that it already had in its possession evidence of a written request by these individuals to participate in *Pigford*.[4] These individuals were required to complete and submit the Claim Form to the Claims Administrator within 30 days – which period

---

[4] As with the letters sent to other individuals whose Claim Forms would be received by the Claims Administrator after the May 11 claim deadline, these letters made clear that there was only a possibility that their claims would be considered and that the Claims Administrator did not "know whether the Court will in fact allow any Claim Forms filed after May 11 to be considered."

Case 1:08-mc-00511-PLF   Document 300   Filed 08/17/12   Page 9 of 17

has now passed. Of this group, five (5) have submitted Claim Forms. Proposed Settlement Order ¶ 28(i) would allow these 5 individuals to have their claims adjudicated on the merits by the Neutrals.

With respect to the remaining 1,745 individuals whose names were on the Monitor's Mass Media list, Class Counsel have concluded, based on the attached Declaration of the *Pigford* Monitor, that all of these individuals sent substantially identical "Mass Media" letters to the Court or to the Monitor, and therefore should be treated the same as the other individuals who sent "Mass Media" letters to the Court and/or the Monitor. *See* Declaration of Randi Ilyse Roth, Monitor, attached as Exhibit 3. Class Counsel were recently advised by the Claims Administrator that it reviewed copies of the "Mass Media" letters that had been retained by some of these individuals (and forwarded in support of their claim to have submitted a prior written request to participate in *Pigford*) and has deemed such correspondence sufficient evidence of a written request to participate in *Pigford* to entitle such individuals to receive a Claim Form.

As a result, since the Monitor's declaration attests that all of the individuals on the Monitor's Mass Media list are believed to have sent the same, or a substantially similar, "Mass Media" letter to the Court and/or the Monitor, Plaintiffs submit that all such individuals are entitled to receive a Claim Form. Had the Monitor's Office retained this correspondence from these individuals, they would have received Claim Forms in the normal course, at the beginning of the claims process. However, because the Court's and/or the Monitor's Office's copies of their correspondence were destroyed inadvertently, and the determination that the correspondence tracked in the Monitor's Mass Media spreadsheet was virtually identical to the Mass Media letters already determined by the Claims Administrator to constitute written requests to participate in *Pigford* was not made until after the May 11 deadline, 1,745 of these individuals

were not sent, and therefore could not possibly have completed, Claim Forms by May 11. Proposed Settlement Order ¶ 28(i) would, therefore, also allow these 1,745 individuals to receive a Claim Form and have their claims adjudicated on the merits by the Neutrals *provided that* they submit their Claim Form within 30 days after they are sent the form by the Claims Administrator.

Accordingly, at the request of Class Counsel, the remaining 1,745 individuals have been sent the attached follow up letter, along with a Claim Form, advising them that if they want to submit a claim, they should complete and submit the Claim Form within 30 days. (As with the other letters, these letters make clear that there is only a "possibility" that their claims will be considered and that the Claims Administrator does not know whether the Court will in fact permit any Claim Forms filed after May 11 to be considered.)

6.      **Category 6** (Proposed Settlement Order ¶ 28(ii)) – Late in the claim period, Class Counsel learned that 327 individuals who had actually filed late claims in *Pigford* were not on either of the *Pigford* Facilitator lists because those lists did not include individuals who had filed a late claim in *Pigford,* rather than a *request* to file a late claim. Because their names were not on either of the *Pigford* Facilitator lists, these individuals did not receive the direct Claim Form mailing in November 2011 or the follow- up correspondence from the Claims Administrator that was sent to the individuals whose names were on the *Pigford* Facilitator lists. As Class Counsel believe that the filing of an actual late claim in *Pigford* clearly demonstrates an intent to participate in the *Pigford* claims process, Class Counsel believe that these individuals should have been treated the same as the individuals whose names were on the *Pigford* Facilitator lists and, therefore, should have received a direct mailing of a Claim Form rather than being forced to learn of the Settlement from other sources and thereafter initiate a request for a Claim Form.

10

In late June, at the request of Class Counsel, the Claims Administrator sent a Claim Form to all of the individuals in this category. That letter indicated that the recipient was required to submit a completed Claim Form within 30 days if they desired to pursue a claim under the Settlement Agreement. (As noted above, these letters made clear that there was only a "possibility" that their claims would be considered and that the Claims Administrator did not "know whether the Court will in fact allow any Claim Forms filed after May 11 to be considered.") The 30-day period for the submission by these individuals of their Claim Forms has now passed. During the period, the Claims Administrator received Claim Forms from 79 of these individuals. Proposed Settlement Order ¶ 28(ii) would allow these 79 individuals to have their claims adjudicated on the merits by the Neutrals.

