IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
In re BLACK FARMERS DISCRIMINATION     )     Misc. No. 08-mc-0511 (PLF)
LITIGATION                                        )
_____ )

OMBUDSMAN REPORT REGARDING THE IMPLEMENTATION OF THE
SETTLEMENT AGREEMENT THROUGH SEPTEMBER 30, 2012

I.     INTRODUCTION AND EXECUTIVE SUMMARY

        The Ombudsman and Deputy Ombudsman for the *In re Black Farmers Discrimination Litigation* settlement are court-appointed neutrals that are independent of both parties. One Ombudsman task is to report on good faith implementation of the Settlement Agreement.  This is the first such report.

        This report focuses on implementation issues that bear directly on how potential claimants learn of the settlement and attempt to make a claim in the case. The deadline for filing a completed claim package was May 11, 2012.   This report looks at events that take place through September 30, 2012.

        The implementation of the *In re Black Farmers* Settlement Agreement is a complicated and formidable undertaking.  In the first six months potential claimants must be identified, likely class members provided with Claim Forms, claimants provided with assistance in completing the claim package, and completed claim

packages filed.  Each aspect of this effort involves tens of thousands of possible

claimants.  Every claimant has a unique circumstance and a personal story to tell. The

Claim Form itself is lengthy and technical.  Inevitably in such a process

implementation difficulties arise.  Inevitably, as well, some people who believe they

should be a part of the settlement are excluded and are disappointed.  In the end,

however, Class Counsel and the Claims Administrator, who bear the bulk of the

implementation responsibilities of this phase of the settlement, brought considerable

expertise, resources, and commitment to the effort.  Further, the parties and neutrals

listened to suggestions regarding how implementation could be improved and worked

to incorporate the suggestions as implementation work progressed.  Assisting in the

effort were independent grass roots farm organizations that brought significant

knowledge and diligence to the outreach and sign-up work.  During the period covered

by this report more than 30,000 completed claim packages were submitted.

In sum, the *In re Black Farmers* Settlement Agreement created a demanding

process that called for the evaluation and sign-up of tens of thousands of claimants.

We conclude that the parties and neutrals acted in good faith to implement this phase

of the Settlement Agreement.

II.       BACKGROUND AND AUTHORITY FOR REPORT

The *In re Black Farmers Discrimination Litigation* Settlement Agreement

allowed the Court to appoint an independent Ombudsman that would report directly to

the Court.[1]  The Court appointed an Ombudsman and Deputy Ombudsman on February

6, 2012.  One of the tasks assigned to the Ombudsman is to make periodic written

reports on the good faith implementation of the Settlement Agreement to the Court, the

Secretary of Agriculture, and Class Counsel.[2]  This is the first such report.

III.   PARAMETERS OF THIS REPORT

This report focuses on implementation issues that bear directly on how

potential claimants learn of the settlement and attempt to make a claim in the case.  In

particular, therefore, it focuses on the identification of class members, the distribution

of Claim Forms, and the submission of *In re Black Farmers* claim packages by

claimants.

The parameters of this report are consequently limited in three important ways.

First, the report focuses on implementation of the Settlement Agreement.  It does not,

in other words, consider the merits of the settlement itself.  As a result, certain

questions raised as claimant or public concerns are addressed only briefly.

Second, this report focuses on the period from Court approval of the Settlement

Agreement on October 27, 2011 to September 30, 2012.  Subsequent reports will

address the continued implementation of the settlement.

---

[1]   Settlement Agreement, February 18, 2010 (Revised and Executed as of May 13, 2011), section VI,
at 32.  The Settlement Agreement is available on the Ombudsman website at
http://www.inreblackfarmersombudsman.com/court-filings/.
    For the remainder of the report, *In re Black Farmers Discrimination Litigation* is shortened to
*In re Black Farmers*.

[2]   Order of Reference: Appointment of Ombudsman (February 16, 2012).  The Order of Reference is
available on the Ombudsman website at: http://www.inreblackfarmersombudsman.com/orders/.

Third, the Settlement Agreement contains considerable detail regarding the allocation of financial resources for the everyday implementation of the settlement.[3] That topic is not a subject of this report.  It will be considered in subsequent reports.

In order to prepare this report, the Ombudsman and Deputy Ombudsman gathered information from the parties and from the neutrals -- the Claims Administrator, Track A Neutral, and Track B Neutral -- implementing the settlement. We also spoke with, and exchanged electronic mail and regular correspondence with, claimants, attorneys, advocates, farm organizations, and other interested people.

IV.   THE SETTLEMENT: A BRIEF SUMMARY

The structure and internal logic of the *In re Black Farmers* settlement is discussed in detail in the Court's Order and Judgment and in the Court's Opinion.[4] Both were issued on October 27, 2011.  *In re Black Farmers*, at its most basic level, is designed to provide a possible remedy for those who would otherwise have been able to participate in a class action settlement for African American farmers known as

---

[3]   See, for example, Settlement Agreement, section V.E, at 27-31.

[4]   The Order and Judgment and Opinion are available at the Ombudsman website at: http://www.inreblackfarmersombudsman.com.orders/.  The legislative authorization for the cause of action that resulted in the settlement can be found in the Food, Conservation, and Energy Act of 2008, commonly known as the 2008 Farm Bill, at Pub. L. 110-234, section 14012, 122 Stat. 923, 1447-1450 (2008), and at Pub. L. 110-246, section 14012, 122 Stat. 923, 1651, 2209-12 (2008). Statutory authority for the cause of action that led to the *In re Black Farmers* settlement limited in some important respects the flexibility of the parties in negotiating the settlement.  For the purposes of this report the facets of the settlement that were required by statute and those that were a product of negotiation by the parties are not distinguished.

*Pigford* but were not able to participate in the *Pigford* case because they were too late in making a *Pigford* claim.[5]

Summarizing, the implementation of the *In re Black Farmers* Settlement Agreement might be divided into five largely sequential stages:

(1) Distribution of Claim Forms to prospective claimants;

(2) Submission of complete claim packages by claimants to the Claims Administrator;

(3) Evaluation of class member status by the Claims Administrator;

(4) Evaluation of the substantive merits of claims by Track A and B Neutrals; and

(5) Calculation and payment of claimant awards.

