**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| In re BLACK FARMERS DISCRIMINATION LITIGATION | ) ) ) ) | |
| This document relates to: | ) ) ) | Misc. No. 08-mc-0511 (PLF) |
| ALL CASES | ) ) ) | |

**DEFENDANT'S RESPONSE TO CLASS COUNSEL'S
UPDATED MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES**

**INTRODUCTION**

The issue this Court must resolve is whether Class Counsel are entitled to a 7.4% fee award in this case.[1] They are not. As this Court has observed, there are insufficient funds to pay the awards of all potentially successful claimants.[2] Thus, every dollar that is awarded to Class Counsel in fees is one less dollar that is available to pay successful class members. As a result, Class Counsel bear the burden of demonstrating that they are entitled to precisely the amount of fees they seek in this case. Class Counsel have not met that burden. Both plaintiffs' cause of action and the settlement agreement the parties reached are based almost entirely on the Consent Decree entered in *Pigford v. Glickman*, 185 F.R.D. 82 (D.D.C. 1999) ("*Pigford I*"). This case

---

[1] Under the terms of the settlement agreement, the parties agreed to litigate a fee award range between 4.1% and 7.4% of the total funds appropriated for the agreement minus $22.5 million specified for costs of implementing the agreement. Settlement Agreement, § VIII.B.

[2] This conclusion is from the Court's analysis of the appropriateness of class certification in a limited fund case, as is the case here. The Court found that all three requirements were met: (1) that the totals of the aggregated liquid claims and the fund available for satisfying them, set definitely at their maximums demonstrate the inadequacy of the fund to pay all the claims; (2) the whole of the inadequate fund must be dedicated to the overwhelming number of claims; and (3) all claimants to the fund who are identified by a common theory of recovery must be treated equitably among themselves. *In re Black Farmers Discrimination Litig.*, 856 F. Supp. 2d 1, 16-

was not particularly complex; it did not require the parties to engage in original research, nor did it require them to reinvent the wheel to devise the non-judicial claims process by which all the class members' claims will be resolved.  In addition, the parties reached a settlement agreement in this case based on intermittent settlement discussions over a period of less than two years without engaging in any discovery or merits briefing.  Indeed, within a month of the initiation of this litigation, this Court stayed proceedings to allow the parties to negotiate a settlement agreement.  Given the short duration of this litigation and the fact that the *Pigford I* Consent Decree served as the template for the parties' agreement in this case, Class Counsel's unsubstantiated claim that they should be paid for almost one quarter of a million hours on this case is unreasonable.

Moreover, the Court and the Government share a fiduciary obligation to ensure that the funds that Congress appropriated to resolve these claims are responsibly disbursed to those for whom Congress and the United States Department of Agriculture intended the money – successful class members.  Because Class Counsel have not demonstrated that they are entitled to a 7.4% fee award, the Court should reject their request and instead award them a 4.1% fee award.

## ARGUMENT

### I.     Class Counsel Have Not Demonstrated that They Are Entitled to a 7.4% Fee Award

The parties do not dispute that the settlement agreement establishes a common fund from which this Court is to award attorneys' fees, nor do they dispute that the Court should apply the percentage-of-the-fund method to determine the amount of fees to which Class Counsel are

17 (D.D.C. 2011).

entitled.  What the parties do dispute is whether Class Counsel have demonstrated that their

request for a 7.4% fee award is appropriate and warranted in this case.  It is not.

"In common fund cases, it is not the creation of the fund itself that entitles the attorneys

to be paid from the fund.  Rather, any obligation that the fund incurs to pay attorneys' fees must

result from the equitable power to assess fees against those who stand to ultimately benefit from

the fund."  *Democratic Cent. Comm. of D.C. v. W.M.A.T.C.*, 38 F.3d 603, 605 (D.C. Cir. 1994)

(citation omitted).  The court's exercise of its equitable power to award attorneys' fees in

common fund cases is particularly important because "once a common fund is established, class

members and class counsel wind up playing a zero sum game, in which every dollar awarded to

counsel represents one less dollar that is available for distribution to class members."  *In re

Fidelity/Micron Securities Litig.*, 167 F.3d 735, 738 (1st Cir. 1999).

