UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
In re BLACK FARMERS DISCRIMINATION  )   Misc. No. 08-0511 (PLF)
LITIGATION                          )
_____ )


MEMORANDUM OPINION AND ORDER

Plaintiffs have moved to modify the final Order and Judgment that was entered by the Court when it approved the Settlement Agreement negotiated by the parties to this case. See In re Black Farmers Discr. Litig., 820 F. Supp. 2d 78 (D.D.C. 2011). The plaintiffs request that the Order and Judgment be supplemented to adjust two aspects of the Settlement Agreement that govern the claims resolution process now being implemented by the court-appointed neutrals. This request stems from concerns that the claim forms submitted by two groups of claimants may have been unfairly deemed incomplete — and thus ineligible for adjudication on the merits — as a result of certain procedures adopted by the Claims Administrator. The government opposes the plaintiffs' motion.[1]

The two groups of claimants whose claim forms are at issue can be described briefly as follows. One group submitted incomplete claim forms to the Claims Administrator and, pursuant to the Settlement Agreement, were sent letters in response informing them of this problem and giving them thirty days in which to supplement their forms with the missing information. Subsequently, however, the same claimants received correspondence from the Claims Administrator that was intended simply to confirm its initial receipt of their claim forms,

---

[1] The papers filed in connection with this matter include the following: plaintiffs' motion to further modify the Order and Judgment ("Mot.") [Dkt. No. 360]; defendant's opposition ("Opp.") [Dkt. No. 361]; plaintiffs' reply ("Reply") [Dkt. No. 362]; and defendant's surreply ("Surreply") [Dkt. No. 365].

but which may have confused the claimants about the necessity of further action on their part. These letters, in the course of acknowledging receipt of a claim form, explained that the letter "does not require any action on your part" or that the Claims Administrator "will contact you if additional information is needed to evaluate your claim." Mot. at 2-3. Because the claimants received letters advising them that no further action was needed, *after* having earlier been informed of deficiencies in their claim forms needing correction, their failure to cure those deficiencies may have resulted from understandable confusion about the Claims Administrator's instructions. The plaintiffs therefore believe that an order is warranted allowing these potentially misled claimants an additional time period in which to resubmit their (completed) claim forms.[2]

        The second group of claimants submitted claim forms that also were deemed incomplete by the Claims Administrator but that, further examination revealed, arguably should have been regarded as complete. These forms were designated incomplete because blanks were left in certain places where answers were required. Later review, however, prompted in part by questions raised by the Ombudsman, revealed that the claimants in this group had provided all of the necessary information — but not always in the correct places on the claim form. These claimants were sent notice of the perceived deficiencies in their forms but failed to correct them within thirty days. Because the procedures adopted by the Claims Administrator focused only on whether each individual question was answered in the corresponding space, and not on whether the claim form as a whole supplied all the necessary information, the plaintiffs request permission for these claim forms to be adjudicated on the merits. They argue that claimants who

---

[2] To expedite the process in case the Court were to grant the requested relief, the Claims Administrator already has contacted these claimants, informing them that the Court might permit their claims to be adjudicated on the merits if the claimants were to submit completed claim forms within the designated time period. A number of claimants did so. See Mot. at 4 n.2.

did in fact provide all the required information should not be deemed ineligible simply because they included some of this information in the wrong places on the forms.

In all, 264 individuals whose claim forms have been deemed incomplete by the Claims Administrator would be permitted to have their claims adjudicated on the merits if the Court were to grant the relief being requested for both groups of claimants. See Mot. at 2 & n.1.

As plaintiffs acknowledge, to grant their motion would be to adjust the terms of the Settlement Agreement negotiated by the parties. Section V.B.2 of that agreement, which governs the thirty-day window in which claimants who submitted incomplete claim forms may cure the deficiency, states that "the failure of a Claimant to provide any requested materials within the specified time frames will result in that Claimant obtaining a final and unreviewable adverse determination." Settlement Agreement (Revised and Executed as of May 13, 2011) § V.B.2 [Dkt. No. 170-2]. The same provision leaves no ambiguity about the absolute nature of these deadlines: "There shall be no exceptions to or extensions of the time frames set forth in this paragraph." Id. Under Section V.A.8 of the Settlement Agreement, "[t]he Class Membership Determinations, Claim Determinations, *and any other determinations made under this Section* are final and are not reviewable by the Claims Administrator, the Track A Neutral, the Track B Neutral, the Court, or any other party or body, judicial or otherwise." Id. § V.A.8 (emphasis added). Furthermore, by entering into the Settlement Agreement, the plaintiffs and their representatives agreed "to forever and finally waive any right to seek review of the Class Membership Determinations, the Claim Determinations, *and any other determinations* made under this Section." Id. (emphasis added). Finally, the Settlement Agreement provides that it "may be modified only with the written agreement of the Parties and with the approval of the Court[.]" Id. § XVIII.B.

