# NETWORK OF BLACK FARM GROUPS AND ADVOCATES

**FILED**

August 9, 2013

**AUG 1 2 2013**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

The Honorable Paul L. Friedman
U.S. District Court for the District of Columbia
E. Barrett Prettyman U.S. Courthouse
William B. Bryant Annex
Room 6012
333 Constitution Avenue NW
Washington, DC 20001

*Let this be filed*
*1:08mc511 (PLF)   8/9/13*

Dear Judge Friedman:

We read with great interest the affidavit of Ms. Nicole F. J. Hamann, Senior Vice President of Epiq Class Action and Claim Solutions, responding to your order to explain the actions of the Claims Administrator in disqualifying and denying over 500 claimants in the In re Black Farmers Discrimination Case, that we refer to as Pigford II.

In section 8 of her affidavit, Ms. Hamann describes 569 claimants as having received a "determination on the merits of their discrimination claim" in Pigford I who were determined not to be class members in Pigford II. She states that these claimants fell in four sub-groups. We are most concerned about sub-group 2 with 461 claimants and subgroup 4 with 8 claimants, a total of 469 claimants.

Those in Sub-group 2 are defined as "Pigford Claimants who filed a timely but incomplete Pigford claim, who did not remedy deficiencies and who also filed a late claim affidavit". Sub-group 4 is defined as "Pigford Late Filers whose Late-Filing Request was approved but who failed to file a timely claim".

We feel the injustice to these 469 claimants centers on the incorrect and unfair determination, in the Settlement Agreement, that anyone who tried to participate in Pigford I but was late or submitted their deficient claim form late; or who was determined eligible by Michael Lewis, Chief Arbitrator, but was unable to submit a claim in Pigford I, because it was too late in the process, are "deemed to have obtained a determination on the merits of his or her discrimination complaint".

It is incorrect and at variance with the facts to say that these 469 claimants had a "determination on the merits of their case" when they did not have such a determination. They were late in the process, they requested a late claim, were placed on the 5g list by the Claims Administrator, sent postcards, notices, etc. like all other Pigford II claimants, sent an imprinted bar-coded claim form, submitted their claim form for a decision on the merits of their discrimination complaints and then at the eleventh hour were disqualified as members of the class, on a technical, "Alice-in Wonderland", procedural interpretation which deems them to have had something that they did not have – a determination on the merits of their discrimination complaints.

We say again, as we said in our initial letter, that this adds insult to injury for these 469 claimants. First, they were discriminated against by USDA in seeking credit and other services and second, they are being discriminated against by the Claims Administrator on an arbitrary technicality in the implementation of the settlement process.

The 461 farmers in sub-group 2 submitted a claim in Pigford I after the October 12, 1999 filing date and were determined at the time to be "late" and therefore their claim was not reviewed on its merits. Some submitted deficient claims (for instance, lacked a signature or did not check a box on the form); they received their claim back for deficiencies and re-submitted their claim but the Claims Administrator said their claim was received "late" and therefore it was never reviewed on its merits. These claimants submitted a late claim petition and were placed on the 5g list, which is the basis for filing a claim in Pigford II.

The 8 farmers in sub-group 4, were admitted to the case by Michael Lewis, Chief Arbitrator, because he determined that their late claim petition met the "extraordinary circumstances" test but when they went to the Claims Administrator, they were told they were too "late" to apply in Pigford I. In some cases, Lewis made his determination as late at 2004. These 8 farmers have never had a determination on the merits of their discrimination claims but now magically they are "deemed" to have had such a determination and are disqualified as class members. This is unfair and unjust!

*Page 2 • Judge Paul Friedman*

  As the Judge in this case, we implore you to look at the details of the disqualification of these 469 farmers as class members and work with the parties – class counsel and the government - to reassess, reconsider and correct this injustice in the interpretation and implementation of the Settlement Agreement.

  We also understand that one of the concerns is the possible delay in paying the successful claimants in the case to take time to review the claims of the 469 farmers who are in dispute. We also believe there is enough money leftover in the settlement fund to pay most or all of these 469 claimants if they prevail on the merits of their cases. It would be possible to proceed with payments and use the remaining balance to pay these claimants once the adjudicators have made a decision on their claims. It may even be that a determination was already made on the merits of their cases before they were disqualified on the unfair technicalities disputed above, and therefore, they could be paid with the other farmers who prevailed in the case.

  We do not know if some or all of these 469 have had an adjudication on their merits, since they received notice so late in the process. In her affidavit, Ms. Hamann states in section 14, that letters of disqualification were mailed in six batches between August 3, 2012 and July 17, 2013. She gives no data on the number of letters sent in each batch. Our farmer constituents, who contacted us, are mainly in the last batch sent in July 2013, more than a year after the May 12, 2012 closing date for submission of Pigford II claims.

  In speaking with Class Counsel about our concerns, they said that it was Congress' intent in the 2008 Farm Bill, which provided the basis for the Pigford II litigation and settlement, that anyone who filed a claim in Pigford I should not be permitted in Pigford II. We vehemently disagree with this interpretation of the Congressional intent. We believe Congress wanted every farmer who was "late" in the Pigford process and who did not have a determination on the merits of his or her case, to have an opportunity to participate in Pigford II. Congress, in the 2008 Farm Bill, extended the late period from September 15, 2000 to June 18, 2008 for this purpose. We believe that Congress wanted every farmer who was late and left out of Pigford I to have a chance to have their cases heard on their merits in Pigford II.

  At this point, we feel you, as the Judge in this case must call the parties together to resolve this injustice in the technicalities of the case so these 469 farmers can get justice based on the substance and merits of their discrimination claims.

Sincerely yours,

Network of Black Farm Groups and Advocates (see list below)

cc: Class Counsel
  Michael Sitcoff, Department of Justice
  Tom Vilsack, USDA Secretary
  Black Farmer Lawsuit Ombudsman

## NETWORK OF BLACK FARM GROUPS AND ADVOCATES

**Arkansas Land and Farm Development Corporation**
*Contact Calvin King*
(870) 734-1140 calvinrkingsr@yahoo.com

**Black Farmers and Agriculturalists Association**
*Contact: Gary Grant*
(252) 826-3017 tillery@aol.com

**Federation of Southern Cooperatives/**
**Land Assistance Fund**
*Contact Ralph Paige*
(404) 765-0991 ralphpaige@federation.coop

**Land Loss Prevention Project**
*Contact Savi Horne*
(800) 672-5839 savihorne@gmail.com

**Mississippi Family Farmers Association**
*Contact Eddie Carthan*
(662) 458-0983 shirleycarthan@ymail.com

**Oklahoma Black Historical Research Project**
*Contact Willard Tillman*
(405) 201-6624 wtillman2@cox.net

**Rural Advancement Fund**
*Contact Georgia Good*
(803) 378-9450 georgiagood_6@hotmail.com

**United Farmers, USA**
*Contact Hezakeiah Gibson*
(803) 410-2055 Bentondot@aol.com