## *In re Black Farmers Discrimination Litigation*
United States District Court for the District of Columbia, Misc. No. 08-mc-0511 (PLF)

### LEAD CLASS COUNSEL

| ANDREW H. MARKS | HENRY SANDERS | GREGORIO A. FRANCIS |
|---|---|---|
| COFFEY BURLINGTON | CHESTNUT, SANDERS, SANDERS, | MORGAN & MORGAN, PA |
| OFFICE IN THE GROVE, PENTHOUSE | PETTAWAY & CAMPBELL, LLC | 20 NORTH ORANGE AVENUE |
| 2699 SOUTH BAYSHORE DRIVE | ONE UNION STREET | SUITE 1600 |
| MIAMI, FL 33133 | SELMA, AL 36702 | ORLANDO, FL 32801 |
| TEL: 305-858-2900 / FAX: 305-858-5261 | TEL: 334-875-9264 / FAX: 334-875-9853 | TEL: 407-420-1414 / FAX: 407-425-8171 |

August 14, 2013

**TRANSMITTED BY E-MAIL**

Hon. Paul L. Friedman
U.S. District Court for the District of Columbia
3rd & Constitution Avenue, NW, Annex Rm. 6012
Washington, DC 20001

    Re:   *In re Black Farmers Discrimination Litigation*, Misc. No, 08-mc-0511 (PLF): Response to Letter from Network of Black Farm Groups and Advocates

Dear Judge Friedman:

    We write to respond to the concerns expressed by the Network of Black Farm Groups and Advocates ("Network") in their August 9, 2013 letter regarding the decision by the Claims Administrator to reject the claims submitted by 461 claimants who, as the Network's letter indicates, filed a timely but incomplete claim in *Pigford* and then failed to remedy the deficiencies in that claim. The Network's letter also raises concerns regarding the 8 claims submitted by claimants who had their late-filing requests approved by the Arbitrator in *Pigford* but then failed to file a timely claim.

    We truly appreciate the commitment of all of the organizations that comprise the Network to do everything possible to ensure that the claims process under the Settlement Agreement is fair and that justice is done. They have been very helpful during this entire process.

    As Lead Class Counsel, we are very sympathetic to their concern expressed that these 469 claimants did not have their claims considered by a Neutral either in the *Pigford* claims process or in the current claims process. While we can understand how the phrase "determination on the merits" could be construed to mean a decision by a Neutral on the merits after a review of the substance of the evidence submitted by the claimant, the fact is that the Settlement Agreement defines "determination on the merits" to include individuals who "submitted a claim" in the *Pigford* claims process and therefore were "*Pigford* Participants" even if their claims were rejected on grounds of incompleteness in that process. *See* Settlement Agreement §§ II.AA and V.B.4.b. As the Affidavit submitted by Ms. Hamann of Epiq Class Action & Claims Solutions, Inc. correctly states, this shared understanding of the meaning of

Hon. Paul L. Friedman
August 14, 2013
Page 2

"determination on the merits" is expressly reflected in the Long-Form Notice that was made available to all potential claimants pursuant to the Notice Program approved by the Court.

We also want to address the Network's concern regarding the perceived unfairness of allowing these 469 claimants to file claims under the Settlement Agreement without advising them until the end of the process that the Claims Administrator had concluded that they were not eligible to receive an award because they had received a "determination on the merits" in *Pigford*. The Network states that "[t]hese claimants submitted a late claim petition [in *Pigford*] and were placed on the 5g list, which is the basis for filing a claim" in the current process. As the Court is aware, however, under Section V.B.4 of the Settlement Agreement, to be found by the Claims Administrator to be a Class Member (and therefor eligible to receive an award under the Settlement), a claimant must have not only submitted a Late-Filing Request (evidence of which is being on the 5g list), but *also* cannot have obtained a determination on the merits of his or her discrimination claim. In fact, Section 6 of the Court-approved Claim Form explains that a claimant must satisfy *both* elements of Class Membership to qualify for an award under the Settlement, and each claimant was required to acknowledge that they understood that the Claims Administrator would make a determination with respect to *both* of these elements of Class Membership. Thus, claimants whose names were on the 5g list but who were found by the Claims Administrator also to have received a "determination on the merits" are not Class Members and therefore are not entitled to receive an award under the Settlement.

We regret that some claimants may have assumed that because they were provided a Claim Form in the current case and were allowed to file it, the decision had already been made that they were a member of the Class and eligible for an award in this case. Of course, that is not the case. It is true that the Settlement Agreement itself does not expressly address when in the process the Claims Administrator would decide whether a claimant was or was not a Class Member. However, the Agreement clearly contemplates that the determinations and notifications by the Claims Administrator would occur only *after* claimants submitted Claim Forms and after those forms were found by the Claims Administrator to be both complete and timely. *See* Settlement Agreement, § V.B. The reason for this sequencing was that the Parties wanted to provide the broadest possible notice to individuals who might qualify as Class Members and to give as many potential claimants the opportunity to establish their eligibility to participate in the Settlement.

Pursuant to the Settlement Agreement, it is the responsibility of the Claims Administrator to establish the procedures for determining whether claimants have satisfied the requirements of Class Membership. Indeed, the Claim Form requires claimants to acknowledge this delegation of responsibility and to agree to be bound by the determinations made by the Claims Administrator. *See* Claim Form §§ 6, 10.B. We have discussed with the Claims Administrator their decision to wait until the end of the process to make the determination of Class Membership for the 469 claimants who are the subject of the Network's letter. The Claims Administrator has advised us that they believed that it was most efficient, and would best ensure quality and consistency in their decision-making, to wait to make these determinations until all claims had been submitted rather than attempting to undertake a piecemeal review of claims submitted by

Hon. Paul L. Friedman
August 14, 2013
Page 3

claimants who may have received a "determination on the merits" in *Pigford*. In fact, Section V.B.4.b of the Settlement Agreement prohibits the Claims Administrator from making any payments to claimants who "*at any time*" prior to payment the Claims Administrator finds to have obtained a determination on the merits of their claim. There certainly was no intent to mislead any claimants. Rather the intent and goal of the Claims Administrator was to ensure the quality and consistency of its decision-making. It is our view that the Claims Administrator has acted diligently and did its best to make these determinations both fairly and efficiently.

All of us in this case have taken great pains to make certain that the process was executed with fairness and integrity. That means making certain, as far as possible, that all who are entitled to an award under the terms of the Settlement Agreement will receive one and that those who are not so entitled will not receive one. That has required not only checking but double checking and cross checking to the very end of the process.

Thank you for your consideration of these matters. We wish the outcome for these particular claimants could be different, but we are bound by the law and facts.

Sincerely yours,

/s/

Andrew H. Marks          Henry Sanders          Gregorio A. Francis