United States District Court
for the District of Columbia
Washington, D.C. 20001

Chambers of
Paul L. Friedman
United States District Judge

August 29, 2013

Mr. Calvin King
ARKANSAS LAND AND FARM DEVELOPMENT CORPORATION

Mr. Gary Grant
BLACK FARMERS AND AGRICULTURALISTS ASSOCIATION

Mr. Ralph Paige
FEDERATION OF SOUTHERN COOPERATIVES / LAND ASSISTANCE FUND

Mr. Savi Horne
LAND LOSS PREVENTION PROJECT

Mr. Eddie Carthan
MISSISSIPPI FAMILY FARMERS ASSOCIATION

Mr. Willard Tillman
OKLAHOMA BLACK HISTORICAL RESEARCH PROJECT

Ms. Georgia Good
RURAL ADVANCEMENT FUND

Mr. Hezakeiah Gibson
UNITED FARMERS, USA

To the Network of Black Farm Groups and Advocates:

   I have received and carefully reviewed your letters dated July 29, 2013 and August 9, 2013 regarding certain In re Black Farmers Discrimination Litigation claimants who recently were notified by the Claims Administrator that they are not class members and are not eligible to participate in the claims process. As always, I appreciate the efforts of your organizations on behalf of farmers who seek to participate in the Black Farmers claims process.

   As you know, after receiving your July 29 letter (now filed on the docket in this case as Dkt. No. 372-1), I directed a representative of the Claims Administrator to file an affidavit explaining the circumstances of the claimants who had been recently notified about their lack of membership in the settlement class, along with an explanation of the Claims Administrator's determination that these claimants were not part of the settlement class. See

Order, In re Black Farmers Discr. Litig., Misc. No. 08-0511 (July 31, 2013) [Dkt. No. 372]. Nicole Hamann of Epiq Systems, Inc. filed an affidavit on behalf of the Claims Administrator on August 4, 2013. See Affidavit of Nicole H.J. Hamann (Aug. 5, 2013) [Dkt. No. 374]. Your follow-up letter of August 9, 2013, which I directed to be filed on the docket, responds to Ms. Hamann's affidavit and expresses your continued concerns. See Dkt. No. 377. On August 14, 2013, lead class counsel sent a letter to me explaining their view on the matters discussed in your letter and in Ms. Hamann's affidavit, and this letter was distributed to you, the government, and the neutrals. It has now been filed on the docket as Dkt. No. 382.

Under the 2008 Farm Bill, which created a new cause of action for late-filing Pigford claimants, individuals are eligible to have their claims adjudicated if they meet two criteria: first, the individual must be a "Pigford claimant," which is defined as "an individual who previously submitted a late-filing request under section 5(g) of the [Pigford] consent decree." PUB. L. NO. 110-246, § 14012(a)(4), 122 Stat. 1651 (2008). Second, the individual must not have "previously obtained a determination on the merits of a Pigford claim." Id. § 14012(b).

The settlement agreement negotiated by class counsel and the defendant, which I approved after receiving comments from objectors and conducting a fairness hearing in open court, interprets the Farm Bill by providing a more specific definition of what it means to have "previously obtained a determination on the merits of a Pigford claim." Under the settlement agreement, this category includes everyone who submitted a timely claim form in Pigford, even if their claim form was determined to be incomplete and thus defective. It also includes everyone who submitted a successful late-filing request under section 5(g) of the Pigford consent decree. See Settlement Agreement (Revised and Executed as of May 13, 2011) § II.AA [Dkt. No. 170-2]. Individuals in both categories were kept on a list maintained by the Claims Administrator called the "Pigford Participants List." Id. According to the settlement agreement, anyone on the Pigford Participants List "will be deemed to have obtained a determination on the merits of his or her discrimination claim." Settlement Agreement § V.B.4.b.

The settlement agreement, therefore, excludes certain categories of people who had the opportunity to receive a determination on the merits in Pigford but did not take advantage of that opportunity. For instance, as Ms. Hamann explains in her declaration: "Individuals who submitted timely, but incomplete claims in Pigford, and who had their claims rejected by the Pigford facilitator on completeness grounds, would be deemed to have received a 'determination on the merits' of their claim and therefore would not be eligible for an award under the BFDL Settlement. This is because these Claimants did have an opportunity to participate in Pigford, even though they were not able to obtain an award in Pigford, because their claims were determined to be incomplete. These individuals were given time to complete their claim forms but failed to do so within the time allowed." Affidavit of Nicole H.J. Hamann ¶ 9. Also excluded are people who were given permission under section 5(g) to file an untimely claim form, but then did not do so by their new deadline. Under the terms of the settlement agreement, such individuals are not entitled to relief under the settlement agreement, and the Claims Administrator was ordered to inform them in writing that they are not class members and may not receive payment on their claims. See Settlement Agreement §§ V.B.4.b, V.B.5.

