Let this be filed
PLF 12/23/13

August 29, 2013
Clerk Of The Court
United States District Court
District Of Columbia
333 Constitutional Ave NW
Washington, D.C. 20001

1072 Highway 191
Jemison, Alabama 35085

FILED
DEC 27 2013
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

RE: Bernice Atchison, Claim Number: 58876-00 or B.L.D.F. # 72952 and move the honorable court to rectify.

Subject: vs. in-Re black farmers discrimination litigation- Black Farmers Settlement Civil Number: 1:08-mc-0511(PLF)

Dear Clerk:

Please find enclosed the original copy of the movant motion to enforce the contract in the above subject cause. Included therein is a certificate of service with adequate first class postage

Sincerely,

Bernice C. Atchison

Bernice C. Atchison

RECEIVED
Mail Room
SEP
Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

In re Black Farmers Discrimination Litigation

**Civil Action Number: 1:08-mc-0511 (PLF)**

Claims Administrator
PO box 4082
Portland, OR 97208-4028

# MOTION TO CORRECT UNJUST RULINGS IN THE CIVIL ACTION No. 1:08-mc-0511 (PLF) :

Come now the Movant(s) Bernice C. Atchison, Pro-Se, Claim Number: 58876-00 or B.L.D.F. # 72952 and move the honorable court to rectify.

Part II. Summary of claim determination an correct the error in the decision whereby it is a error dated July the 23 2013

Part III. Explanation from the claim's state

You failed to prove that you complained of discrimination to an official of the united states Government on or before July 1, 1997, regarding USDA's treatment of you in response to your application.

The movant petition's the court under 12(iii) and under the 14th amendment of the constitution 28 U.S.C. $ 1291(a)(1). To direct the claims department adjudicator or neutralist to correct and award the movant a settlement in this case. the copies from the courtesy copies are attached to prove there was contact and response by letters from the us governmental official. the original copies were filed in the claims package and returned as courtesy copies

The movant moves this honorable court in accordance to the constitution and the description and instruction. She has been the victim of discrimination, due process procedures, constitutional rights violation under the 14th amendment. With ineffective assistance from counsel and class counsel the agencies has acted unfairly arbitrary and capricious refusing due process procedures under 23 (b)(3) and 23(c)(2)(b). Witch was raised under Ecoa 15-usc $ 169-etseg.

This claim is to be remediated and Is to be liberally construed to effectuated those purpose in a manner that is consistent with the law. The disruptive conduct was reported to the court. The settlement state's all claims shall receive full and fair treatment do to constitutional issues my claim did not receive fair treatment the movant ask for a speedy resolution and file this motion Pro-Se.

The farmer ask that this writing be held to less stringent standards than those prepared by trained professionals.

This Day 29 August 2013

Bernice C. Atchison
1072 Highway 191
Jemison, AL 35085

Respectfully Submitted,

Bernice C. Atchison

Bernice Atchison, pro-se

58876 92952

CERTIFICATE OF SERVICE

I Bernice C. Atchison, hereby certify that a true and correct copy of the foregoing Settlement description was forwarded to

Claims Administrator's
P.O. Box 4028
Portland, OR 97208-4028

United States Department of Justice
Federal program branch civil division 20 Massachusetts Ave nw room 6134
Washington Dc 2013

By certified return receipt mail by and through the United State Postal Service with service and adequate first class postage attached thereto.

This- Day of 29 August 2013

Bernice C. Atchison

Bernice C. Atchison, pro-se

1072 Highway 191
Jemison, Alabama 35085

5**

*In re Black Farmers Discrimination Litigation*
Claims Administrator
PO Box 4028
Portland, OR 97208-4028

Tracking Nu



412011730303

000 0000027 00000000 001 001 00014 0 0
BERNICE ATCHISON
1072 AL HIGHWAY 191
JEMISON, AL 35085

July 23, 2013

**In re Black Farmers Discrimination Litigation**
Civil Action No. 1:08-mc-0511 (PLF)

**"TRACK B" CLAIM DETERMINATION FORM**

**PART I. CLAIMANT INFORMATION**

Claimant:
BERNICE ATCHISON
1072 AL HIGHWAY 191
JEMISON AL 35085



**PART II. SUMMARY OF CLAIM DETERMINATION**

The Track B claim that you submitted for the above-named Claimant to the Non-Judicial Claims Pr Settlement Agreement in *In re Black Farmers Discrimination Litigation*, No. 1:08-mc-0511 (PLF) has A Court-appealed Neutral ("Track B Neutral") has determined that the claim is **DENIED**.

