UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

In re BLACK FARMERS DISCRIMINATION LITIGATION

Misc. No. 08-0511 (PLF)

MEMORANDUM OPINION AND ORDER

This matter is before the Court on the *pro se* motions of five claimants who seek review of adverse claim determinations rendered by the Track A Neutral. See Dkt. Nos. 390, 391, 392, 393, and 394. In a Memorandum Opinion and Order issued on December 31, 2013, the Court directed both class counsel and the government to respond to these five motions. In re Black Farmers Discr. Litig., Dkt. No. 396, Misc. No. 08-0511 (D.D.C. Dec. 31, 2013) (Memo. Op. & Order). The Court explained that, "[s]ince the issuance . . . of claims decisions in this case, the Court has received hundreds of letters and *pro se* motions from non-prevailing claimants who seek reconsideration of their claim determinations," and that "rather than allowing each of these pieces of correspondence to be filed on the docket, efficiency would be served by allowing a representative sample to be filed." Id. at 1. The Court concluded that because each of the many letters and motions seeks the same relief — review of the Neutral's denial of a claim — one essential legal question determines the viability of them all.[1] Accordingly, the Court ordered class counsel and the government to address "whether there are any available grounds for obtaining reconsideration of claim determinations" rendered by the Neutral. Id. at 2. The parties have now submitted their responses, and the question therefore is ripe for resolution.

[1] Some people have also sent communications to the Court complaining of their exclusion from the class by the Claims Administrator. The Court addresses these concerns in this Memorandum Opinion.

The government maintains that "the parties' Revised Settlement Agreement expressly forecloses this Court's reconsideration of the determinations at issue and therefore the non-prevailing claimants' requests for the Court to reconsider the same must be denied." Govt.'s Response at 1. The government cites Section V.A.8 of the Settlement Agreement, which provides in full:

> The Class Membership Determinations, Claim Determinations, and any other determinations made under this Section are final and are not reviewable by the Claims Administrator, the Track A Neutral, the Track B Neutral, the Court, or any other body, judicial or otherwise. The Class Representatives and the Class agree to forever and finally waive any right to seek review of the Class Membership Determinations, the Claim Determinations, and any other determinations made under this Section.

Settlement Agreement (Revised and Executed as of May 13, 2011) § V.A.8. [Dkt. No. 170-2]. As the government correctly notes, the terms of this agreement were the product of negotiation between the parties, and it argues that it "is entitled to the benefit of that bargain." Govt.'s Response at 2.

Class counsel "acknowledge that the finality encapsulated in Section V.A.8 of the Settlement Agreement was carefully negotiated and was a material term" of that agreement. Class Counsel's Response at 2. Class counsel further recognize that if the Court were to reconsider the claim determinations of non-prevailing claimants, such reconsideration would constitute a modification of Section V.A.8 of the Settlement Agreement. See id.

The Settlement Agreement provides that the agreement "may be modified only with the written agreement of the Parties and with the approval of the Court." Settlement Agreement § XVIII.B. But the government opposes any modification to the settlement; consequently, there can be no agreement between the parties to modify Section V.A.8. And the courts do not have "free-ranging 'ancillary' jurisdiction" to enforce or modify negotiated

settlement agreements, but are constrained by the terms agreed upon. Pigford v. Veneman, 292 F.3d 918, 924 (D.C. Cir. 2002).

There is only one other avenue by which the agreement might be modified — Rule 60(b) of the Federal Rules of Civil Procedure, which "allows courts to modify an order approving a settlement agreement or a consent decree, by providing that on 'just terms,' a court 'may relieve a party or its legal representative from a final judgment, order, or proceeding' if, among other things, 'applying it prospectively is no longer equitable' or for 'any other reason that justifies relief.'" In re Black Farmers Discr. Litig., Dkt. No. 366, Misc. No. 08-0511, at 5 (D.D.C. June 21, 2013) (Memo. Op. & Order) (quoting FED. R. CIV. P. 60(b)(5)-(6)). As this Court previously has recognized, however, the standard for modification under this Rule is stringent. "Under Rule 60(b)(5), a party seeking modification of a [settlement agreement] bears the burden of demonstrating 'a significant change either in factual conditions or in law' that warrants revision of the [agreement]." Id. at 6 (quoting Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367, 383-84 (1992)); see also Pigford v. Johanns, 416 F.3d 12, 16 (D.C. Cir. 2005) (same). Modification may be warranted when the facts have changed and the changed factual conditions "make compliance 'substantially more onerous,' [or] when an agreement 'proves to be unworkable because of unforeseen obstacles,' or when enforcement of the agreement without modification 'would be detrimental to the public interest.'" In re Black Farmers Discr. Litig., Dkt. No. 366, Misc. No. 08-0511, at 6 (quoting Rufo v. Inmates of Suffolk County Jail, 502 U.S. at 384-85).

