UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| In re BLACK FARMERS DISCRIMINATION LITIGATION | ) ) ) ) | Misc. No. 08-0511 (PLF) |

MEMORANDUM OF CLASS COUNSEL REGARDING
*CY PRES* PROVISIONS OF THE SETTLEMENT AGREEMENT AND ORDER

This Court has requested the Parties to submit memoranda addressing the issues raised in its September 3, 2015 Memorandum Opinion and Order ("*Cy Pres* Memorandum") regarding the *cy pres* provisions of the Settlement Agreement approved by the Court on October 27, 2011 (Dkt. No. 231), and amended on April 7, 2014 (Dkt. No. 405). *See* Dkt. No. 430. Specifically, the Parties were asked to address: 1) the applicability of certain case law disfavoring *cy pres* distributions in settlement agreements when further distributions to prevailing Class Members of unclaimed funds would be feasible; and 2) whether, absent agreement of the Parties, the Court, under Rule 60 of the Federal Rules of Civil Procedure or other authority, may order *sua sponte* such further distribution of the unclaimed settlement funds to prevailing Class Members, rather than a distribution to *cy pres* beneficiaries as provided for in the Settlement Agreement.[1] The Court also sought the Parties' views as to whether a public hearing for Class Members to comment on these issues should be scheduled.

---

[1] The Court also posed two additional questions – one regarding the impact, if any, of the statutory provisions authorizing the claims at issue in this case and the bearing those provisions may have on the issue of the appropriate distribution of unclaimed settlement funds; the second regarding the applicable legal standard for the Court in determining whether a further distribution to Class Members would be appropriate, *assuming* the Court has authority to do so. Both of these additional questions are addressed in the discussions of the two issues identified above.

As recognized by the Court in its *Cy Pres* Memorandum, the Settlement Agreement in this case provides for the distribution of unclaimed funds to *cy pres* beneficiaries proposed by Class Counsel and approved by the Court. Settlement Agreement, Section V.E.13. The Agreement also provides that, after preliminary approval, the Agreement may be modified "only with the written agreement of the Parties and with the approval of the Court, upon such notice to the Class, if any, as the Court may require." *Id.,* Section XVIII.B. Here, the Settlement Agreement is *long past* preliminary approval – indeed, it is a Final Order and Judgment of this Court, affirmed by the U.S. Court of Appeals more than three years ago. *Latham v. Vilsack*, 11-5326, 2012 WL 10236550, at *1 (D.C. Cir. 2012). Moreover, none of the Parties is seeking modification of the Agreement to alter the distribution of unclaimed settlement funds from the *cy pres* process reflected in Section V.E.13 to provide for further distributions to prevailing Class Members.

As discussed below, it is the considered view of Class Counsel that where, as here, there is no agreement among the Parties, and no party has moved to modify the Settlement Agreement under Rule 60 of the Federal Rules of Civil Procedure, the Court may not, *sua sponte*, modify the Agreement to permit distribution of unclaimed settlement funds to Class Members. Nor, were the Court to have such authority, do we believe the "stringent" standards for modification under Rule 60(b) would be met here in any event. *See In re Black Farmers Discrimination Litig.*, 29 F.Supp.3d 1, 3 (D.D.C. 2014). Finally, even were modification of the Agreement otherwise permissible, requiring a further distribution of funds in the circumstances of this case, to claimants who already have received *the full compensation to which they are entitled* under the Food, Conservation, and Energy Act of 2008 ("2008 Farm Bill"), would be an unwarranted exercise of the Court's authority, and would be inconsistent with the authorizing federal statutes

2

in this case.[2] Under these circumstances, a "presumption" disfavoring *cy pres* distribution of unclaimed settlement fund is not applicable.

