# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ) | |
| ) | |
| **In re BLACK FARMERS DISCRIMINATION** ) | **Misc. No. 08-0511 (PLF)** |
| **LITIGATION** ) | |
| ) | |
| ) | |

## MEMORANDUM OF CLASS COUNSEL REGARDING *CY PRES* PROVISIONS OF THE SETTLEMENT AGREEMENT AND ORDER

This Court has requested the Parties to submit memoranda addressing the issues raised in its September 3, 2015 Memorandum Opinion and Order ("*Cy Pres* Memorandum") regarding the *cy pres* provisions of the Settlement Agreement approved by the Court on October 27, 2011 (Dkt. No. 231), and amended on April 7, 2014 (Dkt. No. 405). *See* Dkt. No. 430. Specifically, the Parties were asked to address: 1) the applicability of certain case law disfavoring *cy pres* distributions in settlement agreements when further distributions to prevailing class members of unclaimed funds would be feasible; and 2) whether, absent agreement of the Parties, the Court, under Rule 60 of the Federal Rules of Civil Procedure or other authority, may order *sua sponte* such further distribution of the unclaimed settlement funds to prevailing Class Members, rather than a distribution to *cy pres* beneficiaries as provided for in the Settlement Agreement.[1] The Court also sought the Parties' views as to whether a public hearing for Class Members to comment on these issues should be scheduled.

---

[1] The Court also posed two additional questions – one regarding the impact, if any, of the statutory provisions authorizing the claims at issue in this case and the bearing those provisions may have on the issue of the appropriate distribution of unclaimed settlement funds; the second regarding the applicable legal standard for the Court in determining whether a further distribution to Class Members would be appropriate, *assuming* the Court has authority to do so. Both of these additional questions are addressed in the discussions of the two issues identified above.

In its subsequent Order dated November 19, 2015, the Court directed Class Counsel to address two additional questions:  1) whether the Class Counsel's ethical obligations require them to make the best possible case that identifiable Class Members are entitled to a distribution of any excess settlement funds; and 2) whether Rule 23(g)(4) of the Federal Rules of Civil Procedure or Section I.M of the Settlement Agreement require Class Counsel to make the best possible case for distribution of any excess settlement funds to identifiable class members. Memorandum Opinion and Order, Nov. 19, 2015 (Dkt. No. 438)("Supplemental Order").

## DEFENDANT'S RESPONSE TO THE COURT'S ORDER

On December 4, the Defendant submitted a 25-page memorandum addressing the issues raised by the Court in its *Cy Pres* Memorandum.  In this filing, Defendant argued that the Court lacks authority, in light of the express language of the Claims Resolution Act of 2010, to modify the Settlement Agreement to provide for a distribution of excess funds to class members.  Def. Memo. at 22-24.  Defendant also argued that the Court lacks authority under Fed. R. Civ. P. 60 (or otherwise) *sua sponte* to modify the *cy pres* provisions of the Settlement Agreement in view of the fact that:  (1) the Agreement expressly provides that it may be modified "only with the written agreement of the Parties"; (2) the Court has already entered a final judgment approving the Agreement; and (3) the Rule 60 standards for the modification of final judgments are not satisfied in this case.  *Id.* at 16-22.

## CLASS COUNSEL'S RESPONSE TO THE *CY PRES* ISSUES

Class Counsel have carefully considered the issues raised by the Court, including the range and scope of their obligations to the Class.  Class Counsel have also carefully considered the arguments advanced by the Defendant in response to the Court's *Cy Pres* Memorandum.  As discussed below, Class Counsel believe that the best interests of the Class as a whole are served

by implementation of the *cy pres* provisions of the Settlement Agreement as previously approved by the Court.  That is because only a subset of the Class as certified by the Court would benefit from a supplemental distribution of the excess settlement funds whereas the Class *as a whole* would benefit from the use of the *cy pres* funds by appropriate "tax-exempt non-profit organizations that are providing agricultural, business assistance, or advocacy services, including assistance under Pigford and the Consolidated Case, to African American farmers."  Settlement Agreement, § V.E.13 (as amended April 7, 2014).

Further, it is the considered view of Class Counsel that, as argued by Defendant, where, as here, there is no agreement among the Parties, and no party has moved to modify the Settlement Agreement under Fed. R. Civ. P. 60, the Court lacks authority on its own initiative to modify the Agreement to permit distribution of unclaimed settlement funds to Class Members. In addition, Class Counsel believes that, as argued by the Defendant, there is not a meritorious argument that the applicable (and stringent) standards for modification under Rule 60(b) are met here in any event.  *See* Def. Memo. at 17, citing *In re Black Farmers Discrimination Litig.*, 29 F.Supp.3d 1, 5 (D.D.C. 2014).

As discussed herein, these conclusions are fully consistent with the duties owed by Class Counsel to the Class as a whole.  Indeed, both the obligations imposed by the D.C. Rules of Professional Conduct and the requirements of the Federal Rules of Civil Procedure (including Fed. R. Civ. P. 23(g)(4)) obligate Class Counsel always to act "within the bounds of the law" and, within those bounds, to act in the best interests of the class *as a whole*, even where a particular position may not be in the best interests of a subset of class members.  *See* D.C. Rules of Professional Responsibility, Rule 1.3; *Pigford v. Veneman*, 355 F. Supp.2d 148, 168 (2005); Manual for Complex Litigation § 21.641 (4th ed. 2004).

For these reasons, as more fully explained below, Class Counsel believe that modification of the Settlement Agreement to eliminate the *cy pres* distribution and to require the distribution of unclaimed settlement funds to individuals comprising only a portion of the Class would not be in the interests of the Class as a whole and would be inconsistent with applicable legal precedent.

