**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                                      )
In re BLACK FARMERS DISCRIMINATION        )
LITIGATION                                            )
_____  )      Misc. No. 08-mc-0511 (PLF)
                                                      )
This document relates to:                       )
                                                      )
ALL CASES                                          )
_____  )

### DEFENDANT'S REPLY MEMORANDUM

In its opening brief, Defendant explained that the parties' Settlement Agreement —

which was approved by this Court after extensive notice to the class and a lengthy fairness

hearing — provides that if any settlement funds remain after class members receive the full

compensation to which they are entitled, those unclaimed funds will be distributed to *cy pres*

beneficiaries proposed by class counsel and approved by the Court.  Congress sanctioned this

agreement in the 2010 legislation appropriating funds to the settlement, and explicitly prohibited

the use of excess funds for "any purpose" not contemplated by the agreement.  *See* Claims

Resolution Act, Pub. L. 111-291, § 201(c), 124 Stat. 3064.  Now that class members have

received the full compensation and other benefits to which they are entitled under the Settlement

Agreement and the Food, Conservation, and Energy Act of 2008 ("2008 Act"), which created the

*Pigford II* cause of action, approximately $9.5 million remains of the $1.25 billion that Congress

appropriated to the settlement.  *See* 2008 Act, Pub. L. 110-234, § 14012(f), 122 Stat. 923, 1448

(2008).  As Defendant explained, pursuant to the parties' congressionally-sanctioned agreement

and the terms of the Claims Resolution Act, those excess funds must be either distributed to *cy*

*pres* beneficiaries proposed by class counsel and approved by the Court pursuant to the

specifications of the Settlement Agreement, or returned to the United States Treasury.  Any other

disposition of the funds would violate the explicit terms of the Claims Resolution Act and the 2008 Act, and would provide a windfall to successful claimants.  Defendant further explained that absent agreement of the parties, the Court does not have authority under the Settlement Agreement, Rule 60 of the Federal Rules of Civil Procedure, or otherwise to unilaterally rewrite the parties' agreement and distribute excess settlement funds to class members, rather than to *cy pres* beneficiaries.

Although no party has objected to the agreement's *cy pres* provision at any point in the litigation, amicus curiae Competitive Enterprise Institute ("CEI") has filed a brief arguing that this Court should unilaterally modify the parties' agreement to distribute the excess funds to the subset of class members who submitted successful claims.  CEI's proposal would violate the express terms of two federal statutes and would undermine the parties' bargained-for agreement.  CEI's brief fails to address these statutes and the overwhelming authority cited in Defendant's opening brief requiring this Court to adhere to this agreement.  Rather, CEI provides abstract critiques of the *cy pres* doctrine, entirely divorced from the facts of this case.  Indeed, CEI does not even recognize that additional distributions to successful claimants would exceed the damage remedy authorized by Congress in creating the *Pigford II* cause of action, much less acknowledge that the explicit terms of the Claims Resolution Act prohibit such an outcome.  To the contrary, CEI merely parrots "principle[s] of general applicability," relying on generalities and "hypothetical[s]" regarding *cy pres* remedies that are simply not relevant here.  *See, e.g.*, Amicus Br. at 1, 5.

Because this Court lacks authority to provide for a distribution of excess funds to class members and CEI's brief does not establish otherwise, this Court should enforce the parties' agreement pursuant to its express terms.

I.    **Any Presumption Against *Cy Pres* Remedies Is Inapplicable Under The Circumstances Here**

Any unilateral modification of the Settlement Agreement to distribute excess funds to class members would violate the express terms of the parties' carefully-negotiated compromise, which exclusively governs the distribution of funds in this action.  CEI's primary argument is that general policy concerns about *cy pres* remedies trump the binding language of the parties' agreement.  CEI is mistaken.  The law is clear that any presumption against *cy pres* remedies as a general matter cannot override the specific language of the Settlement Agreement, which was negotiated by the parties, sanctioned by Congress, approved by this Court, and upheld on appeal.  Moreover, any such presumption is inapplicable here, where class members received full compensation to which they were entitled under the terms of the 2008 Act, which created the *Pigford II* cause of action.  Indeed, additional distributions of excess funds to class members would thwart congressional intent and provide a windfall to successful claimants at the expense of other class members.

