UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                )
In re BLACK FARMERS             )   Misc. No. 08-0511 (PLF)
DISCRIMINATION LITIGATION       )
                                )
_____)


MEMORANDUM OPINION AND ORDER

This matter is before the Court on an appeal [Dkt. No. 505] by the Black Belt Justice Center ("BBJC") of Class Counsel's second review recommendation to deny the BBJC's Phase I cy pres application. The BBJC asks the Court to set aside the second review recommendation of Lead Class Counsel and to authorize full cy pres Phase I grant funding to the BBJC in the amount of $400,000.

The BBJC's Phase I cy pres application was first denied on January 10, 2018, when the Court issued a Memorandum Opinion ("Mem. Op.") [Dkt. No. 501] and Order [Dkt. No. 500] granting Lead Class Counsel's motion [Dkt. No. 496] to designate cy pres beneficiaries and to approve partial distribution of cy pres funds pursuant to the Settlement Agreement. The Court's Memorandum Opinion and Order approved Class Counsel's proposal to distribute $4,108,000 to twenty-five non-profit organizations selected as Phase I grantees under Section V.E.13(b) of the Settlement Agreement. See Mem. Op. at 1. In its Memorandum Opinion, the Court explained that it had received an informal objection to Class Counsel's proposal from the BBJC, an organization that Class Counsel did not recommend receive funding as part of Phase I. See id. at 1-2. The Court reiterated its confidence in Class Counsel's vetting process and, upon finding Class Counsel's recommendations reasonable, the Court concluded that it would not undertake a de novo review of Class Counsel's determinations. It granted Class Counsel's

motion to designate the beneficiaries recommended by Class Counsel as the Phase I grantees. See id. at 2.

In the same Memorandum Opinion, the Court nevertheless directed Class Counsel to undertake a second review of the BBJC's application to determine whether it might be eligible for Phase I funding despite Class Counsel's initial recommendation. See Mem. Op. at 2. After conducting a second review of the BBJC's application for Phase I cy pres funding, Class Counsel confirmed its original findings: (1) the BBJC is ineligible under the terms of the Settlement Agreement to receive Phase I cy pres funds because it is primarily a "legal services entity" and (2) "even if the [BBJC] were eligible to receive Phase I cy pres funds, the particular program proposal by the [BBJC] is not a program that . . . should receive Phase I cy pres funds." See Response of Class Counsel to January 10, 2018 Order [Dkt. No. 504].

Following Class Counsel's second review, the BBJC filed an appeal ("BBJC Appeal") [Dkt. No. 505] of Class Counsel's second review recommendation, alleging that Class Counsel "failed to adequately explain to the Court why the [BBJC] falls beyond the scope of Cy Pres I funding." See BBJC Appeal at 1. The Court subsequently ordered [Dkt. No. 506] Class Counsel and the government to respond to the BBJC's appeal. Class Counsel filed its response ("Class Counsel Response to BBJC Appeal") on April 13, 2018 [Dkt. No. 507]; the Government submitted a response ("Gov. Response") on April 27, 2018 [Dkt. No. 508]; and the BBJC filed its reply ("BBJC Reply") on May 17, 2018 [Dkt. No. 509]. The BBJC has asked the Court to set aside Class Counsel's second review recommendation and authorize full funding for the BBJC's proposed project under Phase I of the cy pres funds disbursement. See BBJC Appeal at 7.

The Court has already ruled that it would enforce the cy pres provision of the Settlement Agreement as modified. See April 8, 2016 Memorandum Opinion & Order ("Apr. 8,

2016 Mem. Op. & Order") [Dkt. No. 458]; see also Klier v. Elf Atochem N. Am., Inc., 658 F.3d 468, 475-76 (9th Cir. 2011) ("[W]hile the settlement agreement must gain the approval of the district judge, once approved its terms must be followed by the court and the parties alike. The district judge must abide the provisions of the settlement agreement, reading it to effectuate the goals of the litigation."). In relevant part, Section V.E.13 of the amended Settlement Agreement provides that:

> Class Counsel may . . . move the Court to designate 'Cy Pres Beneficiaries' and propose an allocation of the available cy pres funds among such proposed Cy Pres Beneficiaries. A Cy Pres Beneficiary must be . . . (b) a tax-exempt non-profit organization, other than a law firm, legal services entity, or educational institution, that is providing agricultural, business assistance, or advocacy services, including assistance under Pigford and the Consolidated Case, to African American farmers . . . . Following any payment to a Subparagraph (a) Beneficiary, the Court shall designate the Subparagraph (b) Cy Pres Beneficiaries and determine how much of the available cy pres funds each such beneficiary shall receive.