7.  **Category 7** (Proposed Settlement Order ¶ 29) – The Settlement Agreement requires claimants to submit a *complete* claim package – *i.e.*, a Claim Form with *all* questions *fully* completed, and *all* requisite supplemental documents attached. *See* Settlement Agreement §V.B.2. Under the process established by the Settlement Agreement, the Claims Administrator has reviewed submitted Claim Forms to determine if they are complete. With respect to Claim Forms found by the Claims Administrator not to be complete, the Claims Administrator has sent the claimant a "Your Claim Package Is Not Complete" letter notifying them of the information missing from their Claim Forms and requiring them to provide the missing information within 30 days of the notification. *See* Settlement Agreement, Exhibit F.

The Claims Administrator has advised Class Counsel that there are approximately 1,500 claimants who were sent "Your Claim Package Is Not Complete" letters who failed within the required 30-day period to complete one or more *non-substantive* portions of the Claim Form. By way of example, there are Claims Forms that are otherwise complete but that are missing a zip

11

code, or where the claimant simply failed to check the box in Section 10 of the Claim Form acknowledging the final and unappealable nature of the claim determination. Such "technical" aspects of the Claim Form would not have any bearing on the merits of the submitted claim, but under the Settlement Order, if not modified, the Claims Administrator would not be permitted to transmit these claims to the Neutrals for adjudication.

Class Counsel believe that claimants who failed to cure *non-substantive* Claim Form incompletions within the 30-day period required by the Settlement Agreement but who do cure such incompletions on or before September 30, 2012 should be able to obtain an adjudication on the merits of their claims.[5] To prevent otherwise meritorious claims from being denied for wholly technical reasons, Proposed Settlement Order ¶ 29 would give claimants who received a "Your Claim Package Is Not Complete" letters for technical incompletions until September 30, 2012 to rectify the technical incompletions in their Claim Forms.

## ARGUMENT

Under Federal Rule of Civil Procedure 60(b), a "court may relieve a party . . . from a final judgment, order, or proceeding . . . [if] applying [the judgment] prospectively is no longer equitable, or [for] any other reason that justifies relief." Fed. R. Civ. P. 60(b)(5),(6). In considering whether to revise a final order or judgment, courts generally consider whether (a) there has been "a significant change in facts or law [that] warrants revision of the [judgment]" and (b) whether that the modification proposed is "suitably tailored to the changed circumstance." *See, e.g.*, *LaShawn A. v. Fenty*, 701 F. Supp. 2d 84, 95 (D.D.C. 2010) (citing *Rufo v. Inmates of the Suffolk County Jail*, 502 U.S. 367, 393 (1992)). The first prong may be

---

[5] Class Counsel do not seek any modification of the Settlement Order insofar as it bars claimants who failed to timely rectify *substantive* omissions in their Claim Forms from receiving an adjudication of their claims.

satisfied by a showing that "the decree was not meeting its intended purpose." *League of United Latin American Citizens, Dist. v. City of Boerne*, 659 F.3d 421, 438 (5th Cir. 2011) (citing *United States v. United Shoe Mach. Corp.*, 391 U.S. 244, 252 (1968), and *Rufo,* 502 U.S. at 378, for the proposition that "courts should apply a flexible approach when deciding modification requests"). Importantly, however, courts do not generally require a showing that the changed circumstances were completely unforeseeable; rather, "[i]t is enough that the parties did not actually contemplate the changed circumstances." *Evans v. Williams*, 206 F.3d 1292, 1298 (D.D.C. 2010).

Plaintiffs here seek to modify the Court's final Settlement Order and Judgment to allow the participation in the claims process of certain limited categories of Class Members who, as a matter of fairness and equity, should not be excluded from the claims process. At the time the Settlement Agreement was negotiated, and then presented to the Court for approval, Plaintiffs neither intended, nor fully anticipated, that the categories of Class Members who are the subject of this motion would be excluded, by operation of the process set out in the Settlement Agreement and approved by the Court, from participating in the claims process.

In proposing the modifications to the Settlement Order described herein and set forth in the attached Proposed Settlement Order, Plaintiffs have strived to craft narrow and suitably tailored revisions to the Settlement Order. Thus, the proposed modifications provide relief to very limited groups of claimants, and the time periods proposed for these claimants to submit new Claim Forms and/or rectify incompletions in their Claim Forms is quite brief. Moreover, Class Counsel, in crafting these proposed modifications to the Settlement Order, have been

careful to ensure that the relief sought would not significantly push back the payment of awards to other successful claimants.[6]

In passing the Farm Bill, Congress made clear its intent that Section 14012, which underlies the Settlement, be "liberally construed to effectuate its remedial purpose of giving a full determination on the merits for each *Pigford* claim previously denied that determination." § 14012(d).  The Court recognized the importance of this goal when, in approving the Settlement Agreement, it "join[ed] all . . . parties in hoping [the Settlement] will bring class members the relief to which they are entitled."  *In re Black Farmers Discrimination Litig.*, 820 F. Supp. 2d at 112-113.  For these reasons, Plaintiffs respectfully request that the Court enter the Proposed Order attached hereto.