The Settlement Agreement sets out a division of labor for implementation tasks.  In general tasks are divided among Class Counsel, the Claims Administrator, a Track A Neutral, and a Track B Neutral.[6]  Notably, the United States Department of Agriculture (USDA) plays a limited role in the actual implementation of the settlement.

In the following sections the five general stages of implementation are discussed in turn.

---

[5]     The *Pigford* case is Pigford v. Glickman, Civil Action No. 97-1978 (D.D.C.).  Documents pertaining to the *Pigford* settlement, including the Consent Decree and explanations of how various *Pigford* matters were handled, including the rules that applied for those that filed late, can be found at the *Pigford* Monitor website, now at http://www.dcd.uscourts.gov/pigfordmonitor/.

[6]     A discussion of the roles of various actors is in the Definitions section of the Settlement Agreement, section II, at 3-9.  Duties of Class Counsel can be found in the Settlement Agreement, section VIII, at 33-35.

V.   DISTRIBUTION OF CLAIM FORMS TO PROSPECTIVE CLAIMANTS

In order to make a claim in the case, a prospective claimant must receive a

Claim Form.  This section discusses the process whereby Claim Forms are made

available to prospective claimants.

A.   THE CLAIM FORM DISTRIBUTION PROCESS

In order to make a successful claim in the case a class member must submit a

completed claim package (which includes a completed Claim Form) to the Claims

Administrator.  An official Claim Form is made available by the Claims Administrator

or Class Counsel to those who are determined to be likely class members.[7]  In addition,

each Claim Form is identified with a unique bar code that is reserved for a particular

claimant.  As a result, access to a Claim Form is the first substantive screening of

prospective claimants whereby some people who seek to participate are excluded from

the settlement.[8]

In order to receive a Claim Form a prospective *In re Black Farmers* claimant

must show that he or she made what is known in the Settlement Agreement as a "late-

---

[7]   According to the Settlement Agreement, class members are:
     All individuals: (1) who submitted Late-Filing Requests under Section 5(g) of the Pigford v.
     Glickman Consent Decree on or after October 13, 1999, and on or before June 18, 2008; but (2)
     who have not obtained a determination on the merits of their discrimination complaints, as
     defined by Section 1(h) of the Consent Decree.
     Settlement Agreement, section III.A, at 9.

[8]   The decision to limit distribution of Claim Forms in this way was not a part of the Settlement
     Agreement.  As Class Counsel has explained, this procedure was adopted as a way of identifying
     claimants who would qualify as class members while minimizing the administrative costs that
     would have come with processing the claims of those who could not establish that they had tried to
     participate in *Pigford*.  See Motion to Modify Final Order and Judgment and Memorandum in
     Support Thereof, at 4 (August 17, 2012).

filing request" to participate in the *Pigford* case.[9]  According to the *In re Black Farmers* settlement, only people who made a written request to be a part of the *Pigford* lawsuit can be part of the *In re Black Farmers* class.  That written request must have been made between October 13, 1999 and June 18, 2008 to one of five entities: the Court, the *Pigford* Monitor, the *Pigford* Facilitator, the *Pigford* Arbitrator, or the *Pigford* Adjudicator.  In addition, a person cannot be an *In re Black Farmers* class member if he or she actually participated in *Pigford*.[10]

As a general matter, the *In re Black Farmers* Claims Administrator determines who receives a Claim Form.[11]  Three sorts of evidence are used by the Claims Administrator to decide if a person is to receive a Claim Form.

First, the Claims Administrator collected a list of people known by the *Pigford* Facilitator to have made a written request to participate in *Pigford* to one of the five entities mentioned above.  The people on this list are preliminarily presumed by the Claims Administrator to have made a written request participate in *Pigford*.

Second, if records with the Claims Administrator do not already show that a written request to participate in *Pigford* was made by the prospective claimant, in order to receive a Claim Form the prospective claimant must produce "independent

---

[9]    The original deadline for filing a claim in *Pigford* was October 12, 1999.  See *Pigford* Monitor Update no.13, "The *Pigford* Case Is Closed: No One Can Get Into the Case If They Did Not Apply by Deadlines."  This document is available on the *Pigford* Monitor website, now at http://www.dcd.uscourts.gov/pigfordmonitor/updates/update13.pdf.

[10]   Participation in *Pigford* is taken to mean a claimant was permitted to file a *Pigford* Claim Sheet, even if the Claim Sheet was not actually filed.  This point is discussed below.

[11]   In some cases, Class Counsel provided Claim Forms to claimants.

documentary evidence" that the *Pigford* request was made.  If no such evidence is provided to the Claims Administrator, the Claims Administrator does not send a Claim Form to the prospective claimant.

Third, the *In re Black Farmers* Claims Administrator has records showing who was actually able to participate in *Pigford*.  These records are consulted by the Claims Administrator to determine if those who tried to get into *Pigford* late were allowed to participate in the *Pigford* settlement.

B.  <u>PROBLEMS REPORTED REGARDING CLAIM FORM DISTRIBUTION</u>

If a potential claimant does not receive a Claim Form he or she is not able to participate in the settlement.  The distribution of Claim Forms, as a result, has been a significant source of concern to potential class members and others.  Three types of problems were raised with the Ombudsman and Deputy Ombudsman regarding the delivery of Claim Forms to potential claimants.  These concerns are: notice of the settlement to prospective claimants; the rules used to deny Claim Forms to some people; and confusion regarding who can receive a Claim Form.  These concerns are discussed in the following sections.

(1)  <u>NOTICE TO PROSPECTIVE CLAIMANTS</u>

In order to file a claim, a potential claimant must know of the settlement.  At least three aspects of the settlement made gaining knowledge of the case and the settlement a challenge for potential claimants.  First, for most potential claimants

considerable time has passed since they sought to enter *Pigford*.  The bulk of the efforts to get into *Pigford* late occurred in 1999 and 2000.  Inevitably, therefore, some people passed away in the interim.  In addition, many people moved, changed addresses, or otherwise are not easily notified using the list and addresses in possession of the Claims Administrator.  Second, as grass roots farm organizations point out, most potential claimants live in the rural South, many are now elderly, and many are not routine consumers of daily news sources that reported on the events leading to the settlement or on the settlement itself.[12]

Five tactics were used to let people know of the settlement.  First, a Notice Program was established in the Settlement Agreement. It involved notice in newspapers, radio, farming publications, newspapers, magazines, and on line.[13]

Second, the Claims Administrator engaged in a series of mailings to those known to have sought to make a late claim in *Pigford*.  When mail was returned as undeliverable, the Claims Administrator made additional efforts to track down addresses for the potential claimants.  As of October 5, 2012, according to the Claims Administrator, mailed notice of the settlement had been sent to about 89,479 people.  Notice efforts to about 9852 people remained undeliverable after all attempts were made by the Claims Administrator to send the notice.  Further, as the May 11, 2012

---

[12]   Notice to prospective claimants was the subject of correspondence between grass roots farm organizations and the Court.

[13]   This Notice Program is described in Attachment 3 of the Settlement Agreement and was approved, along with the Settlement Agreement, by the Court.

deadline approached, the Claims Administrator called potential claimants to remind them of the deadline.

Third, a website provided information about the settlement and claim process.[14]

Fourth, Class Counsel conducted informational meetings for potential claimants.

Fifth, grass roots farm organizations independently engaged in substantial outreach efforts to notify and assist potential claimants.

(2) THOSE DENIED CLAIM FORMS

Many people felt they should have received a Claim Form but were not permitted by the Claims Administrator to receive one.  The Ombudsman and Deputy Ombudsman heard from hundreds of people who expressed frustration regarding their failure to receive a Claim Form.  As explained above, the Claims Administrator does not provide a Claim Form to people who are not on the Claims Administrator list of those who filed late in *Pigford* and who cannot otherwise preliminarily show that they filed late in *Pigford*.  Frustration seems to have origins in several different types of circumstances.

(a) *African American Farmer, But Did Not Seek to Make a Claim in* Pigford

Many African American farmers, former farmers, and the heirs of those who farmed feel that the *In re Black Farmers* settlement should, by definition, include

---

[14]   The website is at https://www.blackfarmercase.com//.

them.  Among these are people who readily acknowledge that they had not tried to

enter *Pigford*.  Still, they believe that the settlement should be for all African American

farmers and the heirs of those farmers.

> (b) *Estate Claim and the Identity of the Person Who Sought to Enter* Pigford

The settlement provides for the possibility of an estate claim.  In order to file a

claim on behalf of a claimant that is deceased a person must provide a death certificate

for the deceased and evidence that the person filing the claim is the legal representative

of the deceased.[15]

If the Claims Administrator, when deciding the question of who should receive

a Claim Form, determines that a person sought to get into *Pigford* using his or her own

name, and now explains he or she intended to make that claim on behalf of an estate,

the Claims Administrator provides the prospective claimant with a Claim Form.

If, however, a person sought to make a claim in *Pigford* on behalf of another

person – say, a parent – and now wishes to make an *In re Black Farmer* claim on his or

her own behalf based on that effort, that person is not permitted by the Claims

Administrator to receive a Claim Form.

---

[15]    Settlement Agreement, section V.A.1.d, at 16.  The person seeking to submit the claim may, instead of proof of representation, provide a sworn statement describing why the person submitting the claim believes he or she will be appointed legal representative of the claimant's estate.  Further details on the functioning of estate claims are in the Settlement Agreement, section V.A.3, at 17.

(c) *Sought to Enter* Pigford*, but Does Not Meet* In re Black Farmers *Class Definition*

Among those denied Claim Forms are people who made some type of affirmative effort in recent years to secure a place in *Pigford*, but who still do not meet the definition of a class member for *In re Black Farmers*.  This appears to have happened with some regularity in several different scenarios.

*(1)* *Participated in* Pigford

According to the *In re Black Farmers* Settlement Agreement, a person qualifies as a *Pigford* late-filer only if he or she was not a *Pigford* participant.[16]  In other words, in order to meet the technical requirement of being a late-filer in *Pigford*, the effort to participate in *Pigford* must have failed.  As a result, if someone was originally late in making a *Pigford* claim, but was later allowed to file a *Pigford* Claim Sheet and Election Form, and allowed to have that claim evaluated on its merits by the *Pigford* Adjudicator or Arbitrator, that person is not an eligible class member for *In re Black Farmers*.[17]  This is true even if the person never actually filed the *Pigford* Claim Sheet.

---

[16]   A *Pigford* participant is one who submitted a timely claim in *Pigford*, or was permitted to file a Claim Sheet and Election Form in *Pigford,* even though the claim was filed late.  Settlement Agreement, section II.AA, at 6.

[17]   How this could have happened for a *Pigford* claimant is explained in *Pigford* Monitor Update no. 11, "Understanding Who Is Part of the *Pigford* Case."  This document is available on the *Pigford* Monitor website, now at http://www.dcd.uscourts.gov/pigfordmonitor/updates/update11.pdf.

Similarly, a person who filed a claim in *Pigford*, but did not prevail in the *Pigford* process, is not an *In re Black Farmer* class member.[18]

### (2) *Request to Enter* Pigford *Not in Writing*

According to the *In re Black Farmers* Settlement Agreement, the request to participate in *Pigford* must have been in writing.[19]   Some people sought to get into *Pigford* within the designated time, and made the attempt with the *Pigford* Facilitator, but made the request by telephone.   In many cases, the person making the call received a letter in response explaining the case was closed.[20]   Because the claimant request was not made in writing, however, if this was the only effort made to participate in *Pigford*, these people are not *In re Black Farmers* class members and do not receive a Claim Form.

### (3) *Timing of Request to Enter* Pigford

According to the *In re Black Farmers* Settlement Agreement, the written request to participate in *Pigford* must have taken place between October 13, 1999, and June 18, 2008.[21]   A number of people made efforts after the June 18, 2008 deadline.   If that was their only effort to get into *Pigford*, these people are not *In re Black Farmers* class members and do not receive Claim Forms.

---

[18]   The *Pigford* decision-making process is found in the *Pigford* Consent Decree.  The Consent Decree is available on the *Pigford* Monitor website, now at http://www.dcd.uscourts.gov/pigfordmonitor/orders/19990414consent.pdf.

[19]   Settlement Agreement, section II.T, at 6.

[20]   According to the Claims Administrator, these letters differ from the ones sent by the *Pigford* Facilitator to those who sought to get into *Pigford* with a written request to participate in the case.

[21]   A request made before October 13, 1999 would not have been late in *Pigford*.

(4) <u>Request to Enter</u> Pigford <u>Not Directed to Required Entity</u>

The request to participate in *Pigford* must have been directed to one of five entities. [22] According to the *In re Black Farmers* Settlement Agreement, the request must have been to the Court, the *Pigford* Monitor, the *Pigford* Facilitator, the *Pigford* Arbitrator, or the *Pigford* Adjudicator.

Many people had reason to believe that they would be a part of the settlement but are not able to receive a Claim Form from the Claims Administrator. These people made an effort to make a claim in the *Pigford* case, but this action did not make them an *In re Black Farmers* class member because the request was not made to one of the five entities. For example, some people made written requests to participate in the *Pigford* case to USDA, congressional offices, other government entities, and other organizations, lawyers, and individuals. In some cases, potential claimants received a written confirmation of this attempt to participate in *Pigford*. If no other effort was made to get into *Pigford*, and the written request was not forwarded to one of the five entities described above, these people are not class members, and do not receive a Claim Form.

The various circumstances in which people failed to meet this requirement, and confusion surrounding the requirement, are discussed in more detail in the following section.

---

[22]  Settlement Agreement, section II.T, at 6.

(3) CONFUSION REGARDING DENIAL OF CLAIM FORM DUE
TO FAILURE TO REQUEST TO PARTICIPATE IN *PIGFORD*

Perhaps the aspect of the implementation of the settlement that has so far

proved to be most confusing and frustrating for potential claimants is the requirement

that the request to participate in *Pigford* be directed to one of five entities: the Court,

the *Pigford* Monitor, the *Pigford* Facilitator, the *Pigford* Arbitrator, or the *Pigford*

Adjudicator.  In many cases people feel that they took action that would and should get

them into the *In re Black Farmers* class.

(a) *Organizational Dues and Sign-Up for Lawsuit*

Over the last decade or so, many people joined an organization, and paid

membership dues to the organization, with the expectation that by paying dues, and

maintaining membership in the organization, they had preserved a place in any future

black farmer settlement.  Much of this activity occurred before the 2008 deadline for

making a written effort to get into the *Pigford* case.  Potential claimants have produced

copies of documents, including receipts for payment and other evidence of

participation, that confirm aspects of their interaction with this organization.  Joining

an organization or paying dues to it, without any other action to get into *Pigford*, does

not meet the *In re Black Farmers* class member requirement.  As a result, many people

in this situation do not receive Claim Forms from the Claims Administrator.

Determining whether fraud was committed in the relationship between some

individuals and organizations and those hoping to participate in the settlement is well

15

beyond the scope of Ombudsman authority.  We can say for certain, however, that over the last several years many people paid considerable sums of money to individuals and organizations with the understanding that the payment held a spot for them in any future settlement.  This group of people, certainly numbering in the hundreds, and possibly many times that number, is excluded from the *In re Black Farmers* settlement and is profoundly disappointed.

(b) *Ongoing Meetings and Litigation*

Confusion of a similar type is the product of ongoing meetings by an organization that is sponsoring litigation concerning the *In re Black Farmers* settlement.[23]  Membership fees for the organization are charged as a condition for participating in the hoped-for remedy sought in the litigation.  Some potential class members for *In re Black Farmers* are confused by information provided in public meetings regarding this litigation.  Potential claimants also report that in the meetings sponsored by the organization those who have received an *In re Black Farmers* Claim Form from the Claims Administrator are discouraged from submitting their *In re Black Farmers* claim packages.

---

[23]  An appeal by Black Farmers and Agriculturists Association, Inc. in the U.S. Court of Appeals for the District of Columbia was denied on July 25, 2012.  USCA Case no. 11-5326, Document no. 1385626 (July 25, 2012).  A Black Farmers and Agriculturalists Association Inc. petition for a rehearing of that decision was denied by the U.S. Court of Appeals on October 4, 2012.  USCA Case no. 11-5326, Document no. 1398018 (October 4, 2012).

(c) *Client Sign-Up for Cases that Became* In re Black Farmers

The effort by lawyers and others to sign up clients for the various cases that eventually became *In re Black Farmers* generated confusion for some potential claimants. According to filings with the Court, tens of thousands of people signed retainer agreements with law firms in order to be part of an African American farmer lawsuit.[24] Some attorneys signed up people who ultimately did not meet the requirements to become *In re Black Farmers* class members. Those signing up with attorneys frequently assumed that as a result of this sign-up they were now positioned to participate in any settlement that would eventually came to pass. For some of those people, therefore, it is a surprise to learn from the Claims Administrator that they will not receive a Claim Form. In addition, many people who believed they had signed up for the case were surprised to receive letters from their counsel saying that they would need to provide evidence of a written request to get into the *Pigford* case in order to participate in the settlement. Class Counsel reports that all firms that participated in the final *In re Black Farmers* settlement sent letters to this effect to their clients. Some firms wrote their letters in the early months of 2012. As a result, for some potential claimants, misunderstanding over the meaning of the attorney sign-up continued well after the Court approved the *In re Black Farmers* settlement on October 27, 2011.

---

[24] According to Court filings, at least 25 law firms filed at least 23 complaints with the Court. These firms represented about 47,000 people. See Memorandum of Law in Support of Class Counsel's Updated Motion for Award of Attorneys' Fees and Expenses, at 8-10 (September 24, 2012).

(d) *Fictitious "Black Farmers Reparation" Sign-up*

Confusion among potential claimants is created by a fictitious "Black Farmers Reparations" sign-up. The people promoting this sign-up describe a settlement in some ways resembling *Pigford* and *In re Black Farmers*. The sign-up forms and directions, however, are different from those used in the actual litigation settlements, and would in no way contribute to a successful *In re Black Farmers* claim. Those wishing to sign up for the "Black Farmers Reparation" settlement are told to send money to those promoting the settlement. A number of people have been confused by this effort and may have failed to pursue an *In re Black Farmer* claim as a result.

    C.   <u>POTENTIAL CLAIMANTS AFFECTED BY COURT ORDER OF SEPTEMBER 14, 2012</u>

As noted above, on September 14, 2012, the Court issued a Settlement Order.[25] The Order changes the rules regarding when a Claim Form must be submitted. This Order, and its effect on potential claimants, is discussed in a separate section below.

    D.   <u>GOOD FAITH IMPLEMENTATION AND CLAIM FORM DISTRIBUTION TO POTENTIAL CLAIMANTS</u>

According to the Claims Administrator, as of October 5, 2012, about 96,539 Claim Forms had been sent out as the result of the process described in the above

---

[25]   The Settlement Order can be found at the Ombudsman website at http://www.inreblackfarmersombudsman.com/orders/. Class Counsel filed a Motion to Modify Final Order and Judgment and Memorandum in Support Therefor on August 17, 2012. This document can be found on the Ombudsman website at http://www.inreblackfarmersombudsman.com/court-filings/. A Defendant's Response to Plaintiffs' Motion to Modify Final Order and Judgment was filed on August 31, 2012.

paragraphs.  Given the passage of time, no effort could possibly have contacted all potential claimants and distributed Claim Forms to each potential class member.  The process was inevitably a difficult one, and was not without some confusion for potential claimants.

Grass roots farm organizations went above and beyond the provisions of the settlement to make sure that potential claimants were aware of the settlement and able to file claims packages.

Class Counsel and the Claims Administrator devoted considerable effort, expertise, and resources to the task of distributing Claim Forms to potential claimants.  Class Counsel and the Claims Administrator have implemented this aspect of the Settlement Agreement in good faith.

VI.    SUBMISSION OF COMPLETE CLAIM PACKAGE BY MAY 11, 2012

In general, according to the *In re Black Farmers* Settlement Agreement, a claimant must have submitted a completed claim package by May 11, 2012.[26]  The implementation of this aspect of the Settlement Agreement is discussed in the following sections.

A.  COMPLETE CLAIM PACKAGE DEFINED

A completed claim package must be submitted for the claimant to have a chance to prevail on a claim.  Track A neutrals and Track B neutrals use the completed claim packages as a basis of decision on each claim.

---

[26]    Settlement Agreement, section V.A.1, at 15-16.  Narrow exceptions to the rule are explained below.

The Settlement Agreement sets out what must be included in a completed claim package.  In order to be complete, a claim package must include up to four things.

(1) <u>COMPLETED CLAIM FORM -- REQUIRED FOR ALL CLAIMANTS</u>

A completed Claim Form must be submitted for every claimant.  This must include the claimant's signature, under penalty of perjury, assuring that the statements provided by the claimant are true and correct.  In addition, all of the questions on the Claim Form that apply to the claimant must be answered.

(2) <u>LOAN AWARD INFORMATION – IF LOAN AWARD SOUGHT</u>

If the claimant seeks a loan award, additional information must be included.  A loan award is a way for the settlement to pay off some of the outstanding debt a claimant may have with USDA.

If a Track A claimant seeks a Loan Award, the claimant must say that he or she is seeking such an award and must sign a form that authorizes disclosure of information about the claimants from the government to the Track A Neutral.

(3) <u>DECLARATION BY CLAIMANT ATTORNEY – IF A LAWYER ASSISTED</u>

Claimants can submit a claim with or without the help of a lawyer.  If the claimant is assisted by a lawyer in filling out the Claim Form, the lawyer must sign a statement that says to the best of the lawyer's knowledge the claim is supported by law and the factual contentions in the Claim Form have evidentiary support.

If the claimant did not get help from a lawyer, this signature is not needed.

(4) <u>DECEASED CLAIMANT – ADDITIONAL INFORMATION</u>

Claims may be filed on behalf of those who have passed away.  If the claimant has died, two types of documents must be included for the claim package to be complete.  First, the claim package must include a copy of the death certificate of the deceased claimant.  Second, it must either include proof that the person submitting the claim is the legal representative of the deceased claimant or a sworn statement explaining why the person submitting the claim believes that he or she will be appointed as the legal representative of the deceased claimant's estate.

(5) <u>PHYSICAL OR MENTAL LIMITATION – ADDITIONAL INFORMATION</u>

Claims may be filed for people who are unable to submit the claim on their own behalf because of a physical or mental limitation.  In order to do so, a completed claim package must include one of two things.  It must either include proof that the person submitting the claim is the legal representative of the claimant or include a sworn statement from the person submitting the claim explaining why the claimant is unable to submit a claim on his or her own behalf and explaining why the person submitting the claim believes he or she has a right to submit the claim on the claimant's behalf.

## B.  DEADLINE OF MAY 11, 2012 FOR COMPLETED CLAIMS PACKAGE

The deadline for submitting a completed claim package was May 11, 2012.

That means that if the claim package was sent by first class mail, it must have been

postmarked no later than May 11, 2012.  If it was sent by courier or overnight delivery,

the date of deposit must have been no later than May 11, 2012.  If the completed claim

package was sent by electronic mail, it must have been transmitted by May 11, 2012.

## C.  INCOMPLETE CLAIM PACKAGES SUBMITTED

Some people submitted claim packages by the May 11, 2012 deadline, but the

claim packages were in some way incomplete.  According to the Settlement

Agreement, if a claimant sends in a claim package that is not complete, or sends in a

claim package and the Claims Administrator cannot tell if it is complete or on time, the

Claims Administrator sends a letter to the claimant telling the claimant that he or she

has thirty days to submit a complete claim package and that Class Counsel is available

to assist with the claim package.[27]

Some people submitted incomplete claim packages because they had difficulty

getting access to necessary documents.  In particular, some claimants had problems

obtaining a death certificate in order to make an estate claim.  The Claims

---

[27]    Settlement Agreement, section V.2.2, at 19.

Administrator reports that it permits these people additional time to receive a death certificate from the proper authorities.[28]

A further exception to the deadline for a completed claim package is created by the Court Order of September 14, 2012.  The Order is discussed in more detail in a separate section below.

D. <u>WRONG CLAIM FORM USED</u>

A few people submitted a claim using an early and non-official version of the Claim Form.  In this case, the Claims Administrator sends the claimant a letter explaining that the wrong Claim Form was used.  If the Claims Administrator determines that the claimant likely will qualify as a class member, the Claims Administrator provides the claimant with a new Claim Form.  If the claimant does not yet meet the class member qualification, the Claim Administrator sends the claimant a letter asking the claimant to show that he or she meets the late filing requirement for class membership.

Other people sent in a claim using a Claim Form that had been issued to someone else. If Claims Administrator records establish that the person sending in the Claim Form is a class member, the claim is accepted for further processing.  If the Claims Administrator records do not show that the person sending in the Claim Form

---

[28] According to the Claims Administrator, this extra time is given if the claimants are able to explain why they are unable to produce a death certificate or to explain that they are in the process of getting the certificate.

is a class member, the person sending in the Claim Form is sent a denial letter that says

he or she is not a class member.

    E. <u>CONCERNS REPORTED</u>

    A number of concerns regarding the Settlement Agreement requirement that

completed Claim Packages be submitted to the Claims Administrator by May 11, 2012

were reported to the Ombudsman and Deputy Ombudsman.  Several of these concerns

are discussed in the following sections.

    (1) <u>MAY 11, 2012 DEADLINE</u>

    Well before the May 11, 2012 deadline, a number of people, including a

number of grass roots farm organizations, felt that the May 11, 2012 deadline should

be extended.

    The parties discussed this possibility and decided that a general extension was

not in order.  They concluded this because they believed that outreach had been

significant and adequate, that class counsel was available for people who sought

assistance, and that an extension of the deadline would delay payment to the class.

    (2) <u>CLASS COUNSEL ASSISTANCE</u>

    According to the Settlement Agreement, one of the tasks for Class Counsel is to

offer assistance to people who hope to file a completed claim package.[29]  Class

---

[29]    Settlement Agreement, section VIII, at 33-36.

Counsel and the Claims Administrator organized a system whereby that assistance could be provided.

The Claims Administrator established a toll-free number.[30]  This number was widely distributed in the notice effort, on the Class Counsel website, and in the various mailings sent out regarding the case.

People calling the toll-free line get basic information from phone operators. The phone operators can set up meetings for potential claimants to work with Class Counsel.  The meetings occur either by phone or in person.  In-person meetings were held by groups of Class Counsel attorneys in various locations.  Meetings were mostly by appointment set up in a call to the Claims Administrator.  As the May 11, 2012 deadline neared, however, walk-in meetings were possible at various locations.

(a) _Difficulty in Arranging Phone Assistance_

The system established for Class Counsel to talk directly with individual class is as follows.  Callers phone the toll free number that is managed by the Claims Administrator.  If a caller seeks to speak with Class Counsel, the call operator switches the caller to a line that generally allows a recording.  The caller leaves a message, and Class Counsel then calls the caller back.  Class Counsel reports that as of October 16, 2012 it had spoken with about 3644 potential claimants in this manner.

---

[30]    The number is 877-810-8110.

Some people feel that it was difficult to arrange to talk directly with Class Counsel by phone.  People who continued to try to speak with Class Counsel, however, were able to do so.

        (b) *Location, Timing, and Organization of Class Counsel*
            *Meetings*

Some people report that Class Counsel meetings were not held in their area, that there were not enough meetings, and that there was not enough staffing for some Class Counsel meetings.  It appears to have been true that some people had to travel significant distances in order to attend a Class Counsel meeting in person.  During the sign-up period Class Counsel added meetings in areas where there was a significant turnout.  The problem of organization at meetings appears mainly to have occurred at the very beginning of the sign-up period.

Class Counsel reports that during the 180 day sign-up period, it held 384 group meetings in sixty-six cities and twenty-three states and in Washington, D.C.  As of October 16, 2012, Class Counsel had met with about 21,857 potential claimants in person at Class Counsel meetings.

        (3) <u>LAWYERS DECLINE TO SIGN CLAIM FORMS</u>

An attorney signature is not required on a Claim Form.  If an attorney does sign the Claim Form, he or she is swearing, under penalty of perjury:

> [t]hat, to the best of my knowledge, information, and belief formed after a reasonable inquiry under the circumstances, this claim is supported by existing law and the factual contentions have evidentiary support.[31]

When Class Counsel (and likely other lawyers though we are not aware of any such cases) met with potential claimants the lawyers sometimes declined to sign the Claim Form. Class Counsel reports that this decision is generally made in response to one of three concerns. First, in some cases Class Counsel concludes that the person is not a class member. Second, in some cases Class Counsel feels that the claim does not meet the specific substantive requirements for a successful claim. For example, in order to prevail with a claim the claimant must have made a complaint about USDA discrimination. If the claimant reports that he or she did not actually make a complaint regarding treatment by USDA, Class Counsel likely does not agree to sign the Claim Form. Third, in some cases Class Counsel believes that the account presented by the prospective claimant is not credible.

According to Class Counsel, in circumstances where Class Counsel declines to sign the Claim Form, and the potential claimant has access to a Claim Form because the Claims Administrator has determined that the person is likely a class member, Class Counsel tells the prospective claimant that he or she is free to send in the Claim Form without a lawyer signature. A Class Counsel lawyer does not, however, typically explain to a potential claimant why the lawyer is declining to sign the Claim Form.

---

[31]   Claim Form, section 13. The Claim Form can be found on the Ombudsman website at http://www.inreblackfarmersombudsman.com/court-filings/.

The lawyer practice of declining to sign Claim Forms without explanation leaves some potential claimants confused and angry.

### (4) COPIES OF COMPLETED CLAIM PACKAGES

At the outset of the claim process, not all claimants received copies of the completed claims packages Class Counsel submitted on their behalf.  Later, after grass roots farm organizations and others suggested that a copy would be helpful to claimants, it was agreed that all claimants should receive a copy of their submitted claim package.  In addition, Class Counsel developed the ability to hand every claimant a copy of a completed claim package before the claimant left a Class Counsel meeting.

### (5)  SUPPLEMENTATION OF CLAIM FORMS

At the outset of the claim process it was not clear whether claimants could supplement a claim package after it had been submitted but before the May 11, 2012 deadline.  In response to suggestions by grass roots farm organizations and others, it was decided that such supplementation was acceptable.  Class Counsel added this information to the Class Counsel website, and the information about supplementation was included in an Ombudsman letter to the class.

F.  POTENTIAL CLAIMANTS AFFECTED BY COURT ORDER OF
    SEPTEMBER 14, 2012

As noted above, on September 14, 2012, the Court issued a Settlement Order.[32]

The Order changes the rules regarding when a Claim Form must be submitted.  This

Order, and its effect on potential claimants, is discussed in a separate section below.

G.  GRASS ROOTS FARM ORGANIZATION ASSISTANCE TO
    CLAIMANTS

Grass roots farm organizations provide extensive assistance to people as they

seek to prepare completed claim packages.  Many claimants would not have submitted

claim packages without such assistance.  Many others may have submitted a completed

claim package without assistance from grass roots farm organizations, but many claims

would not have included the level of detail and explanation that were eventually

included in the package.

H.  GOOD FAITH IMPLEMENTATION AND THE SUBMISSION OF
    COMPLETED CLAIM PACKAGES

The implementation of the requirement that completed claim packages be

submitted by May 11, 2012 entailed a significant undertaking.  Ultimately, Class

Counsel, with phone and coordination assistance from the Claims Administrator,

conducted 384 group meetings with potential claimants and met with about 21,857

---

[32]  The Settlement Order can be found at the Ombudsman website at
http://www.inreblackfarmersombudsman.com/orders.  Class Counsel filed a Motion to Modify
Final Order and Judgment and Memorandum in Support Therefor on August 17, 2012.  Defendant's
Response to Plaintiffs' Motion to Modify Final Order and Judgment, was filed on August 31, 2012.
This document can be found on the Ombudsman website at
http://www.inreblackfarmersombudsman.com/court-filings/.

individuals in person.  As of October 16, 2012, Class Counsel had spoken with about

3644 individuals by phone.  Cumulatively, therefore, Class Counsel assisted about

25,501 people.

As of October 2, 2012, approximately 39,905 claim packages had been

submitted to the Claims Administrator.[33]  Also, as of October 12, 2012, out of the total

of 39,905 claim packages submitted, about 33,089 had been determined by the Claims

Administrator to be complete.  Class Counsel signed Claim Forms for about 12,984

claimants.[34]

Although there were some logistical difficulties in the process, a reasonably

diligent potential claimant had ample opportunity to receive assistance from Class

Counsel in filing a claim.  The submission of completed claims packages for thousands

of claimants was a significant and complicated task that required diligence and

expertise from both Class Counsel and the Claims Administrator.  Further, Class

Counsel and the Claims Administrator proved to be flexible in altering aspects of the

implementation process at the suggestion of grass roots farm organizations and others.

Grass roots farm organizations, for their part, provided significant assistance to class

members as they sought to file completed claim packages.

---

[33]  Because of some duplication, the number of different class members that submitted claims is
38,102.

[34]  The Class Counsel signature numbers are as of October 2, 2012.  About 26,921 claim packages
were submitted without a Class Counsel signature.

The sign-up period of the settlement, in which tens of thousands of class members needed to submit complete claim packages, required significant expertise and commitment.  Class Counsel and the Claims Administrator have implemented this aspect of the Settlement Agreement in good faith.

VII.    COURT SETTLEMENT ORDER OF SEPTEMBER 14, 2012

On September 14, 2012, the Court issued a Settlement Order.[35]  For some potential claimants the Order extends the May 11, 2012 deadline to file a completed claim package.  The Order also allows some claimants more time to complete a claim package that was submitted, but was not complete, at the deadline.  The Order affects potential claimants in three narrow and specific ways.  They are discussed in the following sections.

A.  QUALIFIED TO GET CLAIM FORM, BUT CLAIM NOT SENT UNTIL RIGHT BEFORE DEADLINE

The Settlement Order extends the May 11, 2012 deadline for filing a completed claim package if the claimant did not receive a Claim Form until shortly before the May 11, 2012 deadline or, as happened with some potential claimants, until after the May 11, 2012 deadline.  The Order sets a new deadline for a completed claim package for these claimants.

---

[35]    The Settlement Order can be found on the Ombudsman website at http://www.inreblackfarmersombudsman.com/orders/.  Class Counsel filed a Motion to Modify Final Order and Judgment and Memorandum in Support Therefor, on August 17, 2012. Defendant's Response to Plaintiffs' Motion to Modify Final Order and Judgment was filed on August 31, 2012.  Several parts of the proposed motion reflect suggestions from grass roots farm organizations and others.  The Class Counsel motion can be found on the Ombudsman website at http://www.inreblackfarmersombudsman.com/court-filings/.

According to the Order, if a person requested a Claim Form from the Claims Administrator before May 11, 2012, the Claims Administrator concludes that the claimant made a preliminary showing that he or she is a class member, and the claimant was not sent a Claim Form before May 1, 2012, the Claimant may submit a claim package within thirty days of the Claims Administrator sending that person a Claim Form.

About 402 claimants are expected to benefit from this aspect of the Settlement Order.[36]

B.  <u>CONTACTED COURT OR MONITOR TO GET INTO *PIGFORD*</u>

The Settlement Order extends the May 11, 2012 deadline for filing a complete claim package for some people that contacted the Court or the *Pigford* Monitor in order to get into the *Pigford* case.  The Order sets a new deadline for filing a complete claim package for these people.

In some cases those that sought to enter *Pigford* by sending a written request to the Court or the Monitor did not originally make it onto the Claims Administrator list of those that sought to participate in *Pigford*.  They were recently added to the Claims Administrator list.

---

[36]  One attorney sought to get a number of clients into *Pigford* by writing the *Pigford* Arbitrator in 2005.  Those people previously did not make it onto the Claims Administrator list of people that sought to get into *Pigford* by writing one of the five required entities.  They were recently added to the Claims Administrator list.  The Order gives these people additional time to complete an *In re Black Farmers* claim package.

If a claimant wrote to the Court or the *Pigford* Monitor between October 13, 1999 and June 18, 2008, and the Claims Administrator makes a preliminary conclusion that the claimant is a class member, the claimant will be allowed to submit a completed claim package to the Claims Administrator within thirty days after the Claims Administrator sends the claimant a Claim Form.

About ninety-four claimants are expected to benefit from this aspect of the Settlement Order.

C.   TRIED TO GET INTO *PIGFORD* BY SENDING IN *PIGFORD* CLAIM SHEET

The Settlement Order extends the May 11, 2012 deadline for filing a complete claim package for people that sought to get into the *Pigford* case by submitting a *Pigford* Claim Sheet and Election Form.  The Order sets a new deadline for filing a complete claim package for these people.

Rather than specifically ask to be allowed into *Pigford*, some people sent in a *Pigford* Claim Sheet and Election Form.  Those people previously did not make it onto the Claims Administrator list of people that sought to get into *Pigford* by writing one of the five required entities.  They were recently added to the Claims Administrator list.

If a claimant submitted to the *Pigford* Facilitator a Claim Sheet between October 13, 1999 and June 18, 2008, and the Claims Administrator makes a preliminary conclusion that the claimant is a class member, the claimant is allowed to

submit a completed claim package to the Claims Administrator.  The claimant must submit the completed claim package within thirty days after the Claims Administrator sends a Claim Form to the claimant.

About eighty-six claimants are expected to benefit from this aspect of the Settlement Order.

### D.   MINOR DETAILS LEFT OUT OF CLAIM FORM

The Settlement Order extends the May 11, 2012 deadline for filing a completed claim package for people who submitted a claim package but failed to completely fill out specific parts of the Claim Form. [37]  According to the Order, these claimants had until October 12, 2012 to complete the claim package.

About 950 claimants may benefit from this aspect of the Settlement Order.

### VIII.   CLAIM FORM EVALUATION AND PAYMENT TO CLAIMANTS

The next steps in the claims process are for the Claims Administrator to determine if the claim packages submitted are complete and timely and for Track A and Track B neutrals to evaluate claims.  These evaluations are well underway. After the evaluations are complete, claimants will be contacted and eventually payments will

---

[37]   In particular, if the claimant submitted a Claim Form by May 11, 2012, and successfully completed Section 7(A) through Section 7(g) and Section 9(a) through Section 9(C) of the Claim Form, but did not complete some part of the rest of the claim package, the claimant receives the extension of time. Claim Form Sections 7(a)-(G) and 9(A)-C) are the parts of the Claim Form that provide details about the claimant's class eligibility, interaction with USDA, and information for a Track B claim. A copy of the Claim Form is available on the Ombudsman website at http://www.inreblackfarmersombudsman.com/court-filings/.

be made to claimants.  The implementation of these aspects of the Settlement

Agreement will be considered in future Ombudsman reports.

IX.    CONCLUSION AND GOOD FAITH IMPLEMENTATION

This is the first of periodic Ombudsman reports on the good faith

implementation of the *In re Black Farmers* Settlement Agreement.  It focuses on

implementation issues that bear directly on how potential claimants learn of the

settlement and attempt to make a claim in the case and on the period from Court

approval of the Settlement Agreement on October 27, 2011 through September 30,

2012.

The implementation of the *In re Black Farmers* Settlement Agreement is a

complicated and formidable undertaking, and the initial sign-up phase is especially so.

In six months, potential claimants must be identified, likely class members provided

with Claim Forms, claimants provided with assistance in completing the claim

package, and the completed claim packages filed.  Each aspect of this effort is a

significant undertaking involving tens of thousands of possible claimants.  Each

claimant has a unique circumstance and a personal story to tell. The Claim Form itself

is lengthy and technical.  Inevitably in such a process, implementation difficulties

arise.  Inevitably, as well, some people who believe they should be a part of the

settlement are excluded and are disappointed.  In the end, however, Class Counsel and

the Claims Administrator, who bear the bulk of the implementation responsibilities of

this phase of the settlement, brought considerable expertise, resources, and

commitment to the effort.  Further, the parties and neutrals listened to suggestions regarding how implementation could be improved, and worked to incorporate these suggestions as the implementation work progressed.  Assisting in the effort were independent grass roots farm organizations that brought significant knowledge and diligence to the sign-up work.  Ultimately, more than 30,000 completed claim packages have been submitted in the case.

In sum, the *In re Black Farmers* Settlement Agreement created a demanding process that called for the evaluation and sign-up of tens of thousands of claimants. We conclude that the parties acted in good faith to implement this phase of the Settlement Agreement.

Dated: November 6, 2012

Respectfully Submitted,

s/Stephen Carpenter
Stephen Carpenter
Ombudsman

s/Alva Waller
Alva Waller
Deputy Ombudsman

Post Office Box 19100
Washington, D.C. 20036

36