The existence of this zero sum game in common fund cases requires this Court to

exercise its equitable power in a manner that safeguards class members' rights, which deserve

"special protection."  *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 201 (3d Cir. 2000).

Depending on the manner in which the court exercises its discretion, percentage fee awards "may

vary greatly depending on the individual facts of the case."  4 Newberg on Class Actions § 14.6

at 554 (4th ed. 2002).  To that end, as this Court has observed:

> Courts have looked to several factors in assessing the reasonableness of a fee request,
> including (1) the size of the fund created and the number of persons benefitted; (2) the
> presence or absence of substantial objections by members of the class to the settlement
> terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys
> involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6)
> the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in
> similar cases.

*In re Black Farmers Discrimination Litig.*, 856 F. Supp. 2d 1, 39 (D.D.C. 2011) (internal

quotation and citation omitted).  Here, there is no dispute that Congress appropriated a

substantial amount of money – $1.25 billion – that will benefit a significant number of claimants

who are successful in the non-judicial, non-adversarial claims process established by the

settlement agreement.  Nor is there any dispute regarding Class Counsel's skill, or the fact that

Class Counsel faced a risk of nonpayment when they agreed to represent class members in this

litigation.  But, these factors alone do not justify a 7.4% fee award.

A.    **This litigation was neither long in duration nor particularly complex**

The parties reached a settlement agreement in this case in less than two years from the

commencement of plaintiffs' lawsuits based on intermittent negotiations.  During that period,

there was virtually no actual litigation.  Within three months of the enactment of Section 14012

of the 2008 Farm Bill -- the legislation that created the cause of action at issue in this case -- this

Court consolidated the 17 separate Complaints filed by thousands of plaintiffs.  At the request of

the parties, the Court entered an order staying the case in order to allow the parties to negotiate a

settlement agreement.  *See* June 27, 2008 Order (08cv882), ECF No. 5.  Although Class Counsel

spent the first few months of this case litigating among themselves their respective roles and

positions in this case, the only litigation the *parties* conducted was related to the Government's

motion to certify a class in this consolidated action.  Plaintiffs only filing in regard to that motion

was a 25-page opposition memorandum.[3]  And, even after the parties reached a settlement

agreement in February 2010, the remaining briefing related primarily to plaintiffs' efforts to

secure this Court's preliminary and final approval of the settlement agreement.  *See, e.g.*, Pls.'

---

[3] As a result of the parties' settlement agreement, which sought certification of a Rule 23(b)(1) class, the Government withdrew its class certification motion, *see* Defendant's Motion to Withdraw Motion to Certify Class, ECF No. 137, which this Court granted on March 2, 2010.

Unopposed Mot. for Settlement & Prelim. Approval Thereof, Certification of a Rule 23(b)(1)(B) Class, & for All Other Purposes, ECF No. 161; Pls.' Unopposed Mot. for Settlement & Final Approval Thereof, ECF No. 187.  Thus, this is not a case in which Class Counsel conducted extensive discovery over a protracted amount of time, nor did it require Class Counsel to draft lengthy motions that involved difficult and novel legal questions.  *See Fresh Kist Produce, LLC v. Choi Corp., Inc.*, 362 F. Supp. 2d 118, 130 (D.D.C. 2005); *cf. In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 488 (S.D.N.Y. 1998) (observing that, prior to settlement, class counsel faced "formidable opposition[,]" "surmount[ed]" defendants' motion to dismiss, "certif[ied] a broad class" and "develop[ed] evidence of liability" and damages).

Although the parties worked diligently to reach a settlement agreement in this case, exchanging more than 20 drafts of the agreement for the purpose of fine-tuning the agreement in principle reached early on in the litigation, *see In re Black Farmers Discrimination Litig.*, 856 F. Supp. 2d at 28, the "factual predicates" of this case are "the same" as those in *Pigford I*.  *Id.* And, as this Court observed, when counsel in this case, many of whom participated in *Pigford I*, initiated settlement negotiations, "they already had a template for their efforts, one that had been field tested for roughly ten years: the *Pigford I* consent decree."  *Id.* at 27.  To that point, the two-track claims process established in the settlement agreement in this case is virtually identical to the claims process in *Pigford I* "and replicated in Section 14012 of the 2008 Farm Bill."  *Id.* at 22.  Thus, although this case involved "an enormous, geographically dispersed plaintiffs' class" and a multitude of individual claims predicated upon facts and events that may have occurred as much as 30 years ago, *id.* at 40, there was not a substantial amount of original work Class

---

*See* March 2, 2010 Minute Order.

Counsel had to perform in this case given that both plaintiffs' cause of action under Section 14012 of the 2008 Farm Bill, and the settlement agreement reached by the parties substantially mirrors the terms of the *Pigford I* Consent Decree.  *See id.* at 27.   In short, the fact that the parties reached a settlement agreement in less than two years that is based primarily on the work performed in *Pigford I* without any discovery or merits litigation, and conducted only intermittent face-to-face negotiations, weighs substantially against Class Counsel's claim of a 7.4% fee award.

> **B.    Class Counsel have not shown that they are entitled to a 7.4% fee award based on the amount of time they devoted to this case**

Class Counsel urge this Court to award them $90,835,000 in attorneys' fees and expenses based on their claim that they have "already reported more than 80,000 attorney hours and more than 160,000 paralegal hours" working on this case.  Mem. in Supp. of Class Counsel's Updated Mot. for Award of Attys' Fees & Expenses 39, ECF No. 306-1.  But, even taken at their word, there is nothing in Class Counsel's fee petition that delineates either the specific tasks on which these one quarter of a million hours purportedly were spent, who among the 42 attorneys who constitute Class Counsel performed these tasks, or what level of skill and experience each attorney had.  *See Rooths v. District of Columbia*, 802 F. Supp.2d 56, 61 (D.D.C. 2011).  Because Class Counsel failed to provide this information to the Court, the Court has no basis upon which to determine either the accuracy or the reasonableness of Class Counsel's 7.4% fee request.

In any case, the one quarter of a million hours that Class Counsel claim to have spent on this case are unreasonable on their face.  No one disputes that Class Counsel have devoted substantial time and effort to implement the non-judicial claims process established under the

settlement agreement, and to provide legal advice and assistance to class members.  But, as

discussed above, it was less than two years from the filing of the first Section 14012 complaints

until the parties reached a settlement agreement in this case.  During that time, the parties

primarily focused on negotiating the language of the settlement agreement, but not its substance;

as the docket demonstrates, there was very little litigation between the parties.  And, it bears

repeating that both the cause of action that gave rise to this case and the material terms in the

parties' settlement agreement are predicated almost entirely on the *Pigford I* Consent Decree.

*See Pigford*, 185 F.R.D. 82.  Thus, Class Counsel's unsupported claim that they have spent one

quarter of a million hours on this case is grossly inflated, given that there was very little original

work to perform in this case.[4]

      In cases such as this one "in which every dollar awarded to counsel represents one less

dollar that is available for distribution to class members," *In re Fidelity/Micron Securities Litig.*,

167 F.3d at 738, the court is obligated to act as a fiduciary for the benefit of the class members,

many of whom are not before the court at the time fees are awarded and will not have an

opportunity to contest the amount of fees that class counsel request, *see In re Dept. of Veterans*

*Affairs Data Theft Litig.*, 653 F. Supp. 2d 58, 60 (D.D.C. 2009).  This is particularly so where, as

here, the fund created for the benefit of class members derives solely from the public fisc.  *See In*

*re Black Farmers Discrimination Litig.*, 856 F. Supp. 2d at 34 (noting the "fiduciary duty" the

Government has "to ensure that public funds are disbursed responsibly and with a reasonable

---

[4] The Government also questions the accuracy of Class Counsel's lodestar cross-check analysis.  As discussed above, Class Counsel did not provide any contemporaneous time records or affidavits delineating the time they expended on this litigation and the specific tasks for which they seek payment.  Nor, as also noted in the text, did Class Counsel identify the billing rates they applied or their years of experience.  Without this information, the Court cannot determine

likelihood of reaching their intended recipients").

As this Court has observed, "the available $1.25 billion fund is inadequate to pay for the awards of all successful claimants." *Id.* at 17.   Indeed, because "attorneys' fees must be drawn from the $1.25 billion appropriated by the 2008 Farm Bill and the Claims Resolution Act" this means "[o]f necessity . . . that a larger award of attorneys' fees leads to a smaller available fund for the payment of awards." *Id.* at 38.   Given these circumstances, Class Counsel should not be allowed to recover a 7.4% fee award without any documentation to support their claim that they spent one quarter of a million hours on a case that was settled in less than two years of intermittent settlement discussions, involved little *actual* litigation, and was largely predicated on work that was done in *Pigford I*.[5]   On this basis alone, the Court should reject Class Counsel's request for a 7.4% fee award.

### C.     The fee award in *Keepseagle v. Vilsack* and other common fund cases do not provide a comparable basis from which to grant Class Counsel's request for a 7.4% fee award

Neither the fee award in *Keepseagle* nor the fee award in the other "common fund" cases on which Class Counsel rely provides an appropriate comparison to support their request for a 7.4% fee award in this case.   In *Keepseagle*, the court awarded class counsel 8% of the $760 million fund ($60.8 million) in attorneys' fees and expenses.   *See* Order on Pls.' Mot. for Final Approval of Settlement ¶8, ECF No. 606 (D.D.C. Apr. 28, 2011).   But, the parties vigorously litigated that case for 10 years, which included producing millions of pages of documents during discovery; taking approximately 100 depositions in 13 states, including those of expert

---

whether Class Counsel's lodestar cross-check analysis is of any relevance.

[5] Indeed, when Congress enacted the Claims Resolution Act of 2010, it expressly contemplated that Class Counsel would submit contemporaneous time records to support their

witnesses; and briefing class certification twice, including an appeal of class certification

pursuant to Federal Rule of Civil Procedure 23(f), *before* initiating settlement negotiations in

2009.  *See* Mem. in Supp. of Pls' Mot. for an Award of Attys' Fees & Expenses at 32, ECF No.

581-1.  In contrast, in this case, the parties, promptly and without any discovery, reached a

settlement agreement, and with briefing only on class certification that required Class Counsel to

file only one 25-page brief.

Moreover, within weeks of the filing of the first complaints in this case, the Court stayed

all proceedings to allow the parties time to focus on negotiating a settlement agreement; indeed,

the Court lifted the stay only for the limited purpose of permitting class certification briefing.

The parties did not engage in any discovery, file dispositive motions, or otherwise litigate this

case. And, as we have noted already, most of the work required to reach a settlement agreement

in this case, including the terms of the claims process, was based largely on the work performed

in *Pigford I*.   Given the procedural history of this case, Class Counsel's reliance on the court's

fee award in *Keepseagle* is inapposite.

Nor may Class Counsel rely on other "megafund" cases[6] to support their 7.4% fee

request.  Trial courts must assess each request for fees and expenses on its own terms.  *See In re*

*Fidelity/Micron Securities Litig.*, 167 F.3d at 738.  Because each common fund case involves its

own set of unique facts and circumstances, it is not particularly useful to look at case lists

quantifying percentages awarded to class counsel.  *See* 4 Newberg on Class Actions § 14.6, at

554 (citing *In re U.S. Biosciences Sec. Litig.*, Civ. A. No. 92-0678, 1994 WL 485935, at *14

---

fee petition.  *See* Pub. L. 111-291 § 201(g)(4)(A).
    [6] "Megafund" cases are cases in which a common fund "is worth many millions or even
billions of dollars."  *In re Black Farmers Discrimination Litig.*, 856 F. Supp. 2d at 39.

(E.D. Pa. May 23, 1994)).   To that point, although in "megafund" cases courts commonly award attorneys' fees "in the range of 6% to 10% and even lower . . . in this large scale context," *In re Domestic Air Transport Antitrust Litig.*, 148 F.R.D. 297, 351 (N.D. Ga. 1993), courts nevertheless have an obligation to engage in a fact-specific inquiry to determine the appropriate fee award in a given case.

Here, the funds at issue are derived solely from the public fisc.  The public nature of the funds, therefore, distinguishes this case from other megafund cases in a significant way.  Unlike in other megafund (or even other common fund) cases, both this Court and the Government have a fiduciary duty to ensure that these public funds are disbursed responsibly and reach those for whose express benefit Congress appropriated the funds – the class members.  *See In re Black Farmers Discrimination Litig.*, 856 F. Supp. 2d at 34; *see also In re Dep't of Veterans Affairs Data Theft Litig.*, 653 F. Supp. 2d at 60.  This is particularly the case where, as here, every dollar that the Court awards Class Counsel in attorneys' fees is one less dollar available to pay successful claimants, because there are insufficient funds with which to pay the awards of all successful class members.  *See In re Black Farmers Discrimination Litig.*, 856 F. Supp. 2d at 17 (observing that "[e]ven if *Pigford II* class members prevail on their claims at far lower rates than their *Pigford I* predecessors – and there is no reason to believe that they would – it is apparent that the available $1.25 billion fund is inadequate to pay for the awards of all successful claimants"); *see also Bowling v. Pfizer, Inc.*, 132 F.3d 1147, 1152 (6th Cir. 1998) ("The district court should pay particularly close attention to counsel's fee requests, because this money comes from the beneficiaries, not from the defendants.").  In such a case, class counsel have the burden of demonstrating that their fee request is both reasonable and appropriate.  Class Counsel have

not met that burden here.

## II.     The Court Should Exercise its Discretion and Award Class Counsel a 4.1% Fee Award

As we noted earlier, the Government does not dispute that Class Counsel are entitled to fees for the work they have performed in this case.  But, there is nothing particularly unique, novel, or complex about this case that merits a $90 million fee award.  Plaintiffs' cause of action derives almost entirely from the *Pigford I* Consent Decree.  *See In re Black Farmers Discrimination Litig.*, 856 F. Supp. 2d at 22.  The parties, who are represented by counsel, many of whom were involved in the *Pigford I* litigation, utilized the *Pigford I* Consent Decree as a template for the settlement agreement they ultimately negotiated.  *See id.* at 27.  To that point, "[t]he [] settlement agreement maintains the two-track claim resolution process created in *Pigford I*[,]" "provides for two alternative forms of claim resolution designated as Track A and Track B[,]" and requires that claimants prove their claims using the same burden of proof required of class members in *Pigford I*.[7]  *Id.*

Given the parties' heavy reliance on the work performed in *Pigford I* and the fact that this case was settled in less than two years with virtually no litigation, the Government contends that a 4.1% fee award ($50,327,500) is an appropriate and reasonable fee given the amount and nature of the work performed by Class Counsel in this case.  A $50 million-plus fee award allows the Court to adequately compensate Class Counsel for their time and effort, and also effectuates Congress's intent that the funds appropriated for this settlement be used to resolve

---

[7] In *Pigford I*, the Government believes that attorneys received a smaller fee award percentage than that which the Government believes should be awarded here.  The Government contends that, in this case, a $50 million-plus fee award for the work performed by Class Counsel is more than fair and reasonable, particularly given that most of the legal work

successful class members' claims.

## CONCLUSION

For the reasons stated above, the Court should deny Class Counsel's request for a 7.4%

fee award and instead award them a 4.1% fee award.


Dated: November 9, 2012                  Respectfully submitted,



                                         STUARY F. DELERY
                                         Acting Assistant Attorney General

                                         RONALD C. MACHEN, JR.
                                         United States Attorney

                                           /s/ Tamra T. Moore
                                         MICHAEL SITCOV, D.C. Bar # 308692
                                         TAMRA T. MOORE, D.C. Bar # 488392
                                         Federal Programs Branch
                                         Civil Division
                                         20 Massachusetts Avenue NW, Room 6134
                                         Washington, DC  20001
                                         Telephone:  (202) 514-8095
                                         Email: michael.sitcov@usdoj.gov
                                         Email: tamra.moore@usdoj.gov


                                         Attorneys for Defendant

---

performed was based almost entirely on the work performed in *Pigford I.*