The plaintiffs concede that their request necessarily entails altering the Settlement Agreement.  See Mot. at 3 ("To permit these claims to be considered now, after the 30-day period for completing such claims has expired, requires an amendment to Section V.B.2 of the Settlement Agreement."); id. ("To permit these claims to be adjudicated on the merits now however, following their denial by the Claims Administrator as incomplete, will require an amendment to Section V.A.8 of the Settlement Agreement."); Reply at 1-2 (noting that plaintiffs "seek . . . to have the Settlement Agreement modified" and referencing "the proposed modifications to the Settlement Agreement").  Consistent with this understanding, the proposed order submitted by the plaintiffs, amending the Court's Order and Judgment, would permit the claim forms discussed above to be adjudicated on the merits "notwithstanding" the two contrary provisions in the Settlement Agreement.  See Mot. at 6-8.

The Court previously has granted two similar motions filed by the plaintiffs in response to unforeseen logistical developments in the claims resolution process that threatened to unfairly prevent select groups of claimants from having their claims adjudicated.  See Order (Sept. 14, 2012); Order (Feb. 14, 2013).  Granting those motions arguably permitted variance from the strict terms of the Settlement Agreement.  The plaintiffs aver that "the same considerations of fairness and equity" that supported the earlier two Orders justify granting the relief requested in their current motion.  Mot. at 1.

Critically, however, the government did not oppose the two previous motions to modify the Order and Judgment.  See Docket No. 302 at 1; Docket No. 341 at 3.  At the time it acceded to the first motion, the government took no position on whether the relief being sought contradicted the Settlement Agreement, but it emphasized that the motion "d[id] not seek to amend the settlement agreement itself," that "the Government has not agreed to any amendment

4

of the Revised Settlement Agreement," and that "[i]f the Court were to somehow construe plaintiffs' motion as seeking amendment of the settlement agreement . . . the Government would then oppose the motion." Docket No. 302 at 1 n.1. The government adopted the same stance with respect to the plaintiffs' second motion to modify the Order and Judgment. See Docket No. 341 at 3. By contrast, the government views the proposed modifications to the Order and Judgment that are presently on the table as inconsistent with the Settlement Agreement, and it opposes the modifications on that basis. See Opp. at 1-2; Surreply at 1-3.

        The plaintiffs invoke Rule 60(b) of the Federal Rules of Civil Procedure as the source of authority for the relief they seek. That Rule allows courts to modify an order approving a settlement agreement or a consent decree, by providing that on "just terms," a court "may relieve a party or its legal representative from a final judgment, order, or proceeding" if, among other things, "applying it prospectively is no longer equitable" or for "any other reason that justifies relief." FED. R. CIV. P. 60(b)(5), (6); see Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367, 378-79 (1992) (applying Rule 60(b) to modification of consent decrees); Pigford v. Veneman, 292 F.3d 918, 925-28 (D.C. Cir. 2002) (same). Apart from Rule 60(b), "district courts enjoy no free-ranging 'ancillary' jurisdiction to enforce consent decrees, but are instead constrained by the terms of the decree and related order." Pigford v. Veneman, 292 F.3d at 924 (citing Kokkonen v. Guardian Life Insurance Co. of America, 511 U.S. 375, 381 (1994)). As our court of appeals has rhetorically asked: "Who would sign a consent decree if district courts had free-ranging interpretive or enforcement authority untethered from the decree's negotiated terms?" Id. at 925. The same can be said about a carefully negotiated settlement agreement whose terms were approved in a final order and judgment.

Here, the government notes that "the terms of the Revised Settlement Agreement, including those that govern the finality of the non-judicial claims process it established, were bargained over by the parties," and that the government "is entitled to the benefit of that bargain." Surreply at 2. The finality of the claims resolution process, and the non-reviewability of all determinations made by the neutrals during that process, were important factors in the government's settlement with the plaintiffs, as evidenced by the strict terms of the Settlement Agreement regarding those matters. The question is whether in the absence of the defendant's consent and over its objection, Rule 60(b) permits the Court to direct the Claims Administrator to revisit its earlier determinations, because of either the confusion it created by its conflicting instructions to claimants or its failure to consider information provided by claimants in the wrong places on the claim forms.

Under Rule 60(b)(5), a party seeking modification of a consent decree bears the burden of demonstrating "a significant change either in factual conditions or in law" that warrants revision of the decree. Rufo v. Inmates of Suffolk County Jail, 502 U.S. at 383-84; see Pigford v. Johanns, 416 F.3d 12, 23 (D.C. Cir. 2005) ("A movant under Rule 60(b)(5) must demonstrate 'changed circumstances' since the entry of the judgment from which relief is sought."). Modification may be warranted when changed factual conditions make compliance "substantially more onerous," when an agreement "proves to be unworkable because of unforeseen obstacles," or when enforcement of the agreement without modification "would be detrimental to the public interest." Rufo v. Inmates of Suffolk County Jail, 502 U.S. at 384-85.

The plaintiffs here do not cite any changed factual conditions that make compliance with the Settlement Agreement more onerous. Nor do they allege any detriment to the public interest if the agreement remains unmodified. Cf. Rufo v. Inmates of Suffolk County

6

Jail, 502 U.S. at 384-85 (citing example in which modification based on public interest was allowed "to avoid pretrial release of accused violent felons"). Nor have the plaintiffs shown the emergence of any unforeseen obstacles making the Settlement Agreement unworkable.

To be sure, there is no indication that the parties specifically expected the Claims Administrator to assess the completeness of claim forms by reviewing each question in isolation rather than with reference to the claim form as a whole, or to send confirmation-of-receipt letters that potentially misled some claimants into believing that no further action was necessary on their part. But the parties clearly anticipated, and bargained for, the condition that the Claims Administrator would be responsible for designing and implementing procedures to determine whether claim forms were complete, as well as the condition that all decisions made by the Claims Administrator would be final and unreviewable. See Settlement Agreement §§ V.A.1, V.A.8, V.B.1, V.B.2. As the terms of the Settlement Agreement illustrate, it was anticipated by the parties that plaintiffs might object to certain determinations made by the Claims Administrator during the claims resolution process. The parties prepared for that contingency by agreeing that such determinations would be unreviewable. "Ordinarily . . . modification should not be granted where a party relies upon events that actually were anticipated at the time it entered into a decree." Pigford v. Johanns, 416 F.3d at 23 (quoting Rufo v. Inmates of Suffolk County Jail, 502 U.S. at 385). Such is the case here.

Where no significantly changed circumstances have been shown, disregarding the terms of the carefully negotiated Settlement Agreement in a manner that benefits the plaintiffs, over the defendant's objections, would be inconsistent with Rule 60(b), with Rufo, and with the "contractual character" of the Settlement Agreement as approved by the related Order and Judgment. See Pigford v. Veneman, 292 F.3d at 924; see also Memorandum Order, Keepseagle

7

v. Vilsack, No. 99-3119, at 6-7 (D.D.C. Dec. 28, 2012) (denying Rule 60(b) motion to review determinations made by neutrals, including "determinations that incomplete or defective claims were not timely cured," where such review was expressly prohibited by settlement agreement, despite certain plaintiffs having "allegedly not receiv[ed] correspondence from the Claims Administrator, confusion about the requirements for submission, [and alleged] errors by the Administrator or Class Counsel").  Because the plaintiffs are seeking to alter terms that were bargained for by the parties and inscribed in the Settlement Agreement, in the absence of significantly changed circumstances, their motion cannot be granted without the consent of the defendant.

   Accordingly, it is hereby

   ORDERED that the Motion to Further Modify Final Order and Judgment [Dkt. No. 360] is DENIED.

   SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
DATE:  June 21, 2013      United States District Judge

8