2

These aspects of the settlement agreement are not new, but were in place well before I approved it. No one objected to these features in writing or at the fairness hearing that I held on September 1, 2011, before approving the settlement agreement. The Long Form Notice of the settlement that was made available to potential class members contained a section entitled: "How do I know if I already received a determination on the merits of my *Pigford* claim?" That section answered the question as follows:

> Only a Late Filer or Late-Late Filer who has *not* previously received a determination on the merits of his or her *Pigford* claim is a Class Member. You received a determination on the merits if:
>
> 1) Your *Pigford* claim was approved or denied,
>
> 2) Your *Pigford* claim was determined to be defective by the *Pigford* Facilitator, **or**
>
> 3) Your Pigford Late-Filing Request was approved and you then failed to file a claim on time.
>
> The Claims Administrator has a list of everyone who received a determination on the merits of their claims in *Pigford*. To see if your name is on this list, call the Claims Administrator at 1-800-810-8110.

See https://www.blackfarmercase.com//Documents/Notice.pdf; Dkt. No. 161-6 at 137-38.

I can certainly understand why you and others might strongly believe that the individuals described in (2) and (3) above should not be deemed to have "received a determination on the merits" of their claims: these individuals did not literally receive a decision that their claim had either been approved or denied — although they had the opportunity to do so by curing a defect or omission in their claim form, or by filing a claim form after receiving permission under section 5(g) to do so; but they did not take advantage of this opportunity. Under the law, I do not have the power to change the terms of the settlement agreement after it has been approved, unless the plaintiffs and the defendant both agree to such a change. See Settlement Agreement § XVIII.B; see also Memorandum Opinion and Order, In re Black Farmers Discr. Litig., Misc. No. 08-0511 (June 21, 2013) (explaining district court judges' limited power to alter settlement agreements and consent decrees). As the settlement agreement is written, the Claims Administrator is not permitted to make payments to any individual who it determines is on the Pigford Participants List, and the Claims Administrator's determination about whether an individual is on the list is "final and not reviewable by the Claims Administrator, the Track A Neutral, the Track B Neutral, the Court, or any other party or body, judicial or otherwise." Settlement Agreement § V.B.5.

The second, and related, concern you have expressed in your letter to me is that some individuals who are included in the Pigford Participants List were led to believe that they were indeed class members and could participate in the claims process. If these individuals were not eligible to participate, your letter asks, why did the Claims Administrator notify them about

3

the claims process, and why were they allowed to file claims? Furthermore, why did the Claims Administrator wait more than a year after the claims deadline to determine that these individuals were ineligible?

On this question, I refer you to what the Claims Administrator and lead class counsel have explained about the claims process. As they have described, notice of the case went to all individuals who had filed 5(g) late-filing requests in Pigford. That decision allowed the notice to reach the widest range of possible class members. But under the Farm Bill, not everyone who submitted a 5(g) late-filing request is eligible to participate in this case, as explained above. This meant that notice inevitably was sent to some individuals who were not actually class members. Only after a claimant submitted a claim form would the Claims Administrator determine whether the claimant was truly a class member. See Settlement Agreement § V.B. Lead class counsel explain in their letter of August 14, 2013 that the "reason for this sequencing was that the Parties wanted to provide the broadest possible notice to individuals who might qualify as Class Members and to give as many potential claimants the opportunity to establish their eligibility to participate in the Settlement."

As for why the Claims Administrator waited until the end of the claims process to identify and notify those individual who are on the Pigford Participants List — and who are therefore not eligible to participate — lead class counsel report that the Claims Administrator "has advised us that they believed that it was most efficient, and would best ensure quality and consistency in their decision-making, to wait to make these determinations until all claims had been submitted rather than attempting to undertake a piecemeal review of claims submitted by claimants who may have received a 'determination on the merits' in Pigford." See Letter from Lead Class Counsel (Aug. 14, 2013). Doing so was consistent with the settlement agreement, which permits the Claims Administrator to undertake this review "at any time prior to paying a Claimant." See Settlement Agreement § V.B.4.b.

Although the procedures and timing adopted by the Claims Administrator may have promoted accuracy and efficiency, one result, as you eloquently point out, is that some claimants waited a long time in anticipation of the outcomes of their adjudications, only to learn recently that their claims would not be decided at all. That is deeply unfortunate, and no doubt very difficult for these claimants to accept. But it does not provide a legal basis for me to allow them to participate in the case or receive payment under the settlement agreement. To echo what lead class counsel said in their August 14 letter, I wish that the outcome for these individuals could be different, but I am bound by the terms of the settlement agreement, negotiated by the parties and approved by me after notice and an opportunity for all interested persons and organizations to comment in writing or in person at the fairness hearing.

Sincerely,

Paul L. Friedman
United States District Judge

cc:  Andrew Marks, Esq.
  Henry Sanders, Esq.
  Gregorio Francis, Esq.
  Michael Sitcov, Esq.
  Tamra Moore, Esq.
  Brandi Peters, Esq.
  Stephen Carpenter, Esq.
  Alva Waller, Esq.
  Ms. Nicole Hamann