**PART III. EXPLANATION OF DENIED CLAIM**

Your claim is **DENIED** because:



- You failed to prove that you complained of discrimination to an official of the United States Government or before July 1, 1997, regarding USDA's treatment of you in response to your application.

**THIS DECISION IS FINAL. IT IS NOT REVIEWABLE BY THE CLAIMS ADMINISTRATOR, THE TRACK A NEUTRAL, THE TRACK B NEUTRAL, THE COURT, OR ANY OTHER PARTY OR BODY JUDICIAL OR OTHERWISE.**

**IMPACT ON OUTSTANDING LOAN OBLIGATIONS:** Please note that if you, the Estate or Incapacita Claimant on whose behalf you filed are not current on loan payments owed to the USDA, the Secretary of Agricult may, in view of the denial of this claim, proceed immediately with any loan acceleration or foreclosure proceedi he believes are appropriate.

## Supporting your *Pigford* Claim with Documentation

To move forward with your Black Farmers' Settlement claim, it will be necessary to provide some kind of proof in support. While you may not have each type of proof listed below, it is important to provide as much documentation you can.

Kindly return any documents which show:

1. You performed (or attempted to perform) some type of farming activity including, deeds, invoices, receipts, and/or tax returns.

2. You applied for any USDA farm loans, credits or other benefits.

3. You have made a claim of discrimination against the USDA.

4. Your *Pigford* tracking number or other proof of filing an original Black Farmers' Settlement claim.

You should provide copies only and keep the originals for yourself.

**DESCRIPTION OF TRACK B:** To be eligible for relief under Track B, the Claimant must establish the elements of Track B (Questions 7A-7D, 7F-7H, and 9A-9C of this Claim Form) by a "preponderance of the evidence" (a higher burden of proof than required for Track A), by providing written records and other evidence which would be admissible in Court under the Federal Rules of Evidence. If the Claimant satisfies the requirements for Track B, he or she is eligible for a cash payment equal to the actual losses suffered up to $250,000. This amount is subject to reduction, depending on the amount of funding available and the number of prevailing claims. No payments will be made until all claims have been evaluated. Under Track B, the Claimant is not eligible for a loan award or tax award, which means the Claimant will be responsible for the full amount of the taxes due for any Track B award.

In addition to filling out each and every question in Section 7 (except Question 7E (attempted to apply), which is not permitted for Track B), to obtain relief under Track B, you must also:

- Respond to Questions 9A, 9B, and 9C.
- For Questions 7F and 9B, submit evidence to support the Claimant's claim of economic loss.
- Submit independent, documentary evidence admissible under the Federal Rules of Evidence for every Question in Section 7 (except Question 7E (attempted to apply), which is not permitted for Track B) of this Claim Form and for Questions 9A and 9B.
    - For Question 7G (complaint) and Question 9A (similarly situated white farmer), instead of written evidence or other documents admissible in Court under the Federal Rules of Evidence, you may provide a sworn written statement by an individual who is not a member of the Claimant's family describing his or her personal knowledge of the Claimant's complaint of discrimination or a specific white farmer in the Claimant's circumstances who was treated more favorably than the Claimant by USDA.
    - The USDA or FSA loan or servicing application(s) and any supporting documents that are the basis of the claim are deemed admissible under the Federal Rules of Evidence when accompanied by a sworn statement by you that the loan or servicing application(s) and supporting documents were submitted to USDA or FSA on or about the date of the application(s). USDA or FSA documents that were provided to the Claimant in response to the Claimant's loan or servicing application(s) are also deemed admissible under the Federal Rules of Evidence when accompanied by a sworn statement by you that the Claimant received the USDA or FSA documents in response to the Claimant's loan or servicing application(s).

*Because of the above requirements, it may be very difficult to prevail on a Track B claim. You are strongly encouraged to consult with an attorney before selecting Track B.*

It Took 72 hr + before Cole Call me

there is a Sign Statement in the Courting Copy


Congressman Shelby
Complaints

3 GOODWIN

Shelley letters go with this

COURTESY COPY

We ask Shelby to help us with high loan Rate 5887600 ... from USDA



A Report From December 1983

# RICHARD SHELBY

U.S. CONGRESSMAN — ALABAMA

The Shelby substitute provides NIH funding levels across the board which allow for continued growth and support of vital health research, while giving medical professionals at NIH the flexibility to respond to the everchanging scientific environment.

IN THIS ISSUE




- *Shelby Leads Health Research Extension Through House*
- *U.S. Taxpayers: Deep Pocket For International Debt Crisis*
- *House Acts on Equal Rights Amendment*
- *The United Nations—A Mission Failed*
- *Summary Of Major 1983 Congressional Action*
- *House Passes Telephone Rate Bill*

[illegible]GTON, DC 20510-0103
(202) 224-6744
[illegible]
senator@shelby.senate.gov

445 U.S. C[illegible]
Mobile, AL
(251) 694-4[illegible]
One Churc[illegible]
Room C-50[illegible]
Montgome[illegible]
(334) 223-7[illegible]
1118 Green[illegible]
Tuscaloos[illegible]
(205) 759-6[illegible]

Ms. Bernice C. Atchison
President
Black Farmers of Chilton County
1072 Highway 191
Jemison, Alabama 35085-6019

Dear Ms. Atchison:

Thank you for taking the time to contact me regarding cla[illegible] of Constitutional rights violations on Black Farmers of Chilto[illegible] County.

I have contacted the USDA on your behalf and have asked t[illegible] to respond to your concerns. You should expect a reply to you[illegible] concerns directly from the agency in a timely manner. Please [illegible] not hesitate to contact me about this or other matters in the future.

Sincerely,

Richard Shelby

Richard Shelby

RCS/art

The Judge opinion in this Case State: two difficult for some claimants to pres[illegible]
Some objectors contend that it will be two white farmer who receive more favorable
evident of a specific similarly situated white farmer under Track A] at this p[illegible]
Treatment especially Since there is no Right to discovery amount of material regardi[illegible]
however Class Councle has amassed a significant american farmer and white farmer
The Treatment by USDA of both african american farmer, and white farmer material in Completing the
and Claimant will be able to Call upon That material in Completing the
claims package. Class Councle should be able to provide most
Claimant with the evidence They needs Pigford v Glickman 185 FR[illegible]
82, 606 D.D.C. 1999

Class Councle was unable to prove adequate timely information

We Contacted Lewis Peg Yeadly Rep of State Ala, Howard Welfin
Earl Hoodwin, Session, Richard Shelby Probate Court
President George Bush Clinton and Obama

use this one

## CONGRESSMAN SHELBY'S OFFICES TO SERVE YOU

| WASHINGTON OFFICE: | TUSCALOOSA OFFICE: | SELMA OFFICE: | BESSEMER OFFICE |
|---|---|---|---|
| 1705 Longworth Building | Federal Building | Federal Building | Jefferson County Courth |
| Washington, D.C. 20515 | Tuscaloosa, Ala. 35401 | Selma, Ala. 36701 | Bessemer, Ala. 3502( |
| (202) 225-2665 | (205) 752-3578 | (205) 872-2684 | (205) 425-5031 |

**(Cut along dotted line and return portion below—no envelope is required)**

RETURN ADDRESS *(please print)*

Name Allen C. + Bernice Atchison

Address Route 3

City Jemison State AL Zip 35085

**Please Place 20¢ Stan Here**

*(Sorry, Congressiona prohibit my provi return postage*

**Congressman Richard Shelby**
**1705 Longworth Building**
**Washington, D.C. 20515**

We Complain about Farm Nave Loans program See letter May 1 2006 answer 5.88 76-00 Took almost 2 year get Respon

A Tax Message From Spring 1984

# RICHARD SHELBY

U.S. CONGRESSMAN—ALABAMA



# TAX REFORM: How Far Should We Go?

G

***In such experience as I have had with taxation—and it has been considerable—there is only one tax that is popular, and that is the tax that is on the other fellow.***

Sir Thomas White

Despite the perceptive observation of Sir Thomas, it is still apparent that few people question the concept of taxation. Taxes are the price we must pay for maintaining a civilized society. Unfortunately, however, the twin pillars on which our tax system is based—fairness and simplicity—seem to be eroding. Because of the multitude of loopholes of which only the most wealthy can take advantage, the perceived fairness of the code is lessening each and every day. And because of the patchwork quilt of investment-distorting special interest provisions that only an accountant could love, the simplicity of our system has long since disappeared.

In 1913, when Congress originally decided to permanently tax personal incomes, it predicted that "all good citizens will willingly and cheerfully support and sustain this, the fairest and cheapest of all taxes." Well, the federal income tax is no longer either fair or cheap. Over the past 70 years the tax code has been riddled with an increasing array of exceptions and loopholes, supported by burdensome marginal rates which discourage compliance. Consequently, tax avoidance and delinquency are on the rise and show no sign of stopping. Marginal rates of up to 50 percent for the personal tax, 46 percent for the corporate tax, and 14 percent for the social security payroll tax are driving many Americans into tax avoidance schemes, often taking the form of unproductive tax shelters. In fact, 1983 was another banner year for promoters of tax shelters. Sales of registered limited partnerships in such "productive" ventures as llama farms, horse breeding and real estate ventures that give investors large write-offs rose 52 percent over 1982. All in all, estimates of the untaxed underground economy range up to $400 billion.

Obviously, we are fast approaching the point at which noncompliance becomes socially acceptable and therefore uncontrollable. Thus, it is imperative that our system of taxation be made simpler, more understandable, and more equitable so that everyone knows that everybody else is paying his fair share. In short, as former Treasury Secretary William Simon once said, "What we need is a tax system which looks as if someone designed it on purpose." In my opinion, a flat rate income tax may just do the trick.




Reprinted from "U.S. News & World Report" (June 13, 1983) Copyright, 1983, U.S. News & World Report, Inc

Lester Session met as Jemison City Hall

1983

# SUMMARY OF MAJOR 1983 CONGRESSIONAL ACTION

- **Social Security**—Revision of the social security system was approved requiring new federal and nonprofit-business employees to join the system, and providing for new payroll taxes, a tax on benefits of the wealthy and a rise in the retirement age by two years, to 67, by the year 2027.
- **Medicare**—Congress enacted a fundamental change in the way hospitals are reimbursed under medicare as part of the social security bill. The new method establishes a system of "payment-by-diagnosis," paying fixed prices for treatment of specific medical conditions. Hospitals would bear the burden of any costs incurred above the set reimbursement.
- **War Powers Act**—Congress invoked War Powers Resolution for first time since enactment in 1973, authorizing the *President* to keep Marines in Lebanon for up to 18 months, with presidential reports to Congress every three months.
- **Lebanon and Grenada**—Congress provided $140 million in economic support funds and $100 million in military loans to Lebanon, and approved $14 million in economic aid for Grenada.
- **Nicaragua and El Salvador**—Congress approved $24 million in covert aid to rebels. For further funds, the *President* must seek the explicit approval of Congress. In El Salvador, Congress made additional funds contingent on progress of land reform and improvements in criminal justice system. Approved $81.3 million in military aid for FY 83 and $64.8 million for FY 84 and limited the number of U.S. military advisors to 55.
- **Military Spending**—Congress agreed to appropriate $250 billion for defense spending in FY 84.
  —**MX Missile**—Congress approved flight testing and production for 10-warhead intercontinental missiles.
  —**Nerve Gas**—Congress rejected funding of "binary munitions," a new type of nerve gas, bomb and artillery.
- **FY 1984 Budget**—For the first time since 1974, Congress failed to enact deficit-reduction measures required by its own budget. H. Con. Res. 91 proposed FY 84 spending of $850–$859 billion, with deficit of $169–$179 billion, depending on how much of a "reserve fund" was spent. Congress failed to approve any tax increases or spending cuts required by the resolution.
- **Interest and Dividend Withholding**—Congress repealed a 1982 tax reform requirement for 10% withholding of taxes on interest and dividend income. Approved new compliance provisions and a "backup" withholding requirement at a rate of 20% for underreported interest and dividend income.
- **Revenue Sharing**—Congress reauthorized the general revenue sharing program of grants to local governments for FY 84–86 at $4.6 billion a year. All units of general local government are eligible—counties, cities, townships and towns.
- **Debt Limit**—Congress increased debt limit from $1.389 trillion to $1.450 trillion, enough to operate the government through February.
- **International Monetary Fund (IMF)**—Congress approved $8.4 million for underdeveloped nations to enable them to pay back loans made by large U.S. banks. Also extended the authorization of the Export-Import Bank for three years.
- **Caribbean Basin Plan**—Congress approved a measure to promote economic development in the region by providing duty-free entry into the U.S. for certain Caribbean exports and by allowing U.S. businessmen to take deductions for the expense of attending conventions in the region.
- **Trade Adjustment Assistance**—Congress approved extension of a program providing benefits to workers who have been laid off from industries harmed by import competition. Small portion of benefits goes to small and medium sized firms suffering from imports.
- **Water Projects**—Approved a $14.3 billion Energy and Water Development Appropriations bill providing $3.6 billion for more than 300 Army Corps of Engineers projects, including the Oliver Lock and Dam in Tuscaloosa.
- **Dairy/Tobacco/Drought Relief**—Congress provided for payments to dairy farmers, partly financed by farmers themselves, for producing less milk. Also reduced dairy price supports, changed the federal tobacco program and authorized [illegible] producers to buy damaged federal stocks of feed to [illegible] with drought.
- **Handicapped Education, Vocational Rehabilitation**—Congress approved the Rehabilitation Act and, separately, adopted a bill to reauthorize for three years 11 discretionary handicapped education programs.
- **Unemployment Benefits**—Approved $4.7 billion for 18-month extension of unemployment benefits.
- **Emergency Jobs Bill**—Approved $4.6 billion jobs bill, intended to create 300,000–400,000 temporary jobs and provide social services, health and humanitarian aid.
- **Veterans Jobs Training**—Approved $150 million per year for FY 84–85 for Vietnam-era and Korean War veterans jobs training.
- **Martin Luther King Holiday**—Congress approved legislation declaring the third Monday in January, beginning in 1986, a legal public holiday honoring the late civil rights leader, Martin Luther King, Jr.

Lester Session Jemison

We ask for help
Feeder Pay program



HOWELL HEFLIN
P.O. Box 1990
Tuscumbia, AL 35674

[illegible]
RT 3 BOX [illegible]
Jemison, AL 35085

NO POSTAGE NECESSARY IF MAILED IN THE UNITED STATES

**BUSINESS REPLY MAIL**

FIRST CLASS MAIL PERMIT NO 50 TUSCUMBIA AL

POSTAGE WILL BE PAID BY ADDRESSEE

FRIENDS OF HOWELL HEFLIN COMMITTEE INC
P O BOX 1990
TUSCUMBIA AL 35674-0990

HOWELL HEFLIN
..SCUMBIA, ALABAMA

August 3, 1990

Dear Friend

I am running for re-election to the United States Senate, and I need to ask for your help.

In this campaign, I'll be visiting every corner of ..abama. That's nothing new though, because year in and year out I've traveled across the state to hold town meetings, meet with voters, and speak to students.

And in my travels, I've been known to tell a story or two.

But you would surely swear my stories of "Sockless Sa.." or "No-Tie Hawkins" were actually true if you heard the tales my opponent is telling about me.

You see, he's following a script written by national ..ard-line Republicans and their media consultants in Washington who have this notion that they can call the shots here in Alabama.

They intend to defeat me as part of their plan to regain control of the U.S. Senate, and have begun to pour massive funds from their headquarters in Washington into my opponent's campaign coffers in Alabama.

While it's not in my nature to seek out confrontation, I never back down from a fight.

Twelve years ago, I ran for the United State Senate to bring Alabama values and some common-sense thinking to Washington.

And I've given some headaches to the special interest in Washington because they just can't peg me. I am not in anyone's hip pocket.

But I've earned the respect of my colleagues for being a thoughtful, conscientious and independent force for Alabama's interests.

My colleagues know I don't serve a personal or political agenda -- but that I go to work every morning with the interests of Alabama on my mind.

(over, please

Shelby letter go with this

I've worked hard in the Senate to build a better economic climate in Alabama that will bring jobs to our state. Early on I led the fight for the Tennessee-Tombigbee Waterway, which connects Alabama and the Port of Mobile with Middle America.

Today, the Tenn-Tom is bringing jobs and economic development to the entire region.

And I pioneered the effort to make Alabama a center for space-based materials processing. Now there are on-going efforts at the University of Alabama in Birmingham seeking treatment for cancer with research conducted at zero gravity in space.

And I've become known as the "spokesman for Southern Agriculture" in the Senate, standing up for Alabama farmers who are so vital to our state's economy.

As I travel across the state I listen to people from all walks of life. Alabamians have honest concerns. They're concerned about their families and the future of their children.

I'm running for re-election because I want to continue my work in Washington for Alabama families.

For the past twelve years I've stood up to those in Washington who would have me put their political agenda ahead of the needs of the people of Alabama.

Now I need to ask you to stand by me so we can send a message to the special interests in Washington that Alabamians are independent thinkers, and they want independent thinking leadership.

Your contribution of $25, $50, $100, or more if you can, at this crucial time will help me run an aggressive, modern campaign that will prevent my opponent from distorting my record.

Together we can keep Alabama independent and strong.

Thanks so much for all your help.

Sincerely,

Howell

Howell Heflin
U.S. Senator

COURTESY COPY

[illegible]
Got 2 Good Copy Note on Back

LAW OFFICES
CONLON, FRANTZ & PHELAN, LLP
SUITE 400
1818 N STREET, N.W.
WASHINGTON, D.C. 20036

(202) 331-7050
FAX: (202) 331-9306
e-mail: firm@conlonfrantz.com

DAVID J. FRANTZ*
BRIAN P. PHELAN+
MICHAEL J. CONLON+

* ALSO ADMITTED IN VA
+ ALSO ADMITTED IN MD

March 7, 2012

Ms. Bernice Atchison
1072 Highway 191
Jemison, AL 35085

Re: Black Farmer's Case

Dear Ms. Atchison:

Yesterday I had a phone message from attorney Honza Prchal regarding your interest in pursuing a Track B claim in the In re Black Farmers Litigation. I am not representing claimants in Track B claims in this case. You should contact another lawyer immediately if you wish to file a Track B claim. Please remember that the filing deadline is May 11, 2012.

Sincerely yours,

David J. Frantz

David J. Frantz

DJF:er

Conflict Of intrest He was class counsel
He does not want to Deal with Section 9 They Broke the Contract
before the ink got Dry [illegible]

8/08

CONLON, FRANTZ & PHELAN, LLP

THE LAW OFFICES OF PHILLIP L. FRAAS

CHESTNUT, SANDERS, SANDERS
PETTAWAY & CAMPBELL, L.L.C.

(866) 830-7072 (toll free)

**Re: Your Black Farmer's Claim against the U. S. Department of Agriculture**

Dear *Pigford* Claimant:

We are Co-Lead Counsel for the claimants in the *Pigford* Black Farmers' lawsuit which alleged discrimination against USDA relating to the administration of farm loan and benefit programs. You missed the deadline to file a claim in the *Pigford* lawsuit and filed an Affidavit asking that you be allowed to file a late claim. Your Affidavit was denied; however, **you may now have an opportunity to file a Pigford claim.**

A law was just enacted that permits *Pigford* claimants who missed the original deadline to file a new lawsuit in federal court in Washington, D.C. We are filing a class action lawsuit on behalf of these *Pigford* claimants to obtain a determination of their *Pigford* claims.

If you wish for us to represent you in the new lawsuit to file a claim under the *Pigford* settlement, then please sign and return the enclosed Retainer Agreement as soon as possible. Also, please complete and return to us the attached Questionnaire.

Please call if you have any questions regarding the Retainer Agreement and Questionnaire. Our toll free number is (866) 830-7072.

Sincerely,

J.L. Chestnut
David J. Frantz
Phillip L. Fraas

COURT

Discrimination

Accordingly, the question of discrimination in the instant case is Res judicata. See also, doctrine of collateral estoppel, (As a bar to relitigating an issue which has already been tried between the same parties ... it must be pleaded affirmatively) Fed.R.Civil P. 8(c). The Department of Agriculture and the county commissioners discriminated against African American farmers when they denied, delayed or otherwise frustrated the applications of those farmers for farm loans and other credit and benefit programs. See Opinion of District Court, Pigford, et al., v. Veneman, Case No(s)., 97cv01978 (PLF) and 98cv01693 (PLF) , at 3. Throughout the country, African American farmers complain that county commissioners have Discriminated against them for decades, denying their applications, delaying the processing of their applications or approving them for insufficient amounts or with restrictive conditions. Pigford, supra, at 6. As class counsel has pointed out, on the issue of liability of the USDA, the government's own documents and own admissions are the most damning evidence. See Transcripts of Hearing of March 2, 1999 at 184 (Comments of Mr. Alexander Pires) ("I have an office full of admissions ) I have tape recordings of Mr. Glickman. I have tape recordings of Government officials. I've interviewed everybody there is to interview. Pigford, supra, at 35. There does not appear to be much dispute that racial discrimination has occurred throughout the USDA and that the USDA and the county committees discriminated against African American farmers for decades in evaluating their applications for farm credit and benefits. Pigford, supra, at 44. See Civil Rights, Dept. of Justice; CRAT Report; Environmental Working Group; Office of the Inspector General Report, and admissions of USDA.

pursuant to subsection (e), the Secretary of the Treasury shall deposit in that Fund $100,000,000 out of amounts appropriated to pay final judgments, awards, and compromise settlements under section 1304 of title 31, United States Code (the conditions of which section shall be deemed to be met for purposes of this paragraph) to be used by the Secretary in accordance with subsection (e).

# TITLE II—FINAL SETTLEMENT OF CLAIMS FROM IN RE BLACK FARMERS DISCRIMINATION LITIGATION

**SEC. 201. APPROPRIATION OF FUNDS FOR FINAL SETTLEMENT OF CLAIMS FROM IN RE BLACK FARMERS DISCRIMINATION LITIGATION.**

(a) DEFINITIONS.—In this section:

(1) SETTLEMENT AGREEMENT.—The term "Settlement Agreement" means the settlement agreement dated February 18, 2010 (including any modifications agreed to by the parties and approved by the court under that agreement) between certain plaintiffs, by and through their counsel, and the Secretary of Agriculture to resolve, fully and forever, the claims raised or that could have been raised in the cases consolidated in *In re Black Farmers Discrimination Litigation,* Misc. No. 08–mc–0511 (PLF), including Pigford claims asserted under section 14012 of the Food, Conservation, and Energy Act of 2008 (Public Law 110–246; 122 Stat. 2209).

(2) PIGFORD CLAIM.—The term "Pigford claim" has the meaning given that term in section 14012(a)(3) of the Food, Conservation, and Energy Act of 2008 (Public Law 110–246; 122 Stat. 2210).

(b) APPROPRIATION OF FUNDS.—There is appropriated to the Secretary of Agriculture $1,150,000,000, to remain available until expended, to carry out the terms of the Settlement Agreement if the Settlement Agreement is approved by a court order that is or becomes final and nonappealable, and the court finds that the Settlement Agreement is modified to incorporate the additional terms contained in subsection (g). The funds appropriated by this subsection are in addition to the $100,000,000 of funds of the Commodity Credit Corporation made available by section 14012(i) of the Food, Conservation, and Energy Act of 2008 (Public Law 110–246; 122 Stat. 2212) and shall be available for obligation only after those Commodity Credit Corporation funds are fully obligated. If the Settlement Agreement is not approved as provided in this subsection, the $100,000,000 of funds of the Commodity Credit Corporation made available by section 14012(i) of the Food, Conservation, and Energy Act of 2008 shall be the sole funding available for Pigford claims.

(c) USE OF FUNDS.—The use of the funds appropriated by subsection (b) shall be subject to the express terms of the Settlement Agreement.

(d) TREATMENT OF REMAINING FUNDS.—If any of the funds appropriated by subsection (b) are not obligated and expended to carry out the Settlement Agreement, the Secretary of Agriculture shall return the unused funds to the Treasury and may not make

Page 1 of 3

the unused funds available for any purpose related to section 14012 of the Food, Conservation, and Energy Act of 2008, for any other settlement agreement executed in *In re Black Farmers Discrimination Litigation*, No. 08–511 (D.D.C.), or for any other purpose.

(e) RULES OF CONSTRUCTION.—Nothing in this section shall be construed as requiring the United States, any of its officers or agencies, or any other party to enter into the Settlement Agreement or any other settlement agreement. Nothing in this section shall be construed as creating the basis for a Pigford claim.

(f) CONFORMING AMENDMENTS.—Section 14012 of the Food, Conservation, and Energy Act of 2008 (Public Law 110–246; 122 Stat. 2209) is amended—

(1) in subsection (c)(1)—

(A) by striking "subsection (h)" and inserting "subsection (g)"; and

(B) by striking "subsection (i)" and inserting "subsection (h)";

(2) by striking subsection (e);

(3) in subsection (g), by striking "subsection (f)" and inserting "subsection (e)";

(4) in subsection (i)—

(A) by striking "(1) IN GENERAL.—Of the funds" and inserting "Of the funds";

(B) by striking paragraph (2); and

(C) by striking "subsection (g)" and inserting "subsection (f)";

(5) by striking subsection (j); and

(6) by redesignating subsections (f), (g), (h), (i), and (k) as subsections (e), (f), (g), (h), and (i), respectively.

(g) ADDITIONAL SETTLEMENT TERMS.—For the purposes of this section and funding for the Settlement Agreement, the following are additional terms:

(1) DEFINITIONS.—In this subsection:

(A) SETTLEMENT AGREEMENT.—The term "Settlement Agreement" means the settlement, including any modifications agreed to by the parties and approved by the court, between the Secretary of Agriculture and certain plaintiffs, by and through their counsel in litigation titled Black Farmers Discrimination Litigation, Misc. No. 08–mc–0511 (PLF).

(B) NEUTRAL ADJUDICATOR.—

(i) IN GENERAL.—The term "Neutral Adjudicator" means a Track A Neutral or a Track B Neutral as those terms are defined in the Settlement Agreement, who have been hired by Lead Class Counsel as that term is defined in the Settlement Agreement.

(ii) REQUIREMENT.—The Track A and B Neutrals called for in the Settlement Agreement shall be approved by the Secretary of the United States Department of Agriculture, the Attorney General, and the court.

(2) OATH.—Every Neutral Adjudicator shall take an oath administered by the court prior to hearing claims.

(3) ADDITIONAL DOCUMENTATION OR EVIDENCE.—Any Neutral Adjudicator may, during the course of hearing claims, require claimants to provide additional documentation and evidence if, in the Neutral Adjudicator's judgment, the additional

when it was the
8, 11, 17

Late Clai
in pre-conceiv
failure to
it has
Farme

documentation and evidence would be necessary or helpful in deciding the merits of the claim, or if the adjudicator suspects fraud regarding the claim.

(4) ATTORNEYS FEES, EXPENSES, AND COSTS.—

(A) IN GENERAL.—Subject to subparagraph (B) and the provisions of the Settlement Agreement regarding attorneys' fee caps and maximum and minimum percentages for awards of attorneys fees, the court shall make any determination as to the amount of attorneys' fees, expenses, and costs in accordance with controlling law, including, with respect to attorneys' fees, expenses, and costs, any applicable rule of law requiring counsel to produce contemporaneous time, expenses, and cost records in support of a motion for such fees, expenses, and costs.

(B) EFFECT ON AGREEMENT.—Nothing in this paragraph limits or otherwise affects the enforceability of provisions regarding attorneys' fees, expenses, and costs that may be contained in the Settlement Agreement.

(5) CERTIFICATION.—An attorney filing a claim on behalf of a claimant shall swear, under penalty of perjury, that: "to the best of the attorney's knowledge, information, and belief formed after an inquiry reasonable under the circumstances, the claim is supported by existing law and the factual contentions have evidentiary support".

(6) DISTRIBUTION OF CLAIMS DETERMINATIONS AND SETTLEMENT FUNDS.—In order to ensure full transparency of the administration of claims under the Settlement Agreement, the Claims Administrator as that term is defined in the Settlement Agreement, shall provide to the Secretary of Agriculture, the Inspector General of the Department of Agriculture, the Attorney General, and Lead Class Counsel as that term is defined in the Settlement Agreement, all information regarding Distribution of Claims Determinations and Settlement Funds described in the Settlement Agreement.

(h) REPORTS.—

(1) GOVERNMENT ACCOUNTABILITY OFFICE.—

(A) IN GENERAL.—The Comptroller General of the United States shall evaluate the internal controls (including internal controls concerning fraud and abuse) created to carry out the terms of the Settlement Agreement, and report to the Congress at least 2 times throughout the duration of the claims adjudication process on the results of this evaluation.

(B) ACCESS TO INFORMATION.—Solely for purposes of conducting the evaluation under subparagraph (A), the Comptroller General shall have access, upon request, to the claims administrator, the claims adjudicators, and related officials, appointed in connection with the aforementioned settlement, and to any information and records generated, used, or received by them, including names and addresses.

(2) USDA INSPECTOR GENERAL.—

(A) PERFORMANCE AUDIT.—The Inspector General of the Department of Agriculture shall, within 180 days of the initial adjudication of claims, and subsequently as appropriate, perform a performance audit based on a statistical sampling of adjudicated claims.

Bernice C. Atchison 58876-00

Congress accepted my testimony and evident

Nov 18 2004

CHESTNUT, SANDERS, SANDERS & PETTAWAY, P.C.
ATTORNEYS AND COUNSELORS AT LAW
1405 JEFF DAVIS AVENUE — SELMA, ALABAMA 36701

J. L. CHESTNUT, JR.
HENRY SANDERS
ROSE M. SANDERS
COLLINS PETTAWAY, JR.

MAILING ADDRESS:
P. O BOX 1305
SELMA, ALABAMA 36702-1305
[205] 875-9264
TELECOPIER [205] 875-9375

July 30, 1992

Mr. & Mrs. Allen Atchison
1072 Highway 191
Jemison AL 35085

RE: Allen Atchison, et al vs. International Paper Company
Case No. CV-90-82D

Dear Mr. & Mrs. Atchison:

I am enclosing a copy of a letter from Sibley Reynolds setting forth the agreement you wrote me about. I have advised them that you would accept the offer. When the wood is delivered the case will be closed.

If you have any questions, please contact me.

Very truly yours,

**CHESTNUT, SANDERS, SANDERS & PETTAWAY, P.C.**

BY: [signature]
Henry Sanders

HS/cdc

Enclosure

Correspondent May 25, 1995 asking for Closure

Counsel Visited my farm to assess damage