The claimants who now seek the Court's review of their claim determinations have not demonstrated any significantly changed circumstances that would warrant modification of the Settlement Agreement. Indeed, the terms of the agreement show that the parties

anticipated the very circumstances that have now unfolded: some claimants, having been denied relief by the Neutral and believing the denials to be in error, seek judicial review of these determinations. This contingency was specifically addressed by the parties, who agreed in the Settlement Agreement that "Claim Determinations . . . made under this Section are final and are not reviewable by . . . the Court." Settlement Agreement § V.A.8. The circumstances presented here, therefore, do not involve any unforeseen changes in either fact or law; to the contrary, these circumstances were specifically foreseen and planned for, as the terms of the Settlement Agreement indicate.

This conclusion applies regardless of the specific grounds on which a claim was denied. Many claimants, for example, received denials based on the Neutral's determination that they failed to prove they had complained to an official of the United States government about the USDA's discrimination against them. Other claims were denied because the Neutral determined the claim was not supported by substantial evidence. Still others were denied based on a determination that the claimant failed to prove that he or she had applied, or constructively applied, for a specific farm credit transaction at a USDA office within the relevant time period. All of these determinations — as well as others made on different grounds — are final pursuant to the terms of the Settlement Agreement. This is equally true of the claim determinations issued by the Track B Neutral, although no challenges to such determinations are presently before the Court. In addition, Section V.A.8 makes clear that the Claims Administrator's determinations as to who belonged in the class — and therefore who was permitted to submit claim forms in the first place — are final, and so any complaints from people who continue to contest their exclusion from the class are also foreclosed from review. See Settlement Agreement § V.A.8 ("The Class Membership Determinations . . . are final and are not reviewable.").

"The finality of the claims resolution process, and the non-reviewability of all determinations made by the neutrals during that process, were important factors in the government's settlement with the plaintiffs." In re Black Farmers Discr. Litig., Dkt. No. 366, Misc. No. 08-0511, at 6. This may be cold comfort to claimants who feel that their claims were denied in error; but without the Settlement Agreement, the amount of relief attainable by members of the plaintiff class would have been less than ten percent of what has actually been made available to the class under the settlement. As the Court explained in its Opinion approving the agreement, "[t]he $1.15 billion appropriated by Congress in the Claims Resolution Act [was] specifically earmarked for the funding of the proposed settlement agreement and its availability [was] contingent on the approval of a settlement. . . . Without that additional $1.15 billion — i.e., in the absence of an approved settlement agreement — the only funds available for prevailing plaintiffs in this matter [would have been] the $100 million appropriated by Section 14012 of the 2008 Farm Bill." In re Black Farmers Discr. Litig., 856 F. Supp. 2d 1, 30 (D.D.C. 2011).

The plaintiffs therefore faced "two drastically different possibilities for resolution of [their] claims: a decades-long process of in-court adjudication that may end by providing little or no recovery for most claimants, or the alternative, out-of-court claims process created by the proposed settlement agreement, which would provide claimants with a much larger potential recovery and permit the payment of awards in one to two years." In re Black Farmers Discr. Litig., 856 F. Supp. 2d at 32. The choice was clear, and "the settlement agreement afford[ed] the far better result." Id. For those claimants who have now received denials, of course, it is understandable that the terms of the agreement — providing for the absolute finality of the Neutral's claim determinations — may seem strict or unfair. But as the Court earlier recognized,

the only alternative to a settlement afforded far worse prospects for relief to the class as a whole. In short, the finality of all determinations made both by the Neutrals and by the Claims Administrator was a key element — indeed, an absolutely essential element — of the settlement between the parties. And this provision was characteristic of the full agreement, which, "in light of various statutory and financial constraints, [struck] a fair, reasonable, and adequate balance between the competing concerns of all affected parties." See id.

To reiterate, the Court enjoys "no free-ranging 'ancillary' jurisdiction" to enforce or modify the Settlement Agreement, but is instead "constrained by the terms of [that agreement]." Pigford v. Veneman, 292 F.3d at 924. "Where no significantly changed circumstances have been shown, disregarding the terms of the carefully negotiated Settlement Agreement in a manner that benefits [certain claimants], over the defendant's objections, would be inconsistent with Rule 60(b), with [the Supreme Court's decision in] Rufo, and with the 'contractual character' of the Settlement Agreement as approved by the related Order and Judgment." In re Black Farmers Discr. Litig., Dkt. No. 366, Misc. No. 08-0511, at 7. Unfortunately, no claimant has pointed to any "significantly changed circumstances" that would justify modification of such an integral element of the parties' agreement. See also Class Counsel's Response at 2 ("Class Counsel are unable to point to any 'significantly changed circumstances' since the Settlement Agreement was approved by the Court."). Therefore, for all of these reasons, and given the government's opposition to any modification of the finality provisions of the Settlement Agreement, the Court concludes that it has no authority to require reconsideration of the denied claims.

For the reasons explained in this Memorandum Opinion, therefore, it is hereby

ORDERED that the claimants' *pro se* motions [Dkt. Nos. 390, 391, 392, 393, and 394] seeking reconsideration of their claim determinations are DENIED.

SO ORDERED.

PAUL L. FRIEDMAN
United States District Judge

DATE: 3/5/14