I. **A "Presumption" Against Distributing Unclaimed Settlement Funds on a *Cy Pres* Basis is Not Applicable Here.**

As noted by the Court in its *Cy Pres* Memorandum, some courts have concluded that unclaimed settlement funds generally should be distributed to class members rather than to *cy pres* beneficiaries where further distribution to class members is feasible. *See, e.g., In re Lupron Marketing and Sales Practices Litig.*, 677 F.3d 21, 32 (1st Cir. 2012) (noting presumption favoring distribution of unclaimed settlement funds to class members to ensure recovery of their full loss; except that "[w]here class members have been fully compensated for their losses, this presumption does not apply."); *Klier v. Elf Atochem North America, Inc.,* 658 F.3d 468, 475 (5th Cir. 2011) (*cy pres* distributions are "permissible only when it is not [logistically] feasible [or economically viable] to make further distributions to class members . . . except where an additional distribution would provide a windfall to class members with liquidated damages claims that were 100 percent satisfied by the initial distribution.") (citations omitted); *see also Marek v. Lane*, 134 S.Ct. 8, 9 (2013) (Roberts, C.J.) (noting "fundamental concerns surrounding the use of [*cy pres*] remedies in class action litigation"); AMERICAN LAW INSTITUTE, PRINCIPLES OF THE LAW OF AGGREGATE LITIGATION § 3.07 (2010) (recognizing "presumption" that unclaimed funds are to be distributed to "participating class members unless the amounts involved are too small to make individual distributions economically viable or other specific reasons exist that would make such further distributions impossible or unfair.").

---

[2] Both the cause of action asserted in this case, and the remedy provided to successful claimants, were created by the 2008 Farm Bill, as augmented by the Claims Resolution Act of 2010. *See infra*, at I.B.

Such a presumption in favor of further distribution to class members, however, is not applicable here for at least two reasons. *First*, the case law applying a presumption against *cy pres* distributions of unclaimed settlement funds, overwhelmingly, involves settlements that are before the courts either on a motion seeking approval of a settlement or on an appeal from a district court approval of a settlement – and not, as is the case here, where the settlement agreement already has been approved, affirmed, and entered as a final judgment. *Second*, the "remedial" rationale underlying such a presumption – to ensure full recovery for class members – has no applicability where, as here, the prevailing class members already have received the full recovery to which they are entitled for their claims.

### A.   A "presumption" cannot be applied to modify a final order.

The cases applying a "presumption" that unclaimed settlement funds not be distributed on a *cy pres* basis where further distribution to class members is feasible involve, for the most part, judicial review and approval of a proposed settlement. In such cases, the issue for the court is whether *in the first instance* to approve (or affirm the approval of) the settlement as "fair, reasonable and adequate" under Rule 23 of the Federal Rules of Civil Procedure.[3]

Indeed, the *sole* case that we have identified in which a court of appeals overturned a *cy pres* distribution made pursuant to a settlement agreement that had been both finally approved by the district court and affirmed on appeal, all without objection to the *cy pres* provision, is *In re BankAmerica Corp. Securities Litig.,* 775 F.3d 1060 (8th Cir. 2015). Although the Eighth Circuit

---

[3]   Other cases, while not considering the *cy pres* issue at the initial settlement approval stage, involved appellate review of the district courts' consideration of distribution of unclaimed settlement funds *in the first instance*. *See, e.g., Klier,* 658 F.3d at 468 (settlement agreement provided both that "left over" money in the fund be distributed to claimants and that the court was authorized to "make changes to this protocol as necessary for the benefit of the Settlement Class Members"; issue arose on defendant's motion to the district court to distribute "left over" funds as *cy pres*).

in that case pointed to the settlement agreement's vesting of "sole discretion" in the district court to determine the *cy pres* beneficiaries as "not a traditional Article III function," and therefore a reason to void the provision "*ab initio*," it also concluded that "a proposed *cy pres* distribution must meet [our standards governing *cy pres* awards] regardless of whether the award was fashioned by the settling parties or the trial court." *Id*. at 1066 (internal citations omitted). Class Counsel, however, agree with the analysis of Judge Emmett Sullivan in his recent opinion in *Keepseagle v. Vilsack*, Civil Action No. 99-3119 (EGS), 2015 WL 4510837 at *18 (D.D.C. July 24, 2015). In that opinion, Judge Sullivan concluded that the Eighth Circuit's reasoning in *In re BankAmerica Corp. Securities Litig.* is "unpersuasive" and, indeed, an outlier.

In *Keepseagle*, Judge Sullivan reviewed the appellate authorities from other circuits addressing a presumption favoring the distribution of unclaimed settlement funds to class members, and concluded that such cases, because they did not involve an approved and affirmed settlement agreement providing for a *different* mode of distribution, were inapposite to the situation presented in *Keepseagle* – where, as here, the district court had approved the settlement agreement providing for a *cy pres* distribution and that approval had been affirmed on appeal.[4] *Id*. at *13-16. Noting that "the [*Keepseagle*] settlement [wa]s a final judgment," Judge Sullivan rejected requests by Class Counsel, and at least one class representative, to modify the agreement to provide for a different method of distribution of unclaimed settlement funds, holding that the Court is "bound . . . to the final judgment in this case and the narrow legal doctrines for modifying final judgment [which were not met here]." *Id*. at *3, 4.

---

[4]   As in the instant case, the issue of modification first arose in *Keepseagle* following completion of the claims process, where the unclaimed funds, which also were to be distributed to *cy pres* beneficiaries recommended by Class Counsel and approved by the Court, exceeded the amount anticipated by the parties when they drafted the agreement.

Notably, unlike in the instant case where *no* party has sought to modify the settlement agreement, modification in *Keepseagle* was *not opposed* by any party. Yet, Judge Sullivan still ruled that, absent a legal basis to modify, "the court must enforce the [settlement] agreement." *Id*. at *44-47. Referencing the Fifth Circuit's decision in *Klier* (also cited by the Eighth Circuit in *In re BankAmerica Corp*.),[5] Judge Sullivan observed:

> Because a district court's authority to administer a class-action settlement derives from Rule 23, the court cannot modify the bargained-for terms of the settlement agreement. That is, while the settlement agreement must gain the approval of the district judge, <u>once approved its terms must be followed by the court and the parties alike</u>. The district judge must abide the provisions of the settlement agreement, reading it to effectuate the goals of the litigation . . . . The terms of the settlement agreement are always to be given controlling effect.

*Keepseagle*, 2015 WL 4510837 at *18 (quoting *Klier,* 658 F.3d at 475-76) (emphasis added). In other words, "[b]ecause the Agreement is a final judgment, the Court's authority is circumscribed. '[D]istrict courts enjoy no free-ranging 'ancillary' jurisdiction to enforce consent decrees, but are instead constrained by the terms of the decree and related order.'" *Id.* at *12 (quoting *Pigford v. Veneman,* 292 F.3d 918, 924 (D.C. Cir. 2002) (quoting *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 381 (1994)). In short, for the reasons explained by Judge Sullivan, any general presumption governing disposition of unclaimed settlement funds cannot, absent a legal basis under Rule 60 of the Federal Rules of Civil Procedure for relief, override a settlement agreement that has been finally approved, affirmed by the court of appeals, and entered as a final judgment.

---

5   The Eighth Circuit cited *Klier* as an example of another "sister circuit [which has] criticized and severely restricted the practice [of *cy pres* distributions]." 775 F.3d at 1063. However, the Fifth Circuit, in *Klier,* held that the district court had abused its discretion in ordering a *cy pres* distribution where "the terms of [the] settlement agreement [we]re sufficiently clear [regarding a *pro rata* distribution], or . . . were insufficient to overcome the presumption that the settlement provides for further distribution to class members." *Klier,* 658 F.3d at 479.

### B. Cases where class members were fully compensated by the initial distribution present an exception to any "presumption" against *cy pres* distributions.

Even if the Court *could* apply a presumption favoring distribution of unclaimed settlement funds to class members in derogation of the terms of a settlement agreement that has been approved, affirmed, and entered as a final judgment, such a presumption would still not be applicable here. That is because even those authorities that have concluded that there should be a presumption against *cy pres* distributions have recognized an exception where all successful claimants *have received full compensation* for their claims.

The claims of the Class Members in this action that were resolved by the Settlement Agreement here arose from Section 14012 of the Food, Conservation, and Energy Act of 2008 ("2008 Farm Bill") and the Claims Resolution Act of 2010. The 2008 Farm Bill provided for "liquidated damages of $50,000, discharge of the debt that was incurred . . . and a tax payment in the amount equal to 25 percent of the liquidated damages and loan principle discharged" for successful claimants. § 14012(f)(1).[6] *See also* Claims Resolution Act of 2010 (appropriating additional funds to implement the Settlement Agreement as approved by the Court). To qualify for such a remedy, claimants were required to show by substantial evidence (and on a paper record) that they were a *Pigford* Claimant under the 1999 Consent Decree in *Pigford v. Glickman*, 185 F.R.D. 82 (D.D.C.1999), *aff'd Pigford v. Veneman*, 292 F.3d 918 (D.C. Cir. 2002), and had not previously obtained a determination on the merits of their *Pigford* Claim. §§ 14012(b), (f). Under the Settlement Agreement, Class Members who prevailed on their

---

[6] The Act also provided for liquidated damages in the amount of $3,000 for successful noncredit claims, *see* § 14012(f)(2). Had there been any successful Track B claims, "actual damages" would have been available as relief to such claimants. § 14012(g).

7

Section 14012 statutory claims – the only claims asserted in this case – could receive up to the full "liquidated damages" amount.[7]

In this case, all prevailing Class Members who complied with the terms of the Settlement Agreement received the full amount authorized by Section 14012 and provided for in the Settlement Agreement. Thus, they have been "fully compensated for their losses" under both the 2008 Farm Bill and the Claims Resolution Act of 2010. *In re Lupron*, 677 F.3d at 32. Any additional distribution "would provide a windfall to class members with liquidated-damages claims that [had been] 100% satisfied by the initial distribution." *Id*, at 35 (quoting *Klier*, 658 F.3d at 475). Courts and commentators alike have recognized expressly a "windfall" exception to a presumption favoring distribution of unclaimed settlement funds to class members. *See*, *e.g*., *id.* (referencing commentators who "have agreed that distributing residual funds to claimants who have already recovered their losses 'necessarily results in an undeserved windfall for those plaintiffs, who have already been compensated for the harm they have suffered'").[8] And, "[w]here class members have been fully compensated for their losses, this presumption does not apply." *Id*. at 32.

---

[7] The claims at issue here, unlike the claims in the original *Pigford* action (and, indeed, the claims in *Keepseagle*), could not have been brought under Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691, *et seq.,* because the statute of limitations for ECOA claims had run. The 2008 Farm Bill created a completely new statutory cause of action to enable certain *Pigford* Claimants to seek relief from a claim fund made available for this purpose by the 2008 Farm Bill and later increased by the Claims Resolution Act of 2010. Although the original *Pigford* claims were properly payable out of the Judgment Fund and, therefore, arguably were not "liquidated damages" claims in the same sense as those paid in this case, there are nevertheless strong arguments that Congress's creation of the claims in this case reflected an intent to achieve parity with those paid in the *Pigford* case. As such, even were further distributions otherwise permissible here, fairness and equity considerations would counsel against such distributions.

[8] 677 F.2d at 35, *citing* Martin H. Redish, Peter Julian, & Samantha Zyontz, *Cy Pres Relief and the Pathologies of the Modern Class Action: A Normative and Empirical Analysis*, 62 Fla. L. Rev. 617, 639 (2010); *see also* 2 McLaughlin on Class Actions § 8:15 (8th ed. 2011); Susan Beth Farmer, *More Lessons From The Laboratories: Cy Pres Distributions in Parens Patriae Antitrust Actions Brought By State Attorneys General*, 68 Fordham L. Rev. 361, 393 (1999).

The *Lupron* court explained that this presumption, reflected in the ALI Principles, "was motivated by a concern that 'few settlements award 100 percent of a class member's losses, and thus it is unlikely in most cases that further distributions to class members would result in more than 100 percent recovery.'" *Id*. (citations omitted).  The present case, however, is not one of these "most cases."  Here, successful Class Members were awarded and received the *full* statutory recovery to which they were entitled under the 2008 Farm Bill – thus, they received not just the full amount negotiated on their behalf in the settlement, but also the full relief provided by the statute which gave rise to their claims.

In short, because each successful Class Member in this case already has received the full remedy to which he or she was entitled under the 2008 Farm Bill, this case falls squarely within the "exception" to a presumption against *cy pres* distributions of unclaimed settlement funds.  Thus, even were the Court authorized to disregard the terms of the Settlement Agreement and consider "anew" the method of distributing unclaimed settlement funds negotiated by the Parties and embodied in this Court's final order and judgment, a general "presumption" regarding distribution of unclaimed funds to class members is simply not applicable under the circumstances presented here.

## II. Absent Agreement of the Parties, the Court's Authority to Modify the Settlement Agreement Is Narrowly Circumscribed Under Fed.R.Civ.P. 60.

As this Court has recognized, modification of the Settlement Agreement under its own terms, as set forth in Section XVII.B, is not possible here because *neither* Party is seeking to alter the provisions governing distribution of unclaimed settlement funds reflected in the Agreement.  Thus, any modification must satisfy the "stringent" standards of Rule 60 of the Federal Rules of Civil Procedure, specifically Rules 60(b)(5) and (b)(6).  *See In re Black Farmers Discrimination Litig.*, 29 F.Supp.3d at 3.  Those standards permit a court, "on motion and just terms," to grant

relief under Rule 60(b)(5) *only* where "the judgment has been satisfied, released, or discharged; [ ] is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or[,] [under Rule 60(b)(6), for] any other reason that justifies relief." Fed.R.Civ.P. 60.

It is unsettled in this Circuit whether a district court may act *sua sponte* under Rule 60(b). Among the other circuits, however, there is a split of authority. A majority of the circuits that have considered the issue have concluded that the words "on motion" in Rule 60(b) are not limited to party motions, but may encompass "motions" by the court, as well. *See*, *e.g.*, *Kingvision Pay-Per-View Ltd. v. Lake Alice Bar*, 168 F.3d 347, 351-52 (9th Cir. 1999) ("[t]he traditional definition of *sua sponte* is that the court acts of 'its own will or *motion*[,]' so the words 'on motion' in Rule 60(b) do not plainly exclude *sua sponte* repairs or inadvertence.") (emphasis in original); *see also Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 385 (7th Cir. 2008) ("[A] majority of circuits to have considered the power of a district court to vacate a judgment under Rule 60(b) have concluded that district courts have the discretion to grant such relief *sua sponte*."). *But see United States v. Pauley,* 321 F.3d 578, 581 (6th Cir. 2003) ("because Rule 60(b) explicitly requires relief under the rule to occur 'on motion,' courts may not grant such relief except upon a motion from the affected party.").

Even were this Circuit, however, to recognize a court's authority *sua sponte* to act under Rule 60(b), any modification of the Settlement Agreement still would need to meet the requirements of Rule 60(b) – "stringent" standards which cannot be met in this case. *In re Black Farmers Discrimination Litig.*, 29 F.Supp.3d at 3. Those standards impose a heavy burden to demonstrate that relief from a final order or judgment is warranted. Here, the provisions mandating the distribution of unclaimed settlement funds were the subject of extensive and arms'

10

length negotiation between the Parties, as the Parties expressly contemplated that there likely would be at least some successful claimants who would not timely collect their settlement awards in accordance with the Settlement Agreement – but there was no way to predict with accuracy how many such "non-collecting" prevailing claimants there would be – and that the funds designated for administration of the settlement could be more than was actually needed.[9]

As this Court has previously ruled in this case, citing the seminal case of *Rufo v. Inmates of Suffolk County Jail,* 502 U.S. 367 (1992):

> Under Rule 60(b)(5), a party seeking modification of a [settlement agreement] bears the burden of demonstrating 'a significant change either in factual condition or in law' that warrants revision of the [agreement]." [*In re Black Farmers Discr. Litig.,* 950 F.Supp.2d 196, 200 (D.D.C. 2013)] (quoting <u>Rufo v. Inmates of Suffolk County Jail,</u> 502 U.S. 367, 383-84 (1992)); *see also Pigford v. Johanns*, 416 F.3d 12, 16 (D.C. Cir. 2005) (same).  Modification may be warranted when the facts have changed and the changed factual conditions "make compliance 'substantially more onerous,' [or] when an agreement 'proves unworkable because of unforeseen obstacles,' or when enforcement of the agreement without modification 'would be detrimental to the public interest.'"  *In re Black Farmers Discr. Litig.,* 950 F.Supp.2d at 200 (*quoting Rufo<u> v. Inmates of Suffolk County Jail,</u>* 502 U.S. at 384-85).

*In re Black Farmers Discrimination Litig.,* 29 F.Supp.3d at 3 (rejecting class members' attempts to secure review of claim determinations, where Settlement Agreement specifically addressed the contingency that class members might seek review of denied claims, by providing that "Claim Determinations . . . are final and are not reviewable by . . . the Court.").

Here, the provisions for *cy pres* distribution of the unclaimed funds are neither a "change in factual conditions" nor "substantially onerous" to implement or otherwise "unworkable because of unforeseen obstacles." *Id.*  To the contrary, the possibility (indeed, likelihood) of

---

[9]   Concomitantly, the Parties contemplated the possibility that the funds available to pay successful claims would be *insufficient* to provide the full statutory relief set out in the 2008 Farm Bill to each successful claimant, and addressed this contingency, as well, in the Settlement Agreement.

unclaimed settlement funds was fully anticipated and expressly (and indisputably) provided for in the Settlement Agreement negotiated by the Parties and approved by this Court. Nor is there any basis to conclude that identifying suitable beneficiaries for the remaining funds, or other aspects of distributing the funds on a *cy pres* basis, would impose a "substantially onerous" burden or otherwise would be "unworkable."

Finally, one would be hard put to argue that "enforcement of the decree without modification 'would be detrimental to the public interest.'" *In re Black Farmers Discrimination Litig.*, 29 F.Supp.3d at 3. That is so because (a) the successful claimants have received the full measure of relief to which they were entitled under the 2008 Farm Bill, and (b) these successful claimants have recovered the same award received by successful Track A claimants under the 1999 *Pigford* Consent Decree in the predecessor to this case, which served as a model for defining the appropriate relief for successful claims here.[10]

The standards for granting relief under Rule 60(b)(6) are even more stringent than under Rule 60(b)(5). Rule 60(b)(6) permits modification "for any other reason that justifies relief," but both the Supreme Court and this Circuit have cautioned that Rule 60(b)(6) "should [ ] be applied [only] in extraordinary circumstances," and "only sparingly used." *Liljeberg v. Health Svcs Acquisition Corp.*, 486 U.S. 847, 863 (1988) (quoting *Ackermann v. United States*, 340 U.S. 193 (1950)); *Salazar ex rel Salazar v. District of Columbia*, 633 F.3d 1110, 1116-17 (D.C. Cir. 2011); *see also Gonzalez v. Crosby*, 545 U.S. 524, 536 (2005); *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (D.C. Cir. 1980). Moreover, it is clear that relief under Rule 60(b)(6) is not available "unless the other clauses [of Rule 60(b)], (1) through (5), are inapplicable," *Pigford v. Veneman*, 307 F.Supp.2d 43, 48 (D.D.C. 2004), since "clause (6) and clauses

---

[10]   *Pigford v. Glickman*, 185 F.R.D. 82 (D.D.C. 1999) *aff'd,* 206 F.3d 1212 (D.C. Cir. 2000).

(1) through (5) are mutually exclusive." *Liljeberg*, 486 U.S. at 863, n.11.  *See also Kramer v. Gates*, 481 F.3d 788, 792 (D.C. Cir. 2007).  While an "extraordinary change in circumstances" can warrant relief under Rule 60(b)(6), neither the existence nor the amount of the unclaimed settlement funds in this case can reasonably be characterized as extraordinary.  Moreover, where, as here, the alleged "extraordinary change" was an issue already anticipated by the parties, Rule 60(b)(6) would not provide a basis on which to grant relief.  *See, e.g., Twelve John Does v. Dist. of Columbia*, 841 F.2d 1133, 1142 (denying relief where the alleged "change in circumstance" was neither "unexpected nor unforeseen").

In sum, Rule 60(b) does not provide a basis on which to modify the Settlement Agreement in this case to change the method for distributing unclaimed settlement funds, whether "on motion" or *sua sponte* by the Court.  As this Court recently concluded:

> To reiterate, the Court enjoys "no free-ranging 'ancillary' jurisdiction" to enforce or modify the Settlement Agreement, but is instead "constrained by the terms of [that agreement]." *Pigford v. Veneman*, 292 F.3d at 924.  "Where no significantly changed circumstances have been shown, disregarding the terms of the carefully negotiated Settlement Agreement in a manner that benefits [certain claimants], over the defendant's objections, would be inconsistent with Rule 60(b), with [the Supreme Court's decision in] *Rufo*, and with the 'contractual character' of the Settlement Agreement as approved by the related Order and Judgment." *In re Black Farmers Discr. Litig.*, 950 F.Supp.2d at 201.

*In re Black Farmers Discrimination Litig.*, 29 F.Supp.3d at 4 (denying prior Rule 60(b) request to modify this Settlement Agreement).  And, as Judge Sullivan recently observed when faced with a similar issue, "respect for final judgments is a cornerstone of our legal system . . . [and,] [i]ndeed, that [ ] ultimately binds the Court." *Keepseagle*, 2015 WL 4510837 at *3.

### III. Public Hearing on *Cy Pres* Issues

The Court has sought the Parties' views as to whether a public hearing should be held on the *cy pres* issues raised by the Court.  Class Counsel's view is that the issues raised by the Court – *i.e.*, whether the Court has authority to modify the Settlement Agreement to alter the method of

13

distributing unclaimed funds, and, if so, the applicable legal standards – are largely legal in nature.  Class Counsel believes that these issues can be fully addressed in written submissions to the Court rather than in an oral hearing.  That said, if the Court feels it would benefit from oral presentations, Class Counsel, of course, would be pleased to participate, as directed by the Court.

Class Counsel would note in this regard that if the Court concludes that a *cy pres* distribution of unclaimed settlement funds should proceed as required by the Settlement Agreement, Class Counsel must make recommendations to the Court of appropriate *cy pres* beneficiaries, and the Court will need to decide on which organizations should receive funds, in what amounts, and under what terms.  A public hearing on these issues may well be warranted even if the Court determines not to conduct a hearing on the legal issues raised by its *Cy Pres* Memorandum.

                 Respectfully submitted,

/s/ Henry Sanders
Henry Sanders
CHESTNUT, SANDERS, SANDERS,
PETTAWAY & CAMPBELL, LLC
One Union Street
Selma, AL  36701
Tel:  (334) 875-9264
Fax:  (334) 875-9853

/s/ Andrew H. Marks
Andrew H. Marks
D.C. Bar No. 932269
COFFEY BURLINGTON P.L.
2699 South Bayshore Drive
Miami, FL  33133
Tel:  (305) 858-2900
Fax:  (305) 858-5261

/s/ Gregorio A. Francis
Gregorio A. Francis
MORGAN & MORGAN, PA
20 North Orange Avenue, #1600
Orlando, FL  32801
Tel:  (407) 420-1414

October 28, 2015

## **CERTIFICATE OF SERVICE**

I certify that on October 28, 2015, I served a copy of the above Memorandum of Class Counsel Regarding Cy Pres Provisions of the Settlement Agreement and Order on all counsel of record by filing a copy via the ECF system.

/s/ *Andrew H. Marks*
Andrew H. Marks