## I.   *Cy Pres* Distribution Is in the Best Interest of the Class as a Whole.

Implementation of the *cy pres* provisions of the Settlement Agreement here is in the interest of the Class as a whole.  The Class certified by the Court in this case is defined as follows:

> All individuals:  (1) who submitted Late-Filing Requests under Section 5(g) of the *Pigford v. Glickman* Consent Decree on or after October 13, 1999, and on or before June 18, 2008; but (2) who have not obtained a determination on the merits of their discrimination complaints, as defined by Section 1(h) of the Consent Decree.

*See In re Black Farmers Discrimination Litigation*, 856 F.Supp.2d 1, 9-10 (D.D.C. 2011).

While the precise size of the certified class was not determined, the Court, in certifying the Class and finding that the numerosity requirement of Fed. R. Civ. P. 23 (a) was satisfied, noted that "[r]oughly 40,000 plaintiffs have filed claims at this point in the *Pigford II* litigation, and thousands more may follow."  *Id.* at 14.  Following approval of the Settlement Agreement, more than 33,000 individuals submitted claims for relief under the Agreement's claim-filing process.  However, because of the substantive and timing requirements for recovery under that process, only 18,310 of the submitted claims were approved.  Thus, the number of Class Members who qualified to receive payments under the Settlement Agreement is substantially smaller than the total number of Class Members.

A decision to pay out the unclaimed settlement funds to the roughly 18,000 Class Members who already have received full payment of their claims would afford a modest benefit – on the order of $500 (before taxes) – to *these* particular class members.  But such a

supplemental distribution would provide no benefit at all to the thousands of other Class Members who either did not submit a claim under the Consent Decree or who, for one reason or another, did not have their claims approved.  For this reason, a supplemental distribution of the unclaimed funds would not benefit the class *as a whole*.

In contrast, implementation of the *cy pres* provisions of the Settlement Agreement would benefit the *entire* Class.  That is because all Class Members were the victims, or at least believed themselves to be the victims, of discriminatory practices by the U.S. Department of Agriculture. Unlike in the original *Pigford* litigation, however, the Settlement Agreement here contains no injunctive or other prospective relief that would address potential future discrimination against black farmers.  All Class Members, therefore, share an interest in having robust non-governmental organizations available to assist them, as well as other black farmers, with future discrimination and other challenges they may face to their ability to farm.  Indeed, the only benefit provided by the Settlement Agreement to Class Members who did not submit claims or who did not prevail on their claims is the payment of *cy pres* funds to appropriate tax-exempt non-profit organizations that are now and will in the future be providing assistance to African American farmers.

In short, while only a *portion* of the Class would benefit from a supplemental distribution, the *entire* Class would benefit from the distribution of unclaimed settlement funds on a *cy pres* basis to "tax-exempt non-profit organization[s] . . . that [are] providing agricultural, business assistance, or advocacy services, including assistance under *Pigford* and the Consolidated Case, to African American farmers."  Settlement Agreement, Sect. V.E.13 (as amended April 7, 2014).  It is for this reason that Class Counsel negotiated for the inclusion of the *cy pres* provision in the Settlement Agreement.  And it is for this reason that the interests of

the Class *as a whole* support implementation of the Settlement Agreement without modification, so that the unclaimed settlement funds can be distributed *cy pres* to organizations that meet the very specific criteria delineated in the Settlement Agreement.

## II.     A "Presumption" Against Distributing Unclaimed Settlement Funds on a *Cy Pres* Basis is Not Applicable Here.

The Court in its *Cy Pres* Memorandum noted that some courts in other circuits have concluded that unclaimed settlement funds *generally* should be distributed to class members rather than to *cy pres* beneficiaries where further distribution to class members is feasible. *See, e.g., In re Lupron Marketing and Sales Practices Litig.*, 677 F.3d 21, 32 (1st Cir. 2012) (noting presumption favoring distribution of unclaimed settlement funds to class members to ensure recovery of their full loss; except that "[w]here class members have been fully compensated for their losses, this presumption does not apply."); *Klier v. Elf Atochem North America, Inc.,* 658 F.3d 468, 475 (5th Cir. 2011) (*cy pres* distributions are "permissible only when it is not [logistically] feasible [or economically viable] to make further distributions to class members . . . except where an additional distribution would provide a windfall to class members with liquidated damages claims that were 100 percent satisfied by the initial distribution.") (citations omitted); *see also Marek v. Lane*, 134 S.Ct. 8, 9 (2013) (Roberts, C.J.) (noting "fundamental concerns surrounding the use of [*cy pres*] remedies in class action litigation"); AMERICAN LAW INSTITUTE, PRINCIPLES OF THE LAW OF AGGREGATE LITIGATION § 3.07 (2010) (hereinafter "ALI Principles") (recognizing "presumption" that unclaimed funds are to be distributed to "participating class members unless the amounts involved are too small to make individual distributions economically viable or other specific reasons exist that would make such further distributions impossible or unfair.").  There is, however, no law in this Circuit regarding the applicability or inapplicability of such a general presumption.

Defendant argues in its memorandum that a presumption in favor of further distribution to class members would not empower the Court to modify the Settlement Agreement.  *See* Def. Memo. at 9-15.  Defendant's position is well-founded because the case law in other circuits applying a presumption against *cy pres* distributions of unclaimed settlement funds, overwhelmingly, involves settlements that were before the courts either on a motion seeking approval of a settlement or on an appeal from a district court approval of a settlement – and not, as is the case here, where the settlement agreement already has been approved, affirmed by the court of appeals (see *Latham v. Vilsack*, 11-5326, 2012 WL 10236550, at *1 (D.C. Cir. 2012)), and entered as a final judgment.  Moreover, the "remedial" rationale underlying the presumption applied in other cases – to ensure full recovery for class members – is not applicable where, as here, the prevailing class members already have received the full recovery to which they are entitled under the statutes that gave rise to and provided the funding for their claims.

### A.      A "presumption" cannot be applied to modify a final order.

The cases applying a "presumption" that unclaimed settlement funds not be distributed on a *cy pres* basis where further distribution to class members is feasible involve, for the most part, judicial review and approval of a proposed settlement.  In such cases, the issue for the court is whether *in the first instance* to approve (or affirm the approval of) the settlement as "fair, reasonable and adequate" under Rule 23 of the Federal Rules of Civil Procedure.[2]

---

[2]      Other cases, while not considering the *cy pres* issue at the initial settlement approval stage, involved appellate review of the district courts' consideration of distribution of unclaimed settlement funds *in the first instance*.  *See, e.g., Klier,* 658 F.3d at 468 (settlement agreement provided both that "left over" money in the fund be distributed to claimants and that the court was authorized to "make changes to this protocol as necessary for the benefit of the Settlement Class Members"; issue arose on defendant's motion to the district court to distribute "left over" funds as *cy pres*).

Indeed, the *sole* case that Class Counsel have located in which a court of appeals overturned a *cy pres* distribution made pursuant to a settlement agreement that had been both finally approved by the district court and affirmed on appeal, all without objection to the *cy pres* provision, is *In re BankAmerica Corp. Securities Litig.,* 775 F.3d 1060 (8th Cir. 2015). Although the Eighth Circuit in that case pointed to the settlement agreement's vesting of "sole discretion" in the district court to determine the *cy pres* beneficiaries as "not a traditional Article III function," and therefore a reason to void the provision "*ab initio,*" it also concluded that "a proposed *cy pres* distribution must meet [our standards governing *cy pres* awards] regardless of whether the award was fashioned by the settling parties or the trial court." *Id.* at 1066 (internal citations omitted). [3]

Class Counsel find persuasive the conclusion of Judge Emmett Sullivan in his recent opinion in *Keepseagle v. Vilsack*, Civil Action No. 99-3119 (EGS), 2015 WL 4510837 at *18 (D.D.C. July 24, 2015), that the Eighth Circuit's ruling in *In re BankAmerica Corp. Securities Litig.* is an outlier and that its reasoning is "unpersuasive." In *Keepseagle*, Judge Sullivan reviewed the appellate authorities from other circuits addressing a presumption favoring the distribution of unclaimed settlement funds to class members, and concluded that such cases, because they did not involve an approved and affirmed settlement agreement providing for a *different* mode of distribution, were inapposite to the situation presented in *Keepseagle* – where,

---

[3]      The instant case stands in stark contrast to *In re BankAmerica Corp.* and a number of other cases where appellate courts have disapproved *cy pres* provisions because the very specific criteria in the Settlement Agreement for the selection of *cy pres* beneficiaries ensure that any beneficiaries of *cy pres* funds in this case will have "interests [that] reasonably approximate those being pursued by the class" *See* ALI Principles, §3.07(c). Indeed, in the instant case, some of the tax exempt non-profit organizations that may seek *cy pres* funds played a role in bringing about the enactment by Congress of the 2008 Farm Bill that created the cause of action that is the basis of the class settlement in this case and/or participated in the fairness hearing conducted by the Court.

as here, the district court had approved the settlement agreement providing for a *cy pres* distribution and that approval had been affirmed on appeal.[4] *Id*. at *13-16. Noting that "the [*Keepseagle*] settlement [wa]s a final judgment," Judge Sullivan rejected requests by Class Counsel, and at least one class representative, to modify the agreement to provide for a different method of distribution of unclaimed settlement funds, holding that the Court is "bound . . . to the final judgment in this case and the narrow legal doctrines for modifying final judgment [which were not met here]." *Id*. at *3, 4.

Notably, in contrast to the instant case where *no* party has sought to modify the settlement agreement, modification in *Keepseagle* was *not opposed* by any party. Yet, Judge Sullivan still ruled that, absent a legal basis to modify, "the court must enforce the [settlement] agreement." *Id*. at *44-47. Referencing the Fifth Circuit's decision in *Klier* (also cited by the Eighth Circuit in *In re BankAmerica Corp*.),[5] Judge Sullivan observed:

> Because a district court's authority to administer a class-action settlement derives from Rule 23, the court cannot modify the bargained-for terms of the settlement agreement. That is, while the settlement agreement must gain the approval of the district judge, <u>once approved its terms must be followed by the court and the parties alike</u>. The district judge must abide the provisions of the settlement agreement, reading it to effectuate the goals of the litigation . . . . The terms of the settlement agreement are always to be given controlling effect.

---

[4]     As in the instant case, the issue of modification first arose in *Keepseagle* following completion of the claims process, where the unclaimed funds, which also were to be distributed to *cy pres* beneficiaries recommended by Class Counsel and approved by the Court, exceeded (there by a substantial magnitude) the amount anticipated by the parties when they drafted the agreement.

[5]     The Eighth Circuit cited *Klier* as an example of another "sister circuit [which has] criticized and severely restricted the practice [of *cy pres* distributions]." 775 F.3d at 1063. However, the Fifth Circuit, in *Klier*, held that the district court had abused its discretion in ordering a *cy pres* distribution where "the terms of [the] settlement agreement [we]re sufficiently clear [regarding a *pro rata* distribution], or . . . were insufficient to overcome the presumption that the settlement provides for further distribution to class members." *Klier*, 658 F.3d at 479.

*Keepseagle*, 2015 WL 4510837 at *18 (quoting *Klier,* 658 F.3d at 475-76) (emphasis added).  In

other words, "[b]ecause the Agreement is a final judgment, the Court's authority is

circumscribed.  '[D]istrict courts enjoy no free-ranging 'ancillary' jurisdiction to enforce consent

decrees, but are instead constrained by the terms of the decree and related order.'"  *Id.* at *12

(quoting *Pigford v. Veneman,* 292 F.3d 918, 924 (D.C. Cir. 2002) (quoting *Kokkonen v.*

*Guardian Life Ins. Co. of America*, 511 U.S. 375, 381 (1994)).  Thus, for the reasons explained

by Judge Sullivan, Class Counsel believe that, absent grounds under Rule 60 of the Federal

Rules of Civil Procedure for relief (addressed below), there is not a meritorious basis for arguing

that any general presumption governing disposition of unclaimed settlement funds authorizes a

court to override a settlement agreement that has been finally approved, affirmed by the court of

appeals, and entered as a final judgment.

**B.      Cases where class members are fully compensated present an
exception to any "presumption" against *cy pres* distributions.**

Even if the Court *could* apply a presumption favoring distribution of unclaimed

settlement funds to class members in derogation of the terms of a settlement agreement that has

been approved, affirmed, and entered as a final judgment, such a presumption would, in the view

of Class Counsel, still not be applicable here.  That is because even those authorities that have

concluded that there should be a general presumption against *cy pres* distributions have

recognized an exception where all successful claimants have received *full compensation* for their

claims.

The claims of the Class Members in this action that were resolved by the Settlement

Agreement here arose from Section 14012 of the Food, Conservation, and Energy Act of 2008

("2008 Farm Bill") and the Claims Resolution Act of 2010.  The 2008 Farm Bill provided for

"liquidated damages of $50,000, discharge of the debt that was incurred . . . and a tax payment in

the amount equal to 25 percent of the liquidated damages and loan principle discharged" for

successful claimants.  § 14012(f)(1).[6]  *See also* Claims Resolution Act of 2010 (appropriating

additional funds to implement the Settlement Agreement as approved by the Court).  To qualify

for such a remedy, claimants were required to show by substantial evidence (and on a paper

record) that they were a *Pigford* Claimant under the 1999 Consent Decree in *Pigford v.*

*Glickman*, 185 F.R.D. 82 (D.D.C.1999), *aff'd Pigford v. Veneman*, 292 F.3d 918 (D.C. Cir.

2002), and had not previously obtained a determination on the merits of their *Pigford* Claim.

§§ 14012(b), (f).  Under the Settlement Agreement, Class Members who prevailed on their

Section 14012 statutory claims – the only claims asserted in this case – could receive up to the

full "liquidated damages" amount.[7]

In this case, all prevailing Class Members who complied with the terms of the Settlement

Agreement have received the full amount authorized by Section 14012 and provided for in the

Settlement Agreement.  Thus, these Class Members have been "fully compensated for their

losses" under both the 2008 Farm Bill and the Claims Resolution Act of 2010.  *See In re Lupron*,

677 F.3d at 32.  For this reason, any supplemental distribution of settlement funds "would

provide a windfall to class members with liquidated-damages claims that [had been] 100%

---

[6]     The Act also provided for liquidated damages in the amount of $3,000 for successful noncredit
claims, *see* § 14012(f)(2).  Had there been any successful Track B claims, "actual damages" would have
been available as relief to such claimants.  § 14012(g).

[7]     The claims at issue here, unlike the claims in the original *Pigford* action (and, indeed, the claims
in *Keepseagle*), could not have been brought under Equal Credit Opportunity Act ("ECOA"), 15 U.S.C.
§§ 1691 *et seq.,* because the statute of limitations for ECOA claims had run.  The 2008 Farm Bill created
a completely new statutory cause of action to enable certain *Pigford* Claimants to seek relief from a claim
fund made available for this purpose by the 2008 Farm Bill and later increased by the Claims Resolution
Act of 2010.  Although the original *Pigford* claims were properly payable out of the Judgment Fund and,
therefore, arguably were not "liquidated damages" claims in the same sense as those paid in this case,
there are nevertheless strong arguments that Congress's creation of the claims in this case reflected an
intent to achieve parity with those paid in the *Pigford* case.

satisfied by the initial distribution." *Id.* at 35 (quoting *Klier*, 658 F.3d at 475).  Courts and commentators alike have recognized expressly a "windfall" exception to any general presumption favoring distribution of unclaimed settlement funds to class members.  *See*, *e.g.*, *id.* (referencing commentators who "have agreed that distributing residual funds to claimants who have already recovered their losses 'necessarily results in an undeserved windfall for those plaintiffs, who have already been compensated for the harm they have suffered'").[8]  Thus, "[w]here class members have been fully compensated for their losses, this presumption does not apply." *Id.* at 32.

The *Lupron* court explained that the presumption against *cy pres* distribution, as reflected in the ALI Principles, "was motivated by a concern that 'few settlements award 100 percent of a class member's losses, and thus it is unlikely in most cases that further distributions to class members would result in more than 100 percent recovery.'" *Id.* (citations omitted).  The present case, however, is not one of these "most cases."  Here, successful Class Members were awarded and already have received the *full* statutory recovery to which they were entitled under the 2008 Farm Bill – thus, they received not just the full amount negotiated on their behalf in the settlement, but also the full relief provided by the statute which gave rise to their claims.

In short, because each successful Class Member in this case already has received the full remedy to which he or she was entitled under the 2008 Farm Bill, this case falls squarely within the recognized "exception" to a general presumption against *cy pres* distributions of unclaimed settlement funds.  Thus, even if the Court were to conclude that it had the power to disregard the

---

[8]     677 F.2d at 35, *citing* Martin H. Redish, Peter Julian, & Samantha Zyontz, *Cy Pres Relief and the Pathologies of the Modern Class Action:  A Normative and Empirical Analysis*, 62 Fla. L. Rev. 617, 639 (2010); *see also* 2 McLaughlin on Class Actions § 8:15 (8th ed. 2011); Susan Beth Farmer, *More Lessons From The Laboratories:  Cy Pres Distributions in Parens Patriae Antitrust Actions Brought By State Attorneys General*, 68 Fordham L. Rev. 361, 393 (1999).

terms of the Settlement Agreement and consider "anew" the method of distributing unclaimed settlement funds negotiated by the Parties and embodied in this Court's final order and judgment, it should not apply a general "presumption" regarding distribution of unclaimed funds to class members to provide a supplemental payment that would only benefit the subset of the Class that already has received full payment of their claims.

### III. The Court Lacks Authority to Modify the Settlement Agreement Under Fed. R. Civ. P. 60.

The Court's *Cy Pres* Memorandum directs the parties to address the scope of the Court's authority under Fed. R. Civ. P. 60 to modify the Settlement Agreement "to provide for the distribution of unclaimed settlement funds to Class Members rather than to *cy pres* beneficiaries." For the reasons articulated by Defendant in its memorandum, as well as the reasons set forth below, Class Counsel do not believe there is a meritorious argument to support a finding that the Rule 60(b) standards for modification of a final order are met in this case [9]

While it is unsettled in this Circuit whether a district court may act *sua sponte* under Rule 60(b), the majority of the circuits that have considered the issue have concluded that the words "on motion" in Rule 60(b) are not limited to party motions, but may encompass "motions" by the court, as well. *See*, *e.g.*, *Kingvision Pay-Per-View Ltd. v. Lake Alice Bar*, 168 F.3d 347, 351-52 (9th Cir. 1999) ("[t]he traditional definition of *sua sponte* is that the court acts of 'its own will or motion[,]' so the words 'on motion' in Rule 60(b) do not plainly exclude *sua sponte* repairs or inadvertence.") (emphasis in original); *see also Judson Atkinson Candies, Inc. v. Latini-*

---

[9] This Court has previously recognized that modification of the Settlement Agreement under its own terms, as set forth in Section XVII.B of the Agreement, is not permissible here because *none* of the parties here is seeking to alter the provisions governing distribution of unclaimed settlement funds reflected in the Agreement. Thus, any modification must satisfy the standards of Rule 60 of the Federal Rules of Civil Procedure, specifically Rules 60(b)(5) and (b)(6). *See In re Black Farmers Discrimination Litig.*, 29 F.Supp.3d at 3.

*Hohberger Dhimantec,* 529 F.3d 371, 385 (7th Cir. 2008) ("[A] majority of circuits to have considered the power of a district court to vacate a judgment under Rule 60(b) have concluded that district courts have the discretion to grant such relief *sua sponte*."). *But see United States v. Pauley,* 321 F.3d 578, 581 (6th Cir. 2003) ("because Rule 60(b) explicitly requires relief under the rule to occur 'on motion,' courts may not grant such relief except upon a motion from the affected party."). Class Counsel believe that the reasoning of the majority of the circuits is persuasive and that this Court does, therefore, have *sua sponte* authority under Rule 60.

Even assuming the Court has such authority, however, any modification of the Settlement Agreement by the Court on its own initiative still would need to meet the requirements of Rule 60(b), standards which this Court previously has characterized as "stringent." *In re Black Farmers Discrimination Litig.,* 29 F.Supp.3d at 3. Those standards impose a heavy burden to demonstrate that relief from a final order or judgment is warranted. Given the facts of this case, Class Counsel do not believe there is a meritorious argument to be made for a finding that the stringent standards of Rule 60(b) are satisfied.

This Court, citing the seminal case of *Rufo v. Inmates of Suffolk County Jail,* 502 U.S. 367 (1992), has earlier in this litigation articulated the governing standards for application of Rule 60(b)(5):

> Under Rule 60(b)(5), a party seeking modification of a [settlement agreement] bears the burden of demonstrating 'a significant change either in factual condition or in law' that warrants revision of the [agreement]." [*In re Black Farmers Discr. Litig.,* 950 F.Supp.2d 196, 200 (D.D.C. 2013)] (quoting *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 383-84 (1992)); *see also Pigford v. Johanns*, 416 F.3d 12, 16 (D.C. Cir. 2005) (same). Modification may be warranted when the facts have changed and the changed factual conditions "make compliance 'substantially more onerous,' [or] when an agreement 'proves unworkable because of unforeseen obstacles,' or when enforcement of the agreement without modification 'would be detrimental to the public interest.'" *In re Black Farmers Discr. Litig.,* 950 F.Supp.2d at 200 (*quoting Rufo v. Inmates of Suffolk County Jail*, 502 U.S. at 384-85).

*In re Black Farmers Discrimination Litig.,* 29 F.Supp.3d at 3 (rejecting class members' attempts to secure review of claim determinations, where Settlement Agreement specifically addressed the contingency that class members might seek review of denied claims by providing that "Claim Determinations . . . are final and are not reviewable by . . . the Court.").

The provisions of the Settlement Agreement mandating the distribution of unclaimed settlement funds were the subject of extensive and arms' length negotiation between the Parties, as the Parties expressly contemplated that there likely would be at least some successful claimants who would not timely collect their settlement awards in accordance with the Settlement Agreement – but there was no way to predict with accuracy how many such "non-collecting" prevailing claimants there would be – and that the funds designated for administration of the settlement could be more than was actually needed.[10] Thus, Class Counsel do not believe there is a meritorious argument that there has been any "change in factual conditions" or any "unforeseen obstacles" that would make the *cy pres* provisions of the Settlement Agreement "substantially onerous" or otherwise "unworkable." *Id.*

Class Counsel also do not believe there is a meritorious basis for arguing that "enforcement of the [*cy pres* provisions of the Settlement Agreement] without modification 'would be detrimental to the public interest.'" *In re Black Farmers Discrimination Litig.*, 29 F.Supp.3d at 3. To the contrary, implementation of the *cy pres* provisions of the Settlement Agreement would be in the public interest for the same reasons that implementation of these provisions would be in the best interests of the class as a whole. *See* Section I, *supra*. Moreover, Class Counsel do not believe it reasonably can be argued that the public interest would be

---

[10]     Concomitantly, the Parties contemplated the possibility that the funds available to pay successful claims would be *insufficient* to provide the full statutory relief set out in the 2008 Farm Bill to each successful claimant, and addressed this contingency, as well, in the Settlement Agreement.

frustrated by enforcing the terms of the Settlement Agreement that result in (a) the successful claimants receiving the full measure of relief to which they were entitled under the 2008 Farm Bill, and (b) having these successful claimants recover the same award (and not more) received by successful Track A claimants under the 1999 *Pigford* Consent Decree in the predecessor to this case, which served as the template for defining the appropriate relief for successful claims here.[11]

Class Counsel likewise do not believe there is a meritorious basis for arguing that the standards for granting relief under Rule 60(b)(6), which are even more stringent than under Rule 60(b)(5), are met here.  Rule 60(b)(6) permits modification "for any other reason that justifies relief," but both the Supreme Court and this Circuit have cautioned that Rule 60(b)(6) "should [ ] be applied [only] in extraordinary circumstances," and "only sparingly used." *Liljeberg v. Health Svcs Acquisition Corp.*, 486 U.S. 847, 863 (1988) (quoting *Ackermann v. United States*, 340 U.S. 193 (1950)); *Salazar ex rel Salazar v. District of Columbia*, 633 F.3d 1110, 1116-17 (D.C. Cir. 2011); *see also Gonzalez v. Crosby*, 545 U.S. 524, 536 (2005); *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (D.C. Cir. 1980).  Moreover, as this Court has previously held, relief under Rule 60(b)(6) is not available "unless the other clauses [of Rule 60(b)], (1) through (5), are inapplicable," *Pigford v. Veneman*, 307 F.Supp.2d 43, 48 (D.D.C. 2004), since "clause (6) and clauses (1) through (5) are mutually exclusive." *Liljeberg*, 486 U.S. at 863, n.11.  *See also Kramer v. Gates*, 481 F.3d 788, 792 (D.C. Cir. 2007).  Even if an "extraordinary change in circumstances" may warrant relief under Rule 60(b)(6), it cannot reasonably be argued here that either the existence or the amount of the unclaimed settlement funds in this case are "extraordinary."  Indeed, where, as here, the alleged "extraordinary

---

[11]      *Pigford v. Glickman*, 185 F.R.D. 82 (D.D.C. 1999), *aff'd,* 206 F.3d 1212 (D.C. Cir. 2000).

change" was an issue already anticipated by the parties, Rule 60(b)(6) does not provide a basis

on which to grant relief.  *See, e.g., Twelve John Does v. Dist. of Columbia*, 841 F.2d 1133, 1142

(denying relief where the alleged "change in circumstance" was neither "unexpected nor

unforeseen").

      In addressing a request for modification of the Settlement Agreement earlier in this case,

this Court concluded:

> [T]he Court enjoys "no free-ranging 'ancillary' jurisdiction" to enforce or modify
> the Settlement Agreement, but is instead "constrained by the terms of [that
> agreement]."  *Pigford v. Veneman*, 292 F.3d at 924.  "Where no significantly
> changed circumstances have been shown, disregarding the terms of the carefully
> negotiated Settlement Agreement in a manner that benefits [certain claimants],
> over the defendant's objections, would be inconsistent with Rule 60(b), with [the
> Supreme Court's decision in] *Rufo*, and with the 'contractual character' of the
> Settlement Agreement as approved by the related Order and Judgment."  *In re
> Black Farmers Discr. Litig.*, 950 F.Supp.2d at 201.

*In re Black Farmers Discrimination Litig.*, 29 F.Supp.3d at 4 (denying prior Rule 60(b) request

to modify this Settlement Agreement).  Judge Sullivan similarly concluded in *Keepseagle*, when

faced with a similar issue, that "respect for final judgments is a cornerstone of our legal

system . . . [and,] [i]ndeed, that [  ] ultimately binds the Court."  *Keepseagle*, 2015 WL 4510837

at *3.[12]  For the reasons set forth in these decisions, as well as the additional reasons discussed

above, Class Counsel do not believe there is a meritorious argument to support a finding that

there are grounds under Rule 60(b) that would permit modification of the Settlement Agreement

in this case to change the method for distributing unclaimed settlement funds.

---

[12]    *See also In re VMS Ltd. P'ship Sec. Litig.*, 90 C 2412, 1995 WL 355722, at *2 (N.D. Ill. 1995)
("A too liberal application of Rule 60(b) in class actions would undermine the finality of judgments
entered therein and would discourage settlement of such actions."); *In re Nasdaq Mkt.-Makers*, 1999-2
Trade Cases P 72572 (S.D.N.Y. 1999); *O'Brien v. Nat'l Prop. Analysts Partners*, 739 F. Supp. 896, 902-
03 (S.D.N.Y. 1990).

**IV.    Class Counsel's Obligations to the Class Do Not Require That
They Advocate for Distribution of Unclaimed Settlement Funds to
a Subset of the Class In the Circumstances of this Case.**

In its Supplemental Order, the Court asked Class Counsel to address the following issue:

whether, notwithstanding the absence of a legal basis under Rule 60(b) for modifying the

Settlement Agreement here, and the fact that successful Class Members have received full

compensation for their claims, Class Counsel nevertheless are obligated – under the Rules of

Professional Conduct, Fed. R. Civ. P. 23(g)(4), or the Settlement Agreement itself – to advance

the best possible case for modifying the Agreement to provide for distribution of the remaining

funds to identifiable Class Members.  (Dkt. No. 438)  The answer is no.

Both the D.C. Rules of Professional Conduct and Rule 23 of the Federal Rules of Civil

Procedure require Class Counsel to serve the interests of the Class *as a whole,* rather than the

interests of a subset of the Class; and neither requires Class Counsel to advance arguments that

they do not believe to be meritorious – or otherwise exceed "the bounds of the law" – in the

service of "zealous and diligent" or "fair and adequate" representation of the interests of the

Class.  *See* D.C. Rules of Professional Conduct, 3.1; Rule 23(g)(4); *see also Pigford v. Veneman*,

355 F. Supp 2d 148, 168 (D.D.C. 2005).  Because a further distribution to successful Class

Members would benefit only a subset of the Class, namely those Class Members who already

have received the full statutory compensation to which they are entitled for their claims, and

leave without *any* benefit the thousands of Class Members who either did not pursue a claim for

damages or were unsuccessful, the *cy pres* provisions in the Settlement Agreement, as negotiated

and approved by the Court, will best serve the interests of the Class *as a whole*.

Additionally, for the reasons explained above, even were the balance of interests between

the Class as a whole and the subset of already compensated Class Members closer, Class

Counsel, after careful consideration of the applicable legal authorities, including the prior

decisions of this Court both in the present case and in the predecessor *Pigford* litigation, have concluded that there is no meritorious argument under Fed. R. Civ. P. 60(b) for modification of the Settlement Agreement to permit distribution of the unclaimed funds to individual Class Members who have already received the full statutory compensation to which they were entitled.[13]  Class Counsel's decision not to argue for modification of the Settlement Agreement at this stage of the proceedings is, therefore, fully consistent with the duties and obligations owed by Class Counsel to the Class as a whole.[14]

A.      **Class Counsel is obligated to advance the interests of the Class as a whole.**

Rule 1.3 of the D.C. Rules of Professional Conduct obligates attorneys to "represent a client zealously and diligently within the bounds of the law."  While the comparable rule in the American Bar Association's Model Rules of Professional Conduct is worded a bit differently, the general intent is the same:  it imposes on lawyers an obligation to zealously "protect and pursue a client's legitimate interests."  Preamble and Scope, Ann. Mod. Rules Prof. Cond. Preamble and Scope.

In the context of class actions, class counsel's duty to advocate zealously extends to the class as a whole, not just to the class representatives or a subset of class members.  *See, e.g., Pigford v. Veneman*, 355 F. Supp. 2d 148, 168 (D.D.C. 2005) (*citing* Manual for Complex

---

[13]      Section I.M of the Settlement Agreement cannot reasonably be read to require Class Counsel to advocate for modification of the Agreement.  This provision of the Settlement Agreement, which the Court previously approved, affirms that taken as a whole (*i.e.,* including the *cy pres* provisions), "th[e] Agreement provides substantial benefits to the [  ] Class and the Class Members" and ""is in the best interests of the [  ] Class and the Class Members."  In fact, given the requirement in Section XX of the Settlement Agreement that the "Parties to th[e] Agreement [  ] defend [it] against any challenges to it in any forum," Class Counsel arguably would be violating the Settlement Agreement if they advocated that the *cy pres* provisions of the Agreement should not be implemented.

[14]      *See Aro Corp. v. Allied Witan Co*., 531 F. 2d 1368, 1372 (6th Cir. 1976) (noting that "[a]greements settling litigation are solemn undertakings" and "the involved lawyers, as officers of the court, [have a duty] to make every reasonable effort see that the agreed terms are fully . . .  carried out.").

Litigation § 21.641 (4th ed. 2004)) (advising that class counsel is responsible for "protecting the interests of the class as a whole, even in circumstances where the class representatives take a position that counsel consider contrary to the interests of absent class members.... [Class counsel] must act in the best interests of the class as a whole.")).  Thus, class counsel must advocate for the interests of the class as a whole, even where those interests may be inconsistent with the interests of certain class members.  As this Court noted in *Pigford*:

> Class counsel certainly have a duty to represent the class as a whole, but the diversity of membership in class action cases makes unanimity impossible.  Consequently, class counsel may well disagree sharply with some members of the class.  Still, they must attempt to represent and protect the class as a whole.

*Id*.  In *Pigford*, certain class members seeking to modify the consent decree had moved to disqualify class counsel because of their refusal to advocate for modification.  This Court declined to disqualify class counsel, and found that their refusal to advocate for the requested modification, while "continu[ing] to work diligently to fully implement the Consent Decree for the benefit of all class members," was consistent with class counsel's duty to protect the interests of the class as a whole.  *Id.* at 168-69.

For the reasons set forth in Section I above, the interests of the Class as a whole in this case are best served by implementation of the *cy pres* provisions of the Settlement Agreement.[15]  Thus, Class Counsel's position that the Settlement Agreement should not be modified is wholly

---

[15]     At the time the Settlement Agreement was negotiated, presented to the Court for approval, and vetted publicly through the fairness hearing process, Class Counsel believed that the Settlement Agreement *as a whole* – including <u>both</u> the claims payment provisions and the *cy pres* provisions – was fair, reasonable, and adequate and in the best interest of the Class *as a whole*.  By advocating now for implementation of the Settlement Agreement as a whole, including its *cy pres* provision, Class Counsel is therefore continuing to act in the same ethical manner it always has – by arguing in the interest of the class as a whole.  It should be noted that the Court in fact approved the package *as a whole*; it did not approve the *cy pres* provision alone or in a vacuum, but rather approved it as an integral part of the overall settlement package.  Class Counsel believe that this is how the Court should continue to consider the appropriateness of the Agreement's *cy pres* provisions.

consistent with their duty to advocate zealously for the interests of the class *as a whole*. A comparable situation was presented in *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24 (1st Cir. 2009). In that case, a class member had argued that "loyalty to the class obligated class counsel to demand the highest possible payout to class members" rather than advocate for a *cy pres* fund. *Id.* at 36. The First Circuit rejected that argument, finding that where the claimants were being fully compensated for their damages, class counsel were not obligated "to demand the highest possible payout to class members." The court of appeals concluded that "there was nothing inherently wrong with class counsel advocating for a cy pres fund to benefit those class members whose recovery would go unclaimed after counsel ensured that all claimants would receive more than their damages." *Id.* Likewise, there is manifestly nothing inappropriate, much less violative of any duties owed to the Class as a whole, for Class Counsel here not to advocate for modification of the Settlement Agreement.

### B.  The duty of zealous advocacy does not obligate Class Counsel to advocate a position that is not supported by law.

An attorney's duty to advocate on behalf of his/her clients, while exercised with zeal, is not unalloyed. Significantly, the applicable D.C. Rule incorporates the phrase "within the bounds of the law," and the comments to the ABA Model Rules incorporate the notion of the client's "legitimate interests." Thus, under any potentially applicable rules of professional conduct, a lawyer has no obligation to pursue an argument or claim that the lawyer does not reasonably believe to be legally supported.

Indeed, an attorney's duty to his/her clients is always subject to the attorney's duties of candor and as an officer of the court. Thus, courts consistently have held that a "lawyer's duty of candor to the court must always prevail in any conflict with the duty of zealous advocacy." *U.S. Dept. of Hous. & Urban Dev. v. Cost Control Mktg. & Sales Mgmt. of Virginia, Inc.*, 64 F.3d

920, 925 (4th Cir. 1995); *see also Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1546 (11th

Cir. 1993); *Jones v. Cont'l Corp.*, 789 F.2d 1225, 1230 (6th Cir. 1986); *United States v. Shaffer*

*Equip. Co.*, 11 F.3d 450, 457-58 (4th Cir. 1993).  As the *Shaffer* court explained:

> [I]t is important to reaffirm, on a general basis, the principle that lawyers, who
> serve as officers of the court, have the first line task of assuring the integrity of
> the process.  Each lawyer undoubtedly has an important duty of confidentiality to
> his client and must surely advocate his client's position vigorously, but only if it is
> truth which the client seeks to advance.  The system can provide no harbor for
> clever devices to divert the search, mislead opposing counsel or the court, or
> cover up that which is necessary for justice in the end.

*Shaffer*, 11 F.3d at 457-58.  Thus, "an attorney's ethical obligation of zealous advocacy on behalf

of his or her client does not amount to *carte blanche* to burden the federal courts by pursuing

claims that are frivolous on the merits."  *Jones*, 789 F.2d at 1230.

Class Counsel here have taken their duties *both* as counsel to the Class *and* as officers of

the Court with utmost seriousness throughout this proceeding.  In this regard, they have from the

outset carefully examined the legal arguments and potentially applicable authorities that could

support a claim for modification of the Settlement Agreement to eliminate its *cy pres* provisions.

Based on a full and careful assessment of all of the potential arguments and authorities, Class

Counsel have concluded in good faith that these potential arguments are without merit.  Under

these circumstances, Class Counsel's duty of candor to, and as officers of, the Court trumps any

potential duty of zealous advocacy that arguably may be owed to a subset of the Class.  Indeed,

Class Counsel would be acting contrary to their duties under the rules of professional conduct if

they were to advance an argument that they did not believe to be meritorious.

## IV.    Public Hearing on *Cy Pres* Issues

The Court has sought the Parties' views as to whether a public hearing should be held on

the *cy pres* issues raised by the Court.  Class Counsel's view is that the issues raised by the Court

– *i.e.*, whether the Court has authority to modify the Settlement Agreement to alter the method of

distributing unclaimed funds, and, if so, the applicable legal standards – are largely legal in nature.  Class Counsel believes that these issues can be fully addressed in written submissions to the Court rather than in an oral hearing.  Class Counsel therefore agree with Defendant that a hearing on the *cy pres* issues is not necessary.

Class Counsel would note in this regard that if the Court concludes that a *cy pres* distribution of unclaimed settlement funds should proceed as required by the Settlement Agreement, the next step will be for Class Counsel to make recommendations to the Court of appropriate *cy pres* beneficiaries that meet the criteria in the Settlement Agreement, and the Court will then need to decide on which specific organizations should receive funds, in what amounts, and under what terms.  A public hearing on these *cy pres* implementation issues may well be warranted even if the Court determines not to conduct a hearing on the legal issues raised by its *Cy Pres* Memorandum.

Respectfully submitted,


/s/ Henry Sanders                               /s/ Andrew H. Marks
Henry Sanders                                   Andrew H. Marks
CHESTNUT, SANDERS, SANDERS,                     D.C. Bar No. 932269
PETTAWAY & CAMPBELL, LLC                        COFFEY BURLINGTON P.L.
One Union Street                                2699 South Bayshore Drive
Selma, AL  36701                                Miami, FL  33133
Tel:  (334) 875-9264                            Tel:  (305) 858-2900
Fax:  (334) 875-9853                            Fax:  (305) 858-5261


/s/ Gregorio A. Francis
Gregorio A. Francis
MORGAN & MORGAN, PA
20 North Orange Avenue, #1600
Orlando, FL  32801
Tel:  (407) 420-1414

Dated:  December 18, 2015

## <u>CERTIFICATE OF SERVICE</u>

I certify that on December 18, 2015 I served a copy of the above Memorandum of Class

Counsel Regarding *Cy Pres* Provisions of the Settlement Agreement and Order on all counsel of

record by filing a copy via the ECF system.

/s/ *Andrew H. Marks*
Andrew H. Marks