A.    *Any Presumption Against* Cy Pres *Remedies Does Not Trump the Parties' Agreement and Congressional Intent*

As discussed in Defendant's opening brief, any presumption in favor of distributing unclaimed settlement funds to successful claimants rather than to *cy pres* beneficiaries is inapplicable here, where the parties have agreed to a *cy pres* distribution, and that agreement has been approved by the district court and upheld on appeal.  *See* Def.'s Br. at 9-14.  Indeed, the law is clear that a court "may not replace the terms of [the agreement] with its own, no matter how much of an improvement it would make in effectuating the [agreement's] goals."  *United States v. Int'l Bhd. of Teamsters*, 998 F.2d 1101, 1107 (2d Cir. 1993); *Rosen v. Tennessee Com'r of Fin. and Admin.*, 288 F.3d 918, 925 (6th Cir. 2002) (same); *Keepseagle v. Vilsack*, No. 99-3119

(EGS), 2015 WL 4510837, at *13 (D.D.C. July 24, 2015) (same).  This is because "[s]ettlement

agreements are contracts," and courts must interpret them according to the parties' intent.

*Lindell v. Landis Corp. 401(k) Plan*, 640 F. Supp. 2d 11, 15 (D.D.C. 2009).

Furthermore, as previously explained, any modification of the agreement to provide for

additional distributions would violate the unambiguous terms of the Claims Resolution Act,

which require that "[i]f any of the funds appropriated . . . are not obligated and expended to carry

out the Settlement Agreement, the Secretary of Agriculture shall return the unused funds to the

Treasury and may not make the unused funds available for any purpose related to [the 2008 Act],

for any other settlement agreement executed in *In re Black Farmers Discrimination Litigation*,

No. 08-511 (D.D.C.), or for any other purpose."  Claims Resolution Act § 201(d).  The Act

specifies that the term "Settlement Agreement" means the agreement dated February 18, 2010,

and that "[t]he use of the funds appropriated . . . shall be subject to the express terms of the

Settlement Agreement."  *Id.* § 201(a)(1), § (d).  The Act further provides only one mechanism to

modify the terms of the agreement: any modification must be "agreed to by the parties and

approved by the court."  *Id.* § 201(a)(1).  Thus, absent agreement of the parties, the Court lacks

authority to modify the agreement.

In arguing that a presumption against *cy pres* remedies applies notwithstanding the

finalized nature of the parties' agreement, CEI relies on two decisions from outside this Circuit,

*Klier v. Elf Atochem North America, Inc.*, 658 F.3d 468 (5th Cir. 2011) and *BankAmerica Corp.*

*Securities Litigation*, 775 F.3d 1060 (8th Cir. 2015).  Amicus Br. at 7.  But as explained in

Defendant's opening brief, these cases do not control the outcome here.  In *Klier*, the Fifth

Circuit reversed the district court's unilateral imposition of a *cy pres* distribution, emphasizing

that "[t]his is not a case where the settlement agreement itself provides that residual funds shall

be distributed via *cy pres*." 658 F.3d at 476.  Therefore, its holding is inapposite here, where the parties bargained for and agreed to the *cy pres* provision in their settlement.  *BankAmerica*, whose reasoning has been rejected by at least one court in this Circuit, *see Keepseagle*, 2015 WL 4510837, at *18, is similarly unpersuasive, as it misconstrues Ninth Circuit precedent and the American Law Institute's principles, which address whether to use a *cy pres* remedy in the first place, not whether a court has authority to unilaterally rewrite the parties' final agreement years after it has been approved.  *See id.* at *13.

Moreover, as discussed below, *BankAmerica*, *Klier*, and the American Law Institute's principles are inapplicable here, where all class members have received the full compensation to which they are entitled under the 2008 Act.

B. *Any Presumption Against* Cy Pres *Remedies Is Not Applicable Here, Where Class Members Have Received All The Relief To Which They Are Entitled*

Any general presumption against *cy pres* remedies does not apply here, where successful class members have already been fully compensated for their claims under the terms of the 2008 Act, which created the *Pigford II* cause of action.  Indeed, additional distributions to class members would violate the express terms of the statutes creating and funding this class action settlement, and would provide a windfall to successful claimants at the expense of other class members.

Courts have repeatedly emphasized that any generalized preference for further distribution of remaining settlement funds is not applicable where class members have been fully compensated for their losses.  *See, e.g.*, *In re Lupron Marketing and Sales Practices Litig.*, 677 F.3d 21, 32 (1st Cir. 2012) ("Where class members have been fully compensated for their losses, this presumption does not apply.").  "A *cy pres* distribution is considered appropriate in that circumstance because additional individual distributions would 'overcompensat[e] claimant class

members at the expense of absent class members.'" *In re Baby Prod. Antitrust Litig.*, 708 F.3d 163, 176 (3d Cir. 2013) (quoting *Lupron*, 677 F.3d at 35). Indeed, even in *Klier*, on which CEI relies, the court explained that "[w]here it is still logistically feasible and economically viable to make additional pro rata distributions to class members, the district court should do so, *except where an additional distribution would provide a windfall to class members with liquidated-damages claims that were 100 percent satisfied by the initial distribution*." 658 F.3d at 475 (emphasis added).

Here, the specific language of the 2008 Act makes it unmistakably clear that class members have been fully compensated for their claims. Through the 2008 Act, Congress created a new cause of action for individuals who, due to late filing, were unable to obtain a determination on the merits of their *Pigford I* claims. In creating the cause of action, Congress capped the damages to which successful claimants were entitled. Specifically, the statute provides that successful claimants who elect the expedited claims procedure are entitled to "liquidated damages of $50,000," loan forgiveness, and tax relief. *See In re Black Farmers Discrimination Litig.*, 856 F. Supp. 2d 1, 12 (D.D.C. 2011). The claims period is now closed and claimants have received all of the money to which they are entitled for their claims. CEI argues that claimants "would not be receiving a 'windfall'" from any additional distribution because "the settlement compromised the class member's claims." Amicus Br. at 8. But successful claimants already have received not only the full amount negotiated on their behalf in the settlement, but also the full relief provided by the statute which gave rise to their claims. While it may be true in a run-of-the-mill settlement that class members are not fully compensated for their claims, that is simply not the case here.

Moreover, ignoring the agreement's *cy pres* provision as CEI suggests would provide a windfall to a subset of the class, namely those successful claimants who already have received the full statutory compensation to which they are entitled for their claims, at the expense of thousands of other class members who either did not pursue a claim for damages or were unsuccessful in doing so and who stand to benefit from a *cy pres* distribution.  *See In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 33-36 (1st Cir. 2009) (voicing concerns about overcompensating claimant class members at the expense of absent class members).  In contrast, a *cy pres* distribution would benefit the entire class by benefiting organizations that provide services to class members and/or other African American farmers.  *See* Settlement Agreement § V.E.13.  *See also, e.g.*, *Lane v. Facebook, Inc.*, 696 F.3d 811, 821 (9th Cir. 2012) ("DTF's distribution of settlement funds to entities that promote the causes of online privacy and security will benefit absent class members and further the purposes of the privacy statutes that form the basis for the class-plaintiffs' lawsuit.").

In urging the Court to rewrite the *cy pres* provision in the parties' agreement, CEI relies on the American Law Institute's *Principles of the Law of Aggregate Litigation* ("ALI Principles"), which express a policy preference for distribution of unclaimed funds to participating class members rather than *cy pres* beneficiaries "unless the amounts involved are too small to make individual distributions economically viable or other specific reasons exist that would make such further distributions impossible or unfair."  ALI Principles § 3.07(b) (2010). That "policy preference was motivated by a concern that 'few settlements award 100 perfect of a class member's losses, and thus it is unlikely in most cases that further distributions to class members would result in more than 100 percent recovery.'"  *In re Lupron*, 677 F.3d at 32 (quoting ALI Principles § 3.07 cmt. b).  Thus, ALI's commentary makes clear that its general

principle disfavoring *cy pres* remedies is not applicable in instances, like here, in which further distributions would constitute a windfall. *See In re Pharm.*, 588 F.3d at 35 (district court's insistence that class members receive treble damages before any money was distributed through *cy pres* "set the benchmark well above the ALI's hope that class members might receive 100 percent recovery"). Indeed, CEI has cited no case applying this policy preference when it is clear that the participating class members have already received 100 percent recovery. *See In re BankAmerica*, 775 F.3d at 1066 ("[T]he notion that class members were fully compensated by the settlement is speculative, at best."); *In re Baby Prods.*, 708 F.3d at 176 (*cy pres* distribution is inappropriate "where all class members submitting claims have already been fully compensated for their damages by prior distributions" because "additional individual distributions would overcompensate claimant class members at the expense of absent class members"); *In re Lupron*, 677 F.3d at 35-36 (rejecting argument that district court abused its discretion by making a *cy pres* distribution instead of using residual funds to award treble damages to claimants and explaining that it is "well accepted that protesting class members are not entitled to windfalls in preference to *cy pres* distributions").

Because neither CEI nor any party makes a colorable claim that participating class members were not fully compensated for their injuries, the Court should reject CEI's argument that unclaimed funds should be redistributed to successful (and already compensated) class members at the expense of other class members.

## II.     The Language of the Settlement Agreement Is Not "Precatory"

Attempting to avoid the binding language of the Settlement Agreement, the 2008 Act, and the Claims Resolution Act, which mandate the distribution of excess funds to Court-approved *cy pres* beneficiaries, CEI argues that the Settlement Agreement's language regarding

*cy pres* distribution is "fundamentally precatory not mandatory." Amicus Br. at 10. Specifically, CEI argues that because the Court retains authority under the terms of the Settlement Agreement to reject *cy pres* beneficiaries proposed by class counsel, it therefore has the authority to rewrite the essence of the parties' agreement by rejecting every *cy pres* beneficiary proposed by class counsel and then distributing the excess funds to fully-compensated class members. This argument is entirely without merit.

As an initial matter, the language in the Settlement Agreement does not authorize the Court to disregard its clear terms by categorically rejecting all proposed *cy pres* beneficiaries. As noted above, "[s]ettlement agreements are contracts, and courts interpret them accordingly." *Pigford v. Vilsack*, 75 F. Supp. 3d 462, 466 (D.D.C. 2014) (citing *Lindell*, 640 F. Supp. 2d at 15); *see also Keepseagle*, 2015 WL 4510837, at *18 ("The terms of the settlement agreement are always to be given controlling effect." (quoting *Klier*, 658 F.3d at 476)). The "judicial task . . . is to give effect to the mutual intent of the parties, and when the language of a contract is clear and unambiguous on its face, a court will assume that the meaning ordinarily ascribed to those words reflects the intention of the parties." *Pigford*, 75 F. Supp. 3d at 466 (quoting *Pigford v. Schafer*, 536 F. Supp. 2d 1, 10 (D.D.C. 2008)). *See also United States v. Microsoft Corp.*, 147 F.3d 935, 946 (D.C. Cir. 1998) ("[The] court's task, then, is to discern the bargain that the parties struck; this is the sense behind the proposition that consent decrees are to be interpreted as contracts.").

Here, the Agreement provides:

> In the event there is a balance remaining in the Designated Account after the last check has been cashed, the last check has been invalidated due to passage of time, and after the passage of time set forth in Section V.E.12, Class Counsel may then move the Court to designate "Cy Pres Beneficiaries" and propose an allocation of the available cy pres funds among such proposed Cy Pres Beneficiaries. A Cy Pres Beneficiary must be either (a) a law school that has a low-income taxpayer clinic or program that provides tax advice or assistance to Class Members who have received an award under the Settlement Agreement and that has been

approved by the Court or (b) a tax-exempt non-profit organization, other than a law firm, legal services entity, or educational institution, that is providing agricultural, business assistance, or advocacy services, including assistance under Pigford and the Consolidated Case, to African American farmers. If a Subparagraph (a) Cy Pres Beneficiary is approved by the Court, then the Court shall determine the reasonable payment to be made to such Beneficiary from any balance in the Designated Account.  Following any payment to a Subparagraph (a) Beneficiary, the Court shall designate the Subparagraph (b) Cy Pres Beneficiaries and determine how much of the available cy pres funds each such beneficiary shall receive. The Claims Administrator shall send to each Cy Pres Beneficiary, via first class mail, postage prepaid, a check in the amount of the Beneficiary's share.

Settlement Agreement § V.E.13, ECF No. 405 (Modification Order).  This language does not suggest, as CEI argues, that the Court has the authority to categorically reject every proposed *cy pres* beneficiary.  Such an approach would thwart the parties' intent, as expressed in the agreement.[1]  *Gonzalez v. Dep't of Labor*, 609 F.3d 451, 457 (D.C. Cir. 2010) ("We interpret a settlement agreement under contract law.  Hence, we aim to give effect to the mutual intentions of the parties." (internal citations omitted)); *Schafer*, 536 F. Supp. 2d at 10 ("the Court's duty is to give effect to the intent of the parties through a common sense reading of unambiguous terms [of settlement agreement]").  Indeed, read in their proper context, it is clear that the words "may" and "if" do not suggest that the Court has the authority to categorically reject every proposed beneficiary, as CEI argues.  Instead, the language reflects the parties' understanding that *cy pres* distribution may

---

[1]     Indeed, the initial language of the agreement did not suggest that the Court had any discretion at all to reject the proposed *cy pres* beneficiaries.  *See* ECF No. 161-3 at 35 ("Class Counsel may then move the Court to designate 'Cy Pres Beneficiaries.'  Each Cy Pres Beneficiary designated by the Court shall receive equal shares of the balance remaining in the Designated Account.").  And the narrowly-tailored April 2014 amendment adding the so-called "precatory" language "[i]f a Subparagraph (a) Cy Pres Beneficiary is approved by the Court," did not suggest that the Court has the sweeping authority to categorically reject all proposed beneficiaries.  *See* ECF No. 405.  If anything, that amendment narrowed the discretion of class counsel and the Court by specifying what types of organizations are potential *cy pres* beneficiaries.

never be necessary in this case because "the amount of the funding for the Settlement may not be sufficient to provide recovery in the full amount contemplated for successful Claimants."  Settlement Agreement § M, ECF No. 161-3.

Even if this Court were to reject class counsel's proposed *cy pres* beneficiaries indefinitely, however, the Court would not have "broad discretionary powers" to choose among distribution options, including the option to authorize additional distributions to fully-compensated claimants, as CEI suggests.  Amicus Br. at 11.  This is because the clear terms of the Claims Resolution Act provide what must occur if no *cy pres* beneficiary is approved: the remaining funds must be returned to the U.S. Treasury.  Claims Resolution Act § 201(d). Indeed, Congress specifically directed that these funds may not be used for "any purpose related to [the 2008 Act], for any other settlement agreement executed in *In re Black Farmers Discrimination Litigation*, No. 08-511 (D.D.C.), or for any other purpose."  *Id.* at § 201(d).  In light of this clear statutory command, the Court is simply not at liberty to "cho[ose] among distribution options," as CEI asserts.  Amicus Br. at 11.  Similarly, CEI's proposal to "allow *Pigford* claimants to share in the redistribution of excess funds," *id.* at 8, is prohibited by this unambiguous statutory language.

Accordingly, even if the Court were to reject every proposed *cy pres* beneficiary proposed by class counsel, additional distributions to claimants would be neither authorized nor appropriate.[2]

---

[2]     CEI further suggests that the Court's adherence to the terms of the 2008 Act, the Claims Resolution Act, and the Settlement Agreement by authorizing the distribution of excess funds to *cy pres* beneficiaries would somehow be unconstitutional.  Amicus Br. at 13-14 n.8. This Court has already rejected the argument that the Claims Resolution Act was unconstitutional for similar reasons.  *See In re Black Farmers*, 856 F. Supp. 2d at 18 ("Although Congress may lack authority to direct a court to reach a particular result in a given case without amending

### III.   The Court Does Not Have Authority Under Rule 60(b) to Modify the Settlement Agreement

As explained in Defendant's opening brief, absent agreement of the parties, the Court does not have authority under Rule 60(b) of the Federal Rules of Civil Procedure to provide for the distribution of unclaimed settlement funds to class members rather than to *cy pres* beneficiaries.  Rule 60(b)(5) provides a means by which a party can ask a court to modify or vacate a judgment or order if "a significant change either in factual conditions or in law" renders continued enforcement "detrimental to the public interest."  *Horne v. Flores*, 557 U.S. 433, 447 (2009).  CEI argues that a "change in the decisional law of *cy pres*" constitutes a "significant" changed circumstance sufficient for a modification under Rule 60(b)(5).  Amicus Br. at 15.  This argument is without merit.

"Modification is an extraordinary remedy, as would be any device which allows a party . . . to escape commitments voluntarily made and solemnized by a court decree."  *Salazar v. District of Columbia*, 729 F. Supp. 2d 257, 260 (D.D.C. 2010) (quoting *Twelve John Does v. District of Columbia*, 861 F.2d 295, 298 (D.C. Cir. 1988) (discussing Rule 60(b)(5))).  Amicus fails to explain how the general policy concerns about *cy pres* remedies articulated in the ALI Principles that predated the Settlement Agreement effected a "significant change either in factual conditions or in law" sufficient to justify the extraordinary remedy of modification, particularly

---

substantive law, Congress certainly has not done so here.  Indeed, the Claims Resolution Act makes clear that Congress has funded the proposed settlement agreement only if this Court approves the settlement in a final order.  But nothing in the statute presumes to instruct the Court how or whether to decide if the settlement should be approved.").  In any event, Congress clearly has authority to condition its allocation of funds on court approval of a settlement agreement.  *See, e.g.*, 31 U.S.C. § 1304 (creating a permanent appropriation of funds to pay "final judgments, awards, compromise settlements, and interest and costs" against the United States); *Carver v. Sheriff of LaSalle Cnty., Illinois*, 243 F.3d 379, 385 (7th Cir. 2001) ("[S]urely a county could appropriate a judgment fund (as Congress has done) and make it available to pay judgments (including settlements); and like Congress a county doubtless could set conditions under which settlement authority would be exercised.").

when numerous courts have continued to approve agreements containing such provisions.[3]
Contrary to CEI's suggestion, *cy pres* remedies have in no way become "impermissible under
federal law."  Amicus Br. at 15.  Indeed, courts have continued to enforce *cy pres* remedies
especially, as here, where a settlement agreement has received final approval and fully
compensates successful class members for their claims.  *See, e.g.*, *Alvarez v. Keystone Plus
Constr. Corp.*, 303 F.R.D. 152, 158 (D.D.C. 2014); *Lupron*, 677 F.3d at 35; *Lane*, 696 F.3d at
821; *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 435 (11th Cir. 2012); *In re
Pharm.*, 588 F.3d at 33.  As courts have made clear, "[i]n the face of disagreement about what
the law is and no controlling precedent, the mere fact that some courts have adopted the
interpretation defendants propose here is not sufficient" to warrant modification of a settlement
agreement.  *Evans v. Fenty*, 701 F. Supp. 2d 126, 156 (D.D.C. 2010).  *See also Salazar*, 729 F.
Supp. 2d at 264 (denying Rule 60(b)(5) relief because "new" legal precedent did not render
earlier precedent "no longer good law").  In light of courts' continued use of *cy pres* remedies, it
is clear that there has not been any "substantial" change in law sufficient for Rule 60(b)(5) relief.

CEI also has not established that the judgment here will have prospective application — a
necessary condition for Rule 60(b)(5) modification.  *See Twelve John Does*, 841 F.2d at 1138.
Instead, the judgment is for damages stemming from past conduct, which is "the opposite of
prospective relief."  *Kapar v. Islamic Republic of Iran*, 105 F. Supp. 3d 99, 104 (D.D.C. 2015).
Of course, the D.C. Circuit has recognized that almost every court order, even a claim for money
damages, has some "reverberations into the future," especially if the judgment remains

---

[3]     Prior to this Court's approval of the Settlement Agreement in 2011, the Court considered
the oral and written comments of numerous class members and other interested individuals.  *See
In re Black Farmers*, 856 F. Supp. 2d at 6-7,15 & n.1.  At no time prior to approval did Amicus
(or any other party or non-party) express any concerns about the *cy pres* provision in the
Settlement Agreement.

unsatisfied.  *Twelve John Does*, 841 F.2d at 1138.  Nonetheless, the consensus among Courts of

Appeal, including the D.C. Circuit, is that a claim for money damages is not "prospective" for

the purposes of Rule 60(b)(5).  *Id.* at 1138; *accord Marshall v. Board of Ed., Bergenfield, N.J.*,

575 F.2d 417, 425 (3d Cir. 1978) (collecting cases holding that Rule 60(b)(5) does not apply to

judgments for money damages).  Similarly, here, the possible future effects of a *cy pres* remedy

do not authorize this Court to grant relief under Rule 60(b)(5).  *See Keepseagle*, 2015 WL

4510837, at *20 ("Ultimately, the *cy pres* provision in this case lacks this type of binding effect

on a party's future behavior that makes a judgment prospective within the meaning of Rule

60(b)(5).").

## IV.   CEI's General "Ethical Concerns" About *Cy Pres* Distributions Are Not Implicated Here

CEI argues that *cy pres* remedies are "rife with conflicts of interest."  Amicus Br. at 2.

Specifically, CEI asserts that *cy pres* distributions "may increase a settlement fund, and with it

attorneys' fees, without increasing the direct benefit to the class."  *Id.* at 3.  But here, the Court

determined class counsel's attorneys' fees long before any party knew whether there would even

be any excess funds at all.  *See* Order and Judgment, ECF No. 231.  Accordingly, the existence

of the *cy pres* fund had no bearing whatsoever on the amount of attorneys' fees awarded in this

case, and the suggestions that class counsel may attempt to "make[] a claim for direct

compensation of attorneys' fees based upon the size of the *cy pres*," or "throw some money to a

charity associated with a judge" in order to "increase the chances of . . . a fee request" are

baseless.  Amicus Br. at 4, 5.

CEI further points to potential "ethical problems and conflicts of interest" that may exist

when a charitable distribution is "left entirely to the judge's discretion."  *Id.* at 4.  These concerns

are not present here, where the parties' modified agreement makes clear that *cy pres*

beneficiaries must be either law schools with low-income taxpayer programs providing assistance to class members who have received an award under the Settlement Agreement, or tax-exempt non-profit organizations providing services to African American farmers. *See* Settlement Agreement § V.E.13. Moreover, the selection of *cy pres* beneficiaries from these narrow categories is entrusted to both class counsel and the Court; while class counsel is responsible for nominating *cy pres* recipients, the Court must grant its final approval. *See* Settlement Agreement § V.E.13. This procedure eliminates any concerns that a *cy pres* recipient would be "related to" class counsel or any class representative. Amicus Br. at 5, 6. Thus, CEI's "hypothical[s]," *id.* at 5, have no relevance to the actual issues before the Court. Indeed, even CEI concedes that they "have no reason to think there is any judicial impropriety in this case." *Id.* Amicus' belated and general policy concerns about *cy pres* distributions do not overcome the clear provision of the parties bargained-for Agreement or the express terms of the governing federal statutes.

## CONCLUSION

For the forgoing reasons, the Court should enforce the final Settlement Agreement pursuant to its express terms and should instruct class counsel to begin the process contemplated by the Settlement Agreement of identifying potential *cy pres* beneficiaries and proposing an allocation of unclaimed settlement funds.

Dated: January 15, 2016                    Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

LESLEY FARBY
Assistant Branch Director

*/s/ Megan A. Crowley*
MEGAN A. CROWLEY

N.Y. Bar No. 4930376
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue NW, Room 7221
Washington, D.C. 20001
Email: megan.a.crowley@usdoj.gov
Telephone: (202) 305-0754
Fax: (202) 616-8470

*Attorneys for Defendant*