See April 7, 2014 Order at 2 [Dkt. No. 405]; September 3, 2015 Memorandum Opinion & Order [Dkt. No. 430].[1] In initially deciding to enforce these terms, the Court ordered Class Counsel to "identify[] potential cy pres beneficiaries as contemplated by Section V.E.13, giving thought to how the process can (1) be as transparent as possible, and (2) involve the parties and the Court or

---

[1] The Court notes that pursuant to the court order issued on August 27, 2013, the quoted text should have been renumbered as "Section V.E.14" of the Settlement Agreement, and separate text should have replaced this language as "Section V.E.13." See Aug. 27, 2013 Order [Dkt. No. 381]. Despite this order, the parties and the Court have continued to reference the excerpted language as "Section V.E.13." See, e.g., April 8, 2016 Mem. Op. & Order [Dkt. No. 458]; Plaintiffs' Motion to Further Modify Order and Judgement [Dkt. No. 485]. In an effort to avoid confusion and to remain consistent with the parties' papers in this matter, see Motion to Designate Cy Pres Beneficiaries [Dkt. No. 496], the Court will continue to refer to the original Section V.E.13 of the Settlement Agreement [Dkt. No. 170-2] related to cy pres distribution, with its amended language, as "Section V.E.13." The other section that was designated as "Section V.E.13" pursuant to the court order of August 27, 2013 [Dkt. No. 381] will continue to be referenced as Section V.E.13, as well.

3

its designated agents in assuring that the necessary due diligence is done with respect to the background and appropriateness of potential cy pres beneficiaries." See Apr. 8, 2016 Mem. Op. & Order. The question before the Court now, therefore, is whether it should reverse Class Counsel's designation of some grant applicants as beneficiaries, while excluding others – and in particular, its decision not to recommend the BBJC for Phase I cy pres funding.

Class Counsel has determined that the BBJC is ineligible as a Phase I beneficiary under the express terms of Section V.E.13 of the Settlement Agreement. Section V.E.13 of the Settlement Agreement excludes "law firm[s], legal services entit[ies], or educational institution[s]" from eligibility as Section V.E.13(b) cy pres beneficiaries. See April 7, 2014 Order at 2. Based on the information presented in the BBJC's funding application and on its website, Class Counsel concluded that the "BBJC had failed to demonstrate that its principal purpose was something other than the provision of legal services." See Class Counsel Response to BBJC Appeal at 3.[2]

Class Counsel further concluded that even if the BBJC were an eligible institution, the BBJC's proposed project was not suitable for funding because it did not match the priorities that Class Counsel had identified for Phase I. See Class Counsel Response to BBJC Appeal at 4. Specifically, with limited Phase I funds available, Class Counsel aimed to "stabilize and/or grow the capacity of nonprofit organizations . . . rather than to fund new programs or initiatives." See id. at 4; see also Request for Proposal – Grant Application Form, Ex. A at 21 [Dkt. No. 496-1]. Class Counsel also explained that it had recommended to applicants that "the

---

[2] In its response, the government explained that "[c]onsistent with the terms of the Settlement Agreement, the government plays no role in Class Counsel's review of applications for designation as a cy pres beneficiary." See Gov. Response at 2. The government nonetheless agreed that the BBJC's "self-identification as a 'legal and advocacy nonprofit organization' is a sufficient basis to conclude that the organization is ineligible for cy pres funds under the Settlement Agreement." See id.

4

maximum funding request for project support [should] not exceed one-third of the annual project budget or projected annual project (for a new project) per year for two years." See Class Counsel Response to BBJC Appeal at 4, 6; see also Request for Proposal – Grant Application Form, Ex. A at 4 [Dkt. No. 496-1]. The BBJC, however, proposed a new initiative and requested that it receive 100% of the project's budget through Phase I funding. With respect to its due diligence responsibilities, Class Counsel also expressed concerns about the financial capability of the BBJC, pointing to the fact that the BBJC had approximately $980 in total assets as of December 31, 2016 and earned approximately $26,670 in total income between January 1, 2015 and December 31, 2017. See Class Counsel Response to BBJC Appeal at 6. Class Counsel further noted that the BBJC was unable to comply with Class Counsel's informational requests, explaining that "[d]ue to financial hardships, the BBJC has never achieved an actualized fully funded budget." See id. at 6.

Lastly, in reviewing Phase I applicants, Class Counsel considered "the historic work that applicant organizations had done in support of the Pigford and/or In re Black Farmers Discrimination cases." See Class Counsel Response to BBJC Appeal at 5. Class Counsel concluded that "unlike virtually all of the other organizations applying for Phase I funding, [the BBJC] had no involvement in and provided no support for the Pigford case." See id. at 6-7. Any work that the BBJC's Executive Director, Tracy Lloyd McCurty, or its Deputy Director, Dania Davy, contributed to the In Re Black Farmers Discrimination cases was performed in their individual capacities or on behalf of another non-profit organization, not in the course of their leadership of the BBJC. See id. at 7; see also BBJC Reply at 2-4.

The BBJC asserts that it is an eligible recipient under the terms of the Settlement Agreement and that its proposed project should qualify for funding. First, the BBJC disputes

5

Class Counsel's determination that the BBJC is primarily a legal service entity. See BBJC Appeal at 2. It explains that it has never received funding from the Legal Services Corporation, and while it does "provide[] a range of legal services to African American farmers, landowners, and cooperatives, the nonprofit organization also provides a range of effective business assistance and advocacy services." See id. at 2-3. The BBJC further contends that it meets the criteria described on Class Counsel's website, which explained that "organizations that provide eligible legal services/educational services as part of their work but are not law firms, legal service entities, or educational institutions may be eligible for Cy Pres Phase I grants." See id. at 3 (quoting Response No. 13 of the *Frequently Asked Questions*, IN RE BLACK FARMERS DISCRIMINATION LITIGATION SETTLEMENT, https://www.blackfarmercase.com/cypres.aspx (last visited Dec. 4, 2018)); see also BBJC Reply at 4-7.

Second, the BBJC maintains that the project proposal it submitted – entitled "Dirt Rich: Preserving Black Family Land Initiative, a five-pillar approach to preserving Black-owned farmlands and ensuring land access for next generation farmers" – complies with the cy pres project funding requirements. See BBJC Appeal at 4-5.[3] The BBJC explains that its project proposal matches a description of advocacy services eligible for funding listed on Class Counsel's website, which "include, but are not limited to . . . legal service projects." See id. at 5 (quoting Response No. 9 of the *Frequently Asked Questions*, IN RE BLACK FARMERS

---

[3] The BBJC's project proposal, "Dirt Rich: Preserving Black Family Land Initiative," outlines a five-pillar approach: "(1) pro bono curative legal services for farmers farming on heir property (i.e., probate, clearing title, land trusts and limited liability legal formations, etc.); (2) technical assistance for heir property landowners who aspire to farm on their family lands; (3) multi-state community workshops and legal trainings (including curricula development); (4) advocacy regarding the efficacy of the Uniform Partition of Heirs Property Act as well as access to non-extractive capital for farmers of heir property who desire to exercise their rights of first refusal; and (5) establishment of a multi-state regenerative land stewardship database to connect landless next generation farmers with retiring elder farmers and/or absentee heir property landowners." See BBJC Appeal at 5-6.

DISCRIMINATION LITIGATION SETTLEMENT, https://www.blackfarmercase.com/cypres.aspx (last visited Dec. 4, 2018)). The BBJC also contends that its inability to submit an annual operating budget can be attributed to funding cuts to historic federal agricultural programs that have caused financial hardship for "many African America-led rural community-based nonprofit organizations." See BBJC Reply at 8. Moreover, the BBJC argues that Class Counsel selectively omitted financial information that shows that the BBJC received a large grant from a different source in 2017 and failed to consider the BBJC's alternative funding proposal that did not require 100% Phase I cy pres funding. See id. at 7.

The Court concludes that Class Counsel's decision not to recommend the BBJC for Phase I cy pres funding is not unreasonable. The Court's role is to "assur[e] that the necessary due diligence is done with respect to the background and appropriateness of potential cy pres beneficiaries," not to personally involve itself directly in the selection of cy pres beneficiaries. See Apr. 8, 2016 Mem. Op. & Order at 1. Class Counsel has given adequate and reasoned explanations for its decision to include the BBJC among the 13 organizations not recommended for Phase I funding. See Class Counsel Response to BBJC Appeal at 4. Class Counsel has undertaken a careful review of the BBJC's eligibility and project proposal – not once, but twice – and come to the same conclusion. An organization that meets the criteria outlined in the Frequently Asked Questions on Class Counsel's website is not guaranteed to be selected by Class Counsel as a beneficiary, nor does that fact obligate Class Counsel to so decide. As Class Counsel explains, 39 applicants applied for Phase I cy pres grants and only 26 received funding. See id. at 4. Phase I cy pres funding was limited to approximately $4 million of the $12 million cy pres funds available in this Settlement, the remainder to be awarded later in Phase II. See id. at 4. Class Counsel was tasked with evaluating grant applications, and it

decided not to recommend the BBJC as a grantee pursuant to criteria set forth in the Settlement Agreement and in subsequent court orders and consistent with Class Counsel's own reasonable criteria used to prioritize the distribution of Phase I's limited funds. The Court defers to and affirms Class Counsel's determination to deny the BBJC Phase I <u>cy</u> <u>pres</u> funding. Accordingly, it is hereby

ORDERED that the BBJC's Appeal of Class Counsel's Second Review Recommendation [Dkt. No. 505] is DENIED.

SO ORDERED.

/s/
PAUL L. FRIEDMAN
United States District Judge

DATE: December 7, 2018