                               Respectfully submitted,

| /s/ | /s/ |
|---|---|
| Henry Sanders, Esq. | Andrew H. Marks, Esq. |
| CHESTNUT, SANDERS, SANDERS, | D.C. Bar No. 932269 |
| PETTAWAY & CAMPBELL, L.L.C. | CROWELL & MORING LLP |
| One Union Street | 1001 Pennsylvania Avenue, N.W. |
| Selma, AL 36701 | Washington, DC 20004 |
| Tel:  (334) 875-9264 | Tel:  (202) 624-2920 |
| Fax:  (334) 875-9853 | Fax:  (202) 628-5116 |

---

[6] *Compare Pigford v. Johanns*, 416 F.3d 12 (D.C. Cir. 2005) (noting four factors for consideration of a Fed. R. Civ. P. 6(b) extension of time: (1) the danger of prejudice to the non-movant; (2) the length of the delay and its potential effect on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith") (quoting *In re Orthopedic Bone Screw Prods Liab. Litig.*, 246 F.3d 315, 322-23) (3d Cir. 2001)).

        /s/
Gregorio A. Francis, Esq.
MORGAN & MORGAN, P.A.
20 North Orange Avenue, Suite 1600
Orlando, FL 32801
Tel:  (407) 420-1414

Dated:  August 17, 2012

## CERTIFICATE OF SERVICE

     I certify that on August 17, 2012, I served this Motion by hand on the following attorneys for the Defendant:

Michael Sitcov
Tamra Moore
Federal Programs Branch
U.S. Department of Justice, Civil Division
20 Massachusetts Avenue, N.W.
Washington, D.C.  20530.

I also filed a copy of this Motion via ECF, which provided service to all other counsel of record.

        /s/
Michael W. Lieberman

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re BLACK FARMERS DISCRIMINATION LITIGATION )<br>)<br>)<br>)<br>This document relates to: )<br>)<br>ALL CASES )<br>) | Misc. No. 08-mc-0511 (PLF) |

## PROPOSED SETTLEMENT ORDER

Upon consideration of the Unopposed Motion To Amend Final Order and Judgment, and the entire record herein, it is hereby

ORDERED that the Order and Judgment (Docket No. 231) entered by this Court on October 27, 2011 be and hereby is amended by adding the following:

27. Notwithstanding the May 11, 2012 Claim Deadline established by the Court in Docket No. 233 of the Consolidated Case, a Claimant who (*i*) requested a Claim Form from the Claims Administrator prior to the Claim Deadline (May 11, 2012), (*ii*) the Claim Administrator determines has made a *prima facie* showing of class membership, and (*iii*) was not sent a Claim Form before May 1, 2012 shall be entitled to submit a claim, and to have that claim deemed timely, if the Claimant submits a Complete Claim Package to the Claims Administrator within thirty (30) days after the Claims Administrator sends the Claimant a Claim Form.

28. Notwithstanding the May 11, 2012 Claim Deadline established by the Court in Docket No. 233 of the Consolidated Case, a Claimant who either (*i*) wrote to the Court and/or the *Pigford* Monitor between October 13, 1999 and June 18, 2008 or (*ii*) submitted a claim form in *Pigford* between October 13, 1999 and June 18, 2008 to the *Pigford* Facilitator shall be entitled to submit a claim, and to have that claim deemed timely, if the Claimant submits a Complete Claim Package to the Claims Administrator within thirty (30) days after the Claims Administrator has made a *prima facie* determination of class membership and sent the Claimant a Claim Form.

29. Notwithstanding Section V.B.2 of the Settlement Agreement, if the Claims Administrator determines that Sections 7(A)-(G) and 9(A)-(C) of the Claim Form are complete, the Claim Form shall be deemed complete for purposes of submittal

1

of the Claimant's Claim Package to the Track A or Track B Neutral. Any Class Member who has submitted such a Claim Form must complete all remaining portions of the Claim Form by no later than September 30, 2012 to be eligible to receive an award under the Settlement Agreement.

In all other respects the Order and Judgment as previously entered by the Court shall remain in full force and effect.

    SO ORDERED.

_____
PAUL L. FRIEDMAN
United